IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRADING TECHNOLOGIES ) 
INTERNATIONAL, INC., )
                     )
       Plaintiff,    )
                     )
  vs.                )   No. 04 C 5312
                     )
eSPEED, INC., et al.,)
                     )
       Defendants.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International, Inc. ("TT") brought an action against defendants eSpeed, Inc., ITSEcco Holdings Limited, and Ecco LLC for patent infringement, including allegations of willful infringement. Defendants eSpeed and Ecco now petition this court to bifurcate the trial into two separate parts: (1) liability, including non-infringement, invalidity and unenforceability; and (2) willfulness and damages. Defendants also move for bifurcation of discovery, limiting current discovery to issues of liability, and holding off on discovery pertaining to willfulness and damages until completion of the liability trial.

## DISCUSSION

Federal Rule of Civil Procedure 42(b) authorizes us to bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The Seventh Circuit designed a three-step process to determine whether to bifurcate a trial:

> First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. Only one of these criteria – avoidance of prejudice or judicial economy – need be met before a court can order separation. Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment

Houseman v. U.S. Aviation Underwriters, 171 F.3d 1117, 1121 (7th Cir.1999) (internal citations omitted). Although the ultimate decision to bifurcate is within our discretion (*id.*), because we are expected to act to "secure the just, speedy, and inexpensive determination of every action" (FED. R. CIV. P. 1), bifurcation remains the exception, not the rule. Telewizja Polska USA, Inc. v. EchoStar Satellite Corp., 2005 WL 2405797, *4 (N.D.Ill.2005); A.L. Hansen Mfg. Co. v. Bauer Products, Inc., 2004 WL 1125911, *2 (N.D.Ill.2004). Patent cases are no exception to this rule. Clipco, Ltd. v. Ignite Design, LLC, 2005 WL 2861032, *3 (N.D.Ill.2005); Pfizer, Inc. v. Novopharm Ltd., 2000 WL 1847604, *1 (N.D.Ill.2000); Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 620 (N.D.Ill.2000). The party seeking separate trials has the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation. Real, 195 F.R.D. at 620.

In determining whether to bifurcate a trial, courts have looked to judicial efficiency, possibility of needless delay, potential juror confusion, the timing of the request for bifurcation, whether any filing delay was tactical, the overlap of evidence and witnesses between the two trials, and prejudice to each party. Valois of America, Inc. v. Risdon Corp., 1998 WL 1661397, *3 (D.Conn.1998) (cataloging district court cases).

In this case, defendants contend that bifurcation will limit potential juror confusion, simplify the case, promote judicial economy, and quickly address the issues important to the entire futures trading industry. Most importantly, defendants argue that absent bifurcation and a partial stay of discovery they will be substantially prejudiced. Because this issue is the focus of defendants' argument for bifurcation, we will address it at the outset.

Defendants suggest that absent bifurcation they will be prejudiced by having to choose between using an advice-of-counsel defense to willful infringement, and prematurely waiving attorney-client privilege. This quandary, recognized *in dicta* in Quantum Corp. v. Tandon

Corp., 940 F.2d 642 (Fed.Cir.1991), has since become popularly known as the "Quantum dilemma." In Quantum, the Federal Circuit stated:

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma."

Quantum, 940 F.2d at 643-44.

Defendants currently face the situation imagined in Quantum. In charging defendants with willful patent infringement, plaintiff must prove, by clear and convincing evidence, that "'the infringer acted in disregard of the patent ... [and] had no reasonable basis for believing it had a right to do the acts.'" American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523, 1530 (Fed.Cir.1993). Considering the "totality of the circumstances," a court is "required to consider mitigating or ameliorating factors." *Id.* One factor to be considered is "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed." Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed.Cir.1992), *abrogated on other grounds by* Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 (Fed.Cir1995). That belief can be established by showing good faith reliance on the competent advice of counsel. Comark Communications, Inc. V. Harris Corp., 156 F.3d 1182, 1191 (Fed.Cir.1998); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed.Cir.1996). Where a defendant relies on an advice-of-counsel defense, however, it must waive its attorney-client privilege at least with respect to the

counsel's opinion letters. *See* Quantum, 940 F.2d 642. Defendants argue that this places them in an untenable situation – either forego a valid defense to willfulness or waive attorney-client privilege, disclose the letters and provide their adversary with a "roadmap to all [their] defenses and legal theories" (defs' mem. at 4).

Defendants cite a number of cases wherein a district court, including this court, opted to bifurcate a patent trial where defendants were faced with a Quantum dilemma. *See* Aptargroup, Inc. v. Owens-Illinois, Inc., 2003 WL 21557632, *1 (N.D.Ill.2003); Sage Products, Inc. v. Devon Industries, Inc., 1994 WL 791601, *2-3 (C.D.Cal.1994). When such cases were decided, however, the Federal Circuit, and thus the lower courts, were operating under a presumption since overruled, that where the accused infringer did not produce an opinion of counsel to rebut willfulness, the finder of fact may legitimately infer that the accused infringer either failed to obtain an opinion of counsel or obtained an opinion that warned the infringer not to proceed. *See, e.g.*, Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056 (Fed.Cir.1994). Therefore, an accused infringer faced the choice between waiver of attorney-client privilege and a negative inference that any infringement was indeed willful.

The Federal Circuit disposed of the adverse inference in Knorr-Bremse Systems Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed.Cir.2004). In an effort to protect the attorney-client privilege, the Federal Circuit held that "no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel." 383 F.3d at 1341. Plaintiff argues that the elimination of the adverse inference in Knorr-Bremse alleviates any Quantum dilemma faced by defendants. Defendants, anticipating plaintiff's argument, contend that its Quantum dilemma is not premised upon the now defunct adverse inference, that Knorr-Bremse does not discuss the Quantum dilemma or bifurcation, and that no case has interpreted Knorr-Bremse

to limit Quantum. Specifically, defendants contend that absent bifurcation they "cannot assert an advice of counsel defense (thus risking a willfulness finding) without waiving the privilege (and disclosing its litigation strategy to TT)" (defs' mem. at 6).

Neither the parties, nor this court, could find any case construing the Quantum dilemma in light of Knorr-Bremse.[1] We do not believe that means, as defendants would have us believe, that Knorr-Bremse did not affect or alter the Quantum dilemma. The quandary noted in Quantum existed in part because the adverse inference imposed on an alleged infringer who did not waive its attorney-client privilege weighed in favor of finding willful infringement. *See* Translogic Technology, Inc. v. Hitachi, Ltd., 2004 WL 2260606, *3 (D.Or.2004); F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 391 (M.D.N.C.1999). In fact, *amicus* briefs filed with the Federal Circuit prior to its decision in Knorr-Bremse indicate that the Quantum dilemma, and issues similar to those raised by defendants in this motion, were underlying the decision in Knorr-Bremse. For example, one *amicus* brief stated concern that the opinion would prematurely disclose trial tactics, settlement-related positions, admissions on different issues, or the identity of expert witnesses. Jennifer K. Bush, John E. Gartman, & Elizabeth I. Rogers, Six Patent Law Puzzlers, 13 TEX. INTELL. PROP. L. J. 1, 25 (*citing* Brief of Amicus Curiae Generic Pharmaceutical Association In Support Of Defendants-Appellants at 3). We believe that the Federal Circuit, in coming to its conclusion in Knorr-Bremse, assessed the considerations of the Quantum dilemma before us today.

We do not believe, however, that Knorr-Bremse completely eliminated the prejudice

---

[1] With the exception of A.L. Hansen, 2004 WL 1125911, at *3, n4. In that case, decided before Knorr-Bremse, the court, in a footnote, made a prediction about the possible effect of Knorr-Bremse on Quantum. The court said, "The *en banc* Federal Circuit is currently reevaluating this inference. Of course, if the Federal Circuit were to eliminate the propriety of these negative inferences, the force of the *Quantum* dilemma would be greatly reduced."

to a party facing a Quantum dilemma. Although the failure to obtain an exculpatory opinion of counsel no longer provides an adverse inference or presumption that the opinion was unfavorable, there "continues to be 'an affirmative duty of due care to avoid infringement of the known patent rights of others,'" Knorr-Bremse, 383 F.3d at 1345-46. Therefore, an accused infringer still must choose between waiving its attorney-client privilege to disclose a favorable opinion letter from counsel, which would weigh in its advantage in assessing the "totality of the circumstances" in a willful infringement charge, and maintaining its attorney-client privilege, thus undercutting its defense. *See* Debra Koker, Note, Fulfilling the 'Due Care' Requirement after Knorr-Bremse, 11 B.U.J. SCI. & TECH. L. 154, 163 ("By retaining the standard of due care and the totality of the circumstances considerations for finding of willfulness, it is likely that the patent opinion will continue to play a dominant role"); Bush et al., Six Patent Law Puzzlers, 13 TEX. INTELL. PROP. L. J. at 26 (arguing that, in light of the affirmative duty of due care, until the Federal Circuit clarifies what evidence can be presented regarding willful infringement, an alleged patent infringer may still face a Hobson's choice in determining whether to disclose opinion letters).

Thus, we find that absent bifurcation defendants still face a difficult decision. It is true, however, that counsel always faces difficult tactical decisions in planning an attack or defense. It is also true that attorney-client privilege cannot be used as both a sword and a shield. Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P., 266 F.Supp.2d 1144, 1148 (C.D.Cal.,2003) (*citing* Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir.2001)). And even prior to Knorr-Bremse – and what we see as an easing of the defendants' quandary – many courts found that the weight of competing prejudices, including a Quantum-style prejudice, weighed in favor of one trial and denied a motion for bifurcation. *See* Real, 195 F.R.D. 618; Edward Lowe Industries, Inc. v.

Oil-Dri Corp. of America, 1995 WL 609231 (N.D.Ill.1995) (although defendant faced a Quantum dilemma, by waiting until after the close of discovery to waive its attorney-client privilege, it was precluded from asserting an advice of counsel defense); Dentsply Intern. Inc. v. Kaydex, 1994 WL 376276 (N.D.Ill.1994) (determining that disclosure of attorney's opinions, reviewed *in camera*, would not so substantially prejudice plaintiff that separate trials were warranted); Johns Hopkins Univ. v. Packaging Corp. of America, 160 F.R.D. 30 (D.Del.1992). Therefore, we find that absent an adverse inference defendants are only slightly prejudiced.

Next, in assessing whether bifurcation would promote judicial economy, courts have looked to whether the circumstances of the case required "a) a need for voluminous documents to resolve damages issues; b) complex infringement issues; c) multiple patents, infringing products, claim, counterclaims, or parties; or d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages." Real, 195 F.R.D. at 621. Defendants contend that bifurcation would streamline a complicated patent case, avoid potential juror confusion, and, if plaintiff's patents are held invalid, obviate the need for a time-consuming determination of damages and willfulness. Plaintiff counters by arguing that two separate trials would cause considerable delay – that damages discovery is already underway and the issues in each trial would substantially overlap.

Although defendants' argument that separate trials would promote judicial economy if defendants prevail, is true, they have not demonstrated that such success is likely. *Cf.* Aptargroup, Inc., 2003 WL 21557632 at *1 (bifurcating the issues of liability and willful infringement partly because plaintiff's liability case had "taken a real hit from ... [the] *Markman* construction"). In this case we have yet to determine claim construction, but defendants took "a real hit" in the preliminary injunction hearing. In any case involving a

damages determination, it would always be judicially efficient to bifurcate trials should defendants succeed in the liability phase. Bifurcation remains the exception, however, because "[i]n the event that liability is found, two separate trials with two separate juries at remote times would not serve judicial economy." Real, 195 F.R.D. at 624 (*citing* Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F.Supp. 1090, 1092 (N.D.Ga.1996)).

Alternatively, defendants contend that "[e]ven assuming eSpeed and Ecco were to lose on liability, bifurcation would still simplify the litigation, because it would postpone inevitable ancillary litigation regarding privilege to a more convenient time, and simplify the parties' presentations to the jury" (defs' mem. at 2). Postponement of ancillary litigation does not necessarily weigh in favor of bifurcation – simply postponing dispute resolution does not increase judicial efficiency. And, as many courts before us have noted, bifurcation can lead to additional discovery disputes that actually add time and energy to a litigation. *See* William Reber, LLC v. Samsung Electronics America, Inc., 220 F.R.D. 533, 538 (N.D.Ill.2004), *vacated in part by* William Reber, LLC v. Sony Ericsson Mobile, 2004 WL 2535074 (N.D.Ill.2004); Maxwell Chase Technologies, L.L.C. v. KMB Produce, Inc., 79 F.Supp.2d 1364, 1374 (N.D.Ga.1999); F & G Scrolling Mouse, L.L.C., 190 F.R.D. at 395; THK America, Inc. v. NSK Co. Ltd., 151 F.R.D. 625, 633 (N.D.Ill.1993). Given the nature of this case thus far, we would not be surprised if the parties engaged in extensive motion practice wrangling over whether certain pieces of discovery were applicable to the liability case or the willfulness/damages case. Thus, we do not think that defendants have carried their burden of establishing that bifurcation of discovery and trial would promote judicial efficiency.[2]

---

[2] With regard to pre-trial negotiations and discovery, this case appears more complicated than most. We are dealing here with the first of seven patent infringement suits brought by this plaintiff in this district. Unfortunately for defendants eSpeed and Ecco, motions and disputes in their case have been acting as the catalyst for similar motions and disputes in the cases that followed. In the end, however, this is really a case between one plaintiff and related defendants, with claims that defendants infringed two of plaintiff's patents. At its heart, it is not that complicated for a patent case. Therefore, additional issues of juror confusion and

We turn now to analysis of potential prejudice to plaintiff should we decide to grant defendants' motion. Plaintiff suggests that it would be prejudiced by the delay caused by bifurcation and the time and expense of duplicating efforts in two separate trials. We have already addressed the issue of delay. With regard to duplication, it is true that where issues to be presented in the two trials sufficiently overlap, bifurcation should be denied. Keyes Fibre Company v. Packaging Corp. of America, 763 F.Supp. 374, 375 (N.D.Ill.1991). In this case, defendants suggest that "[t]here is simply no overlap between the respective issues" of liability and willfulness/damages (defs' mem. at 7). Not surprisingly, plaintiff disagrees, pointing to an obviousness defense as an example of issue overlap (plf's response at 7). Although at least one court has expressly stated that raising such issues as obviousness and commercial success are insufficient to show a significant overlap of issues (Princeton Biochemicals Inc. v. Beckman Instruments Inc., 180 F.R.D. 254, 256 (D.N.J.1997)), courts in this district have repeatedly held that bifurcation in similar cases was inappropriate because issues of liability and willfulness/damages do overlap. See William Reber, LLC, 220 F.R.D. at 540; Real, 195 F.R.D. at 625-626 (finding that the question of willful infringement is relevant to both liability and damages); THK America, Inc., 151 F.R.D. at 629 (finding that the issues raised by an obviousness defense would be the "*same* in significant respects as the evidence relating to damages and, therefore, ought to be presented once rather than twice").

Because willfulness is assessed according to a totality of the circumstances, the Federal Circuit has identified a number of factors to consider in making a willfulness determination.[3]

---

simplification of issues do not necessarily come into play.

[3] Factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) alleged infringer's behavior as a party to the litigation; (4) defendants' sizes and financial conditions; (5) closeness of the case; (6) duration of defendants' alleged misconduct; (7) defendants' remedial action; (8) defendants' motivation for harm; and (9) whether defendants attempted to conceal their misconduct.

Knorr-Bremse, 383 F.3d at 1343; Read Corp., 970 F.2d at 827-28; Tenneco Auto. Operating Co. Inc. v. Cisteon Corp., 375 F.Supp.2d 360, 365 (D.Del.2005). The need to consider all of the factors implies that evidence of liability and willfulness will likely overlap. A.L., 2004 WL 1125911 at *3 ("much of the evidence establishing the totality of the circumstances will have already been presented in the initial liability phase"). Therefore, like the other courts in this district, we find bifurcation would result in prejudice to plaintiff, who, along with facing a substantial delay in final determination of the action, would be forced to present the same evidence in two separate trials.

Although the limited prejudice against defendants can be alleviated by proper instructions to the jury, the prejudice against plaintiff cannot be alleviated without denying bifurcation (See Real, 195 F.R.D. at 621). Therefore, after careful consideration, we conclude that defendants have failed to carry their burden of establishing the advantages of bifurcation, and we deny their motion.

## CONCLUSION

For the reasons set forth above, we deny defendants' motion for bifurcation of both the trial and discovery relating to the trial.

*JAMES B. MORAN*
Senior Judge, U. S. District Court

April 17, 2006.