IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRADING TECHNOLOGIES )
INTERNATIONAL, INC., )
 )
        Plaintiff, )
 )
    vs. ) No. 04 C 5312
 )
eSPEED, INC., eSPEED INTERNATIONAL, )
LTD, and ECCO WARE, LTD., )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Trading Technologies International, Inc. ("TT") brought suit against eSpeed, Inc., eSpeed International, Ltd., Ecco LLC, and EccoWare Ltd. ("eSpeed"), among others, alleging infringement of plaintiff's patents, U. S. Patent Nos. 6,766,304 ('304) and 6,882,132 ('132). Both parties have filed a number of summary judgment motions in an attempt to limit the scope of the trial. Today we deal with the parties' cross-motions for summary judgment on the priority date for the '132 and '304 patents, which is relevant to a determination of validity or invalidity. For the reasons stated herein, we deny eSpeed's motion for summary judgment and deny TT's cross-motion for summary judgment.

## BACKGROUND

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" such that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). For purposes of summary judgment, we construe the facts in favor of the non-movant (Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)), and draw all inferences and view underlying facts in the light most favorable to the non-moving party. U.S. v. Diebold,

Inc., 369 U.S. 654, 655 (1962). The mere existence of some factual dispute will not frustrate an otherwise proper summary judgment; only a genuine dispute over a material fact will defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). We take the following facts from the statements submitted by the parties pursuant to Local Rule 56.

The patents-in-suit are both entitled, "Click Based Trading with Intuitive Grid Display of Market Depth." The '304 patent issued on July 20, 2004, and the '132 patent issued on August 3, 2004. The '304 patent claims priority to a parent application filed on June 9, 2000 ("parent application").[1] The parent application, in turn, claims priority to a provisional application filed on March 2, 2000 ("provisional application"). Both patents-in-suit claim priority to the provisional application.

Every independent claim of the patents-in-suit includes the following element: "a single action of a user input device." Because dependent claims incorporate the claim limitations of the independent claim on which they depend, all claims of the patents-in-suit recite the claim element: "a single action of a user input device." In our Markman[2] order we construed "single action of a user input device" to mean "an action by a user within a short period of time that may comprise one or more clicks of a mouse button or other input device." Trading Technologies Int'l, Inc. v. eSpeed, Inc., 2006 WL 3147697, *8 (N.D.Ill.2006). We went on to explain, "this claim refers to the user's single action, not the action(s) the computer performs to execute the user's command." Id.

With respect to one of ordinary skill in the art, eSpeed does not dispute TT's contention that "[o]ne of ordinary skill in the art for purposes of this case is a person having (1) a

---

[1] eSpeed claims that the '132 patent also claims priority to the parent application. TT disputes that contention.

[2] Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), aff'd, 517 U.S. 370 (1996).

bachelor's degree or equivalent experience and (2) two years of programming experience, including experience programming graphical user interfaces for electronic trading based on input from a person with knowledge of the needs of an electronic trader." (TT's additional material facts, ¶ 22). The remainder of the parties' alleged undisputed material facts are, indeed, disputed, or at least disputed as to the parties' characterization of such facts. Since the remaining "facts" are generally argumentative, we address them in the discussion section below.

## DISCUSSION

The parties disagree as to the priority date of the patents-in-suit. eSpeed claims that the parent application of June 9, 2000, is the appropriate priority date. TT contends that both patents-in-suit properly claim priority to the provisional application filed on March 2, 2000. eSpeed's argument is as follows: Each claim of the patents-in-suit includes the claim limitation "a single action of a user input device." The provisional application never refers to a "single action," but instead refers solely to a "single click" of a mouse. The parent application discloses a broader definition of "single action," later generally adopted by the patents-in-suit. This court, upon TT's suggestion, construed "a single action of a user input device" to mean "an action by a user within a short period of time that may comprise one or more clicks of a mouse button or other input device." Trading Technologies Int'l., 2006 WL 3147697 at *8. Therefore, because "single action of a user input device," as construed, was not claimed in the provisional application, eSpeed argues, TT's patents-in-suit cannot claim priority to the date of the provisional. eSpeed sums up its argument: "The patents in suit are not entitled to the benefit of the priority date of the earlier-filed Provisional Application because the Provisional's narrowly drafted written description does not support the broad claims of the patents-in-suit." (eSpeed's motion, at 6). TT disagrees. TT disputes eSpeed's factual assertion

that the provisional application fails to describe any single action that is broader than a single click. TT further contends that even if eSpeed is correct from a factual standpoint, the law supports TT's priority claim.

A patent's priority date is significant, as sales made and actions taken more than one year prior to that date implicate the prior use and on sale bars of 35 U.S.C. § 102(b).[3] <u>Dippin' Dots, Inc. v. Mosey</u>, 476 F.3d 1337, 1340 (Fed.Cir.2007). Here, plaintiff is claiming priority to an earlier-filed application, specifically the provisional application filed on March 2, 2000. TT's patents-in-suit will be entitled to the benefit of the March 2, 2000, filing date so long as the provisional application satisfies all the requirements of 35 U.S.C. § 112. 35 U.S.C. § 120; <u>Go Medical Industries Pty., Ltd. v. Inmed Corp.</u>, 471 F.3d 1264, 1270 (Fed.Cir.2000). *See also* <u>New Railhead Manufacturing, L.L.C. v. Vermeer Manufacturing Co.</u>, 298 F.3d 1290, 1294 (Fed.Cir.2002). Section 112, paragraph 1 requires that the application "'contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.'" <u>Chiron Corp. v. Genentech, Inc.</u>, 363 F.3d 1247, 1253 (Fed.Cir.2004) (quoting 35 U.S.C. § 112, ¶ 1). In other words, the *provisional* must satisfy § 112 in such a manner as to "enable an ordinarily skilled artisan to practice the invention *claimed* in the *non-provisional* application." <u>New Railhead</u>, 298 F.3d at 1294 (emphasis in original).

The Federal Circuit has analyzed § 112, ¶ 1 to require both a written description and enablement. <u>Chiron Corp.</u>, 363 F.3d at 1253 (citing <u>Amgen Inc. v. Hoechst Marion Roussel, Inc.</u>, 314 F.3d 1313, 1330 (Fed.Cir.2003)). Enablement is a question of law based on

---

[3] 35 U.S.C. § 102(b) states: "A person shall be entitled to a patent unless – (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

underlying facts, and is satisfied only if one reasonably skilled in the art could practice the full scope of the invention claimed in the patent without undue experimentation. *Id.* The written description requirement, which is a separate inquiry from enablement (*see* New Railhead, 298 F.3d at 1295), "ensure[s] that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him.'" Chiron Corp., 363 F.3d at 1255 (citing In re Wertheim, 541 F.2d 257, 262 (CCPA 1976)).

We begin with enablement. According to the federal circuit, enablement must be commensurate in scope with the claim as construed. *Id.*, at 1256. As noted above, we construed "a single action of a user input device" to mean "an action by a user within a short period of time that may comprise one or more clicks of a mouse button or other input device." Trading Technologies Int'l., 2006 WL 3147697 at *8. Could one of reasonable skill in the art practice TT's invention, using "one or more clicks of a mouse button or other input device," from the description in the provisional application, without undue experimentation?[4] Based on the evidence in the record, we think one of ordinary skill in the art could practice the invention without undue experimentation for the reasons set forth below.

The parties' experts disagree as to whether one of ordinary skill would have read the provisional application to disclose a broader concept than a "single click" order entry. TT's expert, Christopher Thomas, determined that "[o]ne of ordinary skill in the art would have understood that the description of 'using' the left or right mouse buttons encompassed single clicks, double clicks, or other single actions." (TT's statement of additional facts, exh. L., at ¶ 9; *see also id.*, at 10, 11, 12). eSpeed's expert, Richard Ferraro disagrees, noting "It is my

---

[4] Although eSpeed did not specifically dispute TT's definition of one of ordinary skill in the art, eSpeed's expert, Richard Ferraro, defined one of ordinary skill in the art to be "a person with a Bachelors of Science degree in electrical engineering or computer science or equivalent with three years of work experience in the design of software user interfaces for personal computers." (eSpeed supplemental exhibits, exh. L., at ¶ 14). Ferraro indicated that his opinions would be the same under either his definition or Thomas's definition (*id.*, at ¶ 15).

opinion that one of ordinary skill would conclude, upon reading the Provisional Application as a whole, that 'order entry' is accomplished by a 'single click of a mouse button' and not by any 'single action of a user input device' as that term is used in the patents-in-suit, as construed by the court." (eSpeed supplemental exhibits, exh. L., at ¶ 16; *see also id.*, at ¶¶ 17, 18, 19, 20, 23, 29, 30, 31, 34, 36, 37, 44, 45, 58).

Even if the provisional application did not specifically disclose an order entry broader than a "single click," we find that it would not have taken significant experimentation to practice the invention using a double click or alternative order entry method based on the disclosures in the provisional application. *See* Chiron Corp., 363 F.3d at 1253 (noting that some experimentation does not eliminate a finding of enablement, so long as the necessary experimentation is not unduly extensive) (internal citations omitted). The equations described in the provisional application used to enter an order "do not depend on how the left or right mouse buttons are used to send an order; the equations need not be modified depending on whether a 'single click,' 'double click,' or other single discrete event is used." (TT's statement of additional facts, exh. L., at ¶ 9).[5] Nor are the pictures or flow charts depicted in the provisional application reliant on whether a "single click," "double click," or other discrete single action is used (*id.*, at ¶ 10).

We move now to the written description requirement, which is the crux of the parties' debate. Although the Federal Circuit has recognized that "an invention may be enabled even though it has not been described," University of Rochester v. G.D. Searle & Co., Inc., 358 F.3d

---

[5] eSpeed and its expert take issue with TT and its expert's use of various terms used interchangeably to explain the single action disclosure in the provisional application, including the term "discrete event." While we note that a patent case turns on the precise definition of words and agree that TT's use of undefined words somewhat clouds the issue, we remain convinced that one of ordinary skill in the art could practice TT's innovation without undue experimentation. Many lay people understand that a click of a mouse and a strike of the enter key can often be used to accomplish the same task; we see no reason why one skilled in the art of computer design would not quickly come to similar conclusions.

916, 921 (Fed.Cir.2004) (recognizing that "[s]uch can occur when enablement of a closely related invention A that is both described and enabled would similarly enable an invention B *if* B were described") (emphasis in original)), the same court has also noted that the two requirements "usually rise and fall together." Lizardtech, Inc. v. Earth Resources Mapping, Inc., 424 F.3d 1336, 1345 (Fed.Cir.2005). Unlike the enablement requirement, the written description requirement is generally considered a question of fact. Augustine Medical, Inc. v. Gaymar Industries, Inc., 181 F.3d 1291, 1303 (Fed.Cir.1999); Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed.Cir.1991). Where, however, a reasonable juror could not find that the original disclosure was sufficiently detailed to enable one of skill in the art to recognize that the patentee invented what is claimed, a grant of summary judgment is appropriate. University of Rochester, 358 F.3d at 927 (citing TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co., 264 F.3d 1111 (Fed.Cir.2001)).

To find that the provisional application successfully describes plaintiff's patented invention, we need not find that the application describes exactly the subject matter claimed, but rather must find that the "'disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'" Vas-Cath Inc., 935 F.2d at 1563 (internal citations omitted). *See also* University of Rochester, 358 F.3d at 922-23. Because compliance with § 112 is determined on a case-by-case basis, precedential value of earlier cases is somewhat limited. *See* Vas-Cath Inc., 935 F.2d at 1562 (citing In re Driscoll, 563 F.2d 1245, 1250 (CCPA 1977)).

TT argues that the provisional application discloses an inventive concept that is broader than a single click.[6] TT suggests three points to support its argument: (1) the provisional

---

[6] We note, as does eSpeed, that TT somewhat "buried" this argument at the end of its brief. While such placement does not generally bode well for the argument, we address its merits at the outset.

application devotes a section to the inventive concept of "using" either the left or right mouse button to enter an order; (2) the title of the provisional application is "Click Based Trading"; and (3) the provisional includes references to such terms as "click based," "click," "clicks," and "clicked," which are not limited to a single click. None of plaintiff's arguments are persuasive. The first sentence of the provisional application reads: "Trading Technologies has developed software that will enable traders of any product that can be traded (a 'commodity') on an electronic exchange or electronic marketplace to send orders with a single click of a computer mouse" (def's motion, exh. H, at eS65521). While "using" the mouse buttons to make trades, and inclusion of terms such as "clicks" and "clicked" may be read as broader than a single click when removed from the rest of the provisional, in context we cannot see how the provisional application explicitly discloses a concept broader than single click order entry. *See* New Railhead, 298 F.3d at 1296.

Even if the provisional application did not specifically disclose a concept broader than a single click, TT argues that disclosure of a species (single click) will support a later filed claim to the genus (single action). In support, TT points to Bilstad v. Wakalopulos, 386 F.3d 1116 (Fed.Cir.2004). In Bilstad, the Federal Circuit articulated the general rule that disclosure of a species provides sufficient written description support for a later filed claim directed to the genus. While the Bilstad court did not determine whether the plaintiff's disclosure of manipulation in a small number of directions would reasonably convey to a person skilled in the relevant art that plaintiff had possession of manipulation in a plurality of directions, the Federal Circuit court looked to precedent to articulate the Bilstad ruling. In Ralston Purina Co. v. Far-Mar-Co, Inc., 772 F.2d 1570 (Fed. Cir.1985), the Federal Circuit determined that although the disclosure did not teach solvent-extracted soybean meal having greater than 50% protein content, based on the knowledge of the industry at the time, the disclosure supported

soybean meals with contents above 50%. The Bilstad court also looked to In re Smythe, 480 F.2d 1376 (CCPA 1973), where disclosure of an inert fluid supported use of air or other gas as a segmentizing medium to separate liquid samples, and In re Rasmussen, 650 F.2d 1212 (CCPA 1981), where disclosure of a single method of applying adhesive supported the broad language "adheringly applying" of an amended claim.

The first issue of dispute is the application of Bilstad to the case at hand. eSpeed points to New Railhead and Augustine Medical to argue that Bilstad is inapplicable. We disagree. The New Railhead court, in determining that the earlier disclosure did not reveal an angled relationship between the drill bit and its housing, did not discuss any disclosed angling of the product that may have been read as a species of a larger genus. Augustine Medical comes closer to the point. Therein, the Federal Circuit determined that the parent application's failure to disclose a lower body blanket was fatal to its claim of priority where the parent only discussed care sites of the head and neck region. We believe, however, that Augustine Medical can be distinguished. In that case the court suggested that a lower body blanket was a completely different product than the product disclosed in the parent application. 181 F.3d at 1303 ("these passages, in fact, do not at all relate to the claimed subject matter"). Here the provisional application defines a method of entering an order – through a single click. While the blanket described in Augustine Medical's parent application suggested only one use for the blanket, the single action entry claimed in plaintiff's patents performs the same use and the same function as the species defined in the provisional. eSpeed also argues that the "genus" must be a defined class having some reasonably precise meaning in the art. In Application of Lukach, 442 F.2d 967 (CCPA 1971), it is true that the Court of Customs and Patent Appeals, the precursor court to the Federal Circuit, noted that the term "narrow" had no reasonably precise meaning in the art relevant to the physical characteristics of copolymers of ethylene

and propylene, and therefore the court could not determine the relationship between the claims and the previously filed "grandparent" application's disclosures. In thinking about the purposes of the written description requirement – to put the public on notice of the scope of patentee's invention – we look at the Lukach discussion in terms of what one skilled in the art would glean from the term "narrow," recited in the grandparent application. We are further supported by the Federal Circuit's recent discussion in Lizardtech of the relationship between the enablement and written description requirements. Therein, the Federal Circuit noted, "a recitation of how to make and use the invention across the full breadth of the claim is ordinarily sufficient to demonstrate that the inventor possesses the full scope of the invention, and vice versa." 424 F.3d at 1345. The Lizardtech court explained further:

> A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. That is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before. Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation.

*Id.* (internal citations omitted).

Thus we arrive at the next dispute. Would one reasonably skilled in the art, reading the provisional application that explicitly calls for a "single click" user entry, have known that the patentee had possession of a broader "single action of a user input device," as defined by this court? *See* Bilstad, 386 F.3d at 1125 ("If the difference between members of the group is such that the person skilled in the art would not readily discern that other members of the genus would perform similarly to the disclosed members, *i.e.*, if the art is unpredictable, then disclosure of more species is necessary to adequately show possession of the entire genus"). On that question we find a factual dispute precluding summary judgment for either party.

Both parties submitted evidence that goes to the issue of how one reasonably skilled in the art would have read the provisional application at the time of its filing. TT's expert states:

> More generally, one of ordinary skill in the art would have understood from the provisional application that the expected user experience was order entry in a single step after certain parameters are preset. One of ordinary skill in the art would have recognized that the 'single step' user experience could be provided by a 'single click' of a mouse, a 'double click' of a mouse, or in any other single action.

(plf's statement of facts, exh. L, at ¶17).[7] And while defense expert Richard Ferraro suggested in his deposition that a double click of a mouse is commonly used for the same functions as a single click (*id.*, exh. M, at 57), he noted the following in his declaration:

> It is my opinion that one of ordinary skill would conclude, upon reading the Provisional Application as a whole, that "order entry" is accomplished by a "single click of a mouse button" and not by any "single action of a user input device" as that term is used in the patents-in-suit, as construed by the court.

(defs' supplemental exhibits, exh. L., at ¶ 16). Ferraro, explaining the disparity in his statements, says that "[i]t is, and always has been, my opinion that a 'single click' or a 'double click' are examples of a 'single action' as construed by the court with respect to the patents-in-suit. It has never been my opinion, nor is it now my opinion, that the disclosure of a 'single click' constitutes disclosure of a 'double click' or a 'single action' as construed by this court". (*Id.*, at ¶ 20). Defendants' citations to the deposition testimony of the inventors does not establish that one of ordinary skill in the art would not have understood, based on the provisional's disclosure of a single click, that the inventors had possession of alternate forms of order entry, such as a double click or other single action. For example, Harris Brumfield initially described the one click trading ("[a]nd pretty much you just run it and one click, one

---

[7] We also note that a reasonable juror could believe that the broader concept of single action order entry would naturally occur to one skilled in the art from a reading of the use and functions of the click entry system, along with the example of single click, disclosed in the provisional application. *See* Smythe, 480 F.2d at 1384.

click, one click, and it's throwing orders every time you click"), but then suggested that "one click of a mouse" may simply be "one way you can do one click trading" (defs' statement of facts, exh. J, at p. 44). The parties' disputed testimony is sufficient to create a triable issue of fact. *But cf.* McMullin v. Carroll, 153 Fed.Appx. 738, 744 (Fed.Cir.2005) (defendant introduced the statement of an expert witness that a person of ordinary skill in the art would not have understood the disclosure in the specification to suggest that the inventor possessed a broader degree of angles of traction teeth, while plaintiff failed to introduce any competing testimony).

Defendants may still succeed on their argument, however, if plaintiff disavowed the broader reading of "single action" in the provisional application. In Tronzo v. Biomet, 156 F.3d 1154 (Fed.Cir.1998), the Federal Circuit determined that plaintiff's patent was not entitled to the filing date of its parent application. Therein, the specification specifically distinguished shapes other than a conical shape of the patented cup used for artificial hip prosthesis. The Tronzo court noted that "the specification specifically distinguishes the prior art [using different shape cups] as inferior and touts the advantages of the conical shape of the '589 cup." 156 F.3d at 1159. In Bilstad, the Federal Circuit reaffirmed that the Tronzo analysis remains good law as an exception to the species/genus rule articulated by the Bilstad court. *See* 386 F.3d at 1125. GL, in its brief supporting eSpeed's position, argues "that in situations such as this, where the applicant specifically distinguished the invention disclosed in a parent application from the prior art by citing to a specific element of the invention, a later-filed application is not entitled to the priority date of the parent application when the later-filed application then claims an invention with an element broader than that disclosed in the parent application." (GL's brief, at 11). We find defendants' argument unpersuasive. The provisional application does distinguish prior art screens based on the manual entry of

multiple elements of an order. For example, the provisional reads, "The requirement of having to set multiple elements of an order, as described above, prior to an order being sent to market, is obviously time consuming for the trader." (eSpeed statement of facts, exh.H, at eS65532). Our construction of "single action of a user input device" is not so broad as to include manual entry of multiple elements of an order. We find no <u>Tronzo</u> exception.

## CONCLUSION

For the reasons stated herein, we deny eSpeed's motion for summary judgment and deny TT's cross-motion for the same.

JAMES B. MORAN<br>
Senior Judge, U. S. District Court

July 12, 2007.