IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 04 C 5312 ) |
| eSPEED, INC., eSPEED INTERNATIONAL, LTD, and ECCO WARE, LTD., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International, Inc. ("TT") brought suit against eSpeed,

Inc., ITSEcco Holdings Limited, Ecco LLC, and EccoWare Ltd. (collectively "eSpeed"),

alleging infringement of U.S. Patent Nos. 6,766,304 ('304) and 6,882,132 ('132). In a series of

related cases, TT has asserted similar patent infringement allegations against GL Consultants,

Inc. and GL Trade SA (collectively "GL"), CQGT, LLC and CQG, Inc. (collectively "CQG"),

FuturePath Trading, LLC ("FuturePath"), and Rosenthal Collins Group, LLC. ("RCG").

After a three-day Markman[1] hearing, we construed the relevant claims of TT's patents-in-suit.

Trading Technologies Int'l, Inc. v. eSpeed, Inc., 2006 WL 3147697 (N.D.Ill.2006) ("Claim

Construction"). Using that construction, we granted eSpeed summary judgment of non-

infringement for the majority of its accused products. Trading Technologies Int'l, Inc. v.

eSpeed, Inc., — F.Supp.2d —, 2007 WL 1810519 (N.D.Ill.2007) ("Non-Infringement"). Our

determination turned primarily on our finding that the automatic recentering features

contained in eSpeed's products fell outside the ambit of TT's patent protection. TT has filed

---

[1]Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), aff'd, 517 U.S. 370 (1996).

two motions for reconsideration regarding our non-infringement determination, which we deal with together. Because the additional defendants'[2] products also contain automatic recentering functions, they have been offered the opportunity to submit arguments along with eSpeed. For the reasons stated herein, we deny TT's motions for reconsideration.

## DISCUSSION

Motions to reconsider are designed to "bring the court's attention to newly discovered evidence or to a manifest error or [sic] law or fact." Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 368 (7th Cir.2003) (internal citations omitted). Such motions are not designed to allow parties to rehash previously rejected arguments. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir.2000). Motions to reconsider are rarely granted and are only appropriate where "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." Bucciarelli-Tieger v. Victory Records, Inc., 2007 WL 1610460, *1 (N.D.Ill.2007) (citing Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990)). Defendants argue that TT's motions for reconsideration are inappropriate as they rehash old arguments and reintroduce exhibits already filed. While defendants raise a valid concern, plaintiff has more fully developed its previous arguments and we will address them on the merits.

First, we turn to the single issue raised in TT's original motion for reconsideration.

---

[2]Although RCG is technically a plaintiff, its interests align with defendants and, for the purposes of this motion, we refer to all defendants and RCG, collectively, as defendants.

Therein, TT suggested that its receipt of allowance of claims pending in foreign jurisdictions for claims directed to, in combination, a static price axis and automatic recentering, proves that automatic recentering does not vitiate a static claim element. TT also points to a similar application pending before the United States Patent and Trademark Office, which has yet to be fully accepted. Arguing that "several patent offices have now confirmed what TT has always contended – the presence of automatic recentering does not vitiate the purpose of a static price axis ," TT requests reconsideration of the construction of the term "static" in the patents-in-suit and/or reconsideration of our determination that the presence of automatic recentering vitiates the patents' static requirements. Defendants contend that TT's unrelated patent applications are irrelevant to both the construction of claim terms contained in the patents-in-suit and the determination that the presence of any movement vitiates the static element in the patents.

We agree with defendants. Our construction was based primarily on intrinsic evidence, as guided by the Federal Circuit. *See* Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005). Extrinsic evidence unavailable to those evaluating the patent at the time of the invention is not germane to a determination of claim construction. Nor is it clear evidence against our finding of claim vitiation. Analysis of claim vitiation rises and falls with the construction of a claim term. In this case we determined that, based on our construction of "common static price axis" and "static display of prices," the presence of movement uncontrolled by the user vitiates TT's claimed element. Another patentee may differently describe a static price axis such that the presence of movement would not vitiate that claim element. *See* Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1376 (Fed.Cir.2006) (While words in a claim are generally given their ordinary and customary meaning, a patentee can "'act as his own

lexicographer to specifically define terms of a claim contrary to their ordinary meaning'"). Therefore, we reject plaintiff's argument that patents separate and distinct from the patents-in-suit can stand as evidence that movement does not vitiate a claim contained in the patents-in-suit.

The analysis set forth above is also relevant to TT's argument that eSpeed cannot argue claim vitiation because it submitted a patent application ensuring accuracy that contained both automatic recentering and a static price axis. TT points to the following language contained in the recent eSpeed patent application:

> |I|t is an object of the invention to provide systems and methods that clearly represent price fluctuations while ensuring quick, accurate and efficient execution of trades.
>
> * * * *
>
> It is yet another object of the invention to adjust the display of the bid/ask prices and their associated quantities while maintaining accurate and accessible axes for order entry at desired price levels

(TT supp. motion, exh. 1 at eS67332-33). TT focuses on the patent application's objective of "ensuring quick, accurate and efficient execution of trades." Remembering that defendants, and this court, read TT's similar patent promise to "ensure fast and accurate execution of trades" to guarantee accuracy, and thus require the price axis to permanently remain still, TT suggests that eSpeed's patent application is an admission that automatic recentering does not vitiate a static claim element. TT contends:

> eSpeed's admission proves that the presence of its particular automatic re-centering does not vitiate the purpose of a "static" price axis. eSpeed should be estopped from even arguing vitiation based on this admission. At a minimum, taking all reasonable inferences in favor of TT, the non-moving party, certainly there is an underlying material issue of fact on this issue.

(TT's suppl. motion, at 2).

We do not find TT's argument persuasive. As noted above, claim vitiation rises and falls

with claim construction. eSpeed's patent has different inventors, different claims, and a different prosecution history. Neither this court nor any other court has construed the claim terms contained in eSpeed's patent application and we deny any suggestion that we should do so now. The term "static" does not arise in the claims of eSpeed's patent. Therefore, an assurance of accuracy and efficiency in eSpeed's patent application has no bearing on either our construction of "static" in the patents-in-suit or our application of that construction in assessing claim vitiation.

We turn now to plaintiff's argument that we erred in our application of amendment-based prosecution history estoppel. In granting eSpeed summary judgment of non-infringement, we addressed two features of eSpeed's accused products: Dual Dynamic automatic recentering and eSpeedometer "drift" recentering. We held that TT was barred from arguing its doctrine of equivalents theory as against Dual Dynamic's automatic recentering feature because "[a] finding that a change of positions (even once or twice per trading day) is equivalent to not changing positions unless by manual re-centering would vitiate the 'static' requirement." Non-Infringement, at *8. Unlike the automatic recentering of the Dual Dynamic product, eSpeed's eSpeedometer includes a "drift" recentering feature. We previously rejected eSpeed's argument that inclusion of "drift" recentering vitiates the "static display of prices" or "common static price axis" claim elements of TT's patents-in-suit. Rather, we found that "the eSpeedometer 'performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result.'" Id., at *9 (citing Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1317 (Fed.Cir.1998)). We held, however, that TT was foreclosed from arguing its doctrine of equivalents theory because of its prosecution history. TT now challenges our application of amendment-based

prosecution history estoppel to the "drift" recentering feature.

During the course of prosecuting its patents-in-suit, TT amended the relevant portion of

Claim 22 of the '132 patent as follows (deletions marked in brackets, additions in italics):

> displaying [the] market depth of [a] *the* commodity [traded in a market], through a
> dynamic display of a plurality of bids and a plurality of asks in the market for the
> commodity, including *at least a portion of* the bid and ask quantities of the
> commodity, *the dynamic display being* aligned with a static display of prices
> corresponding thereto, *wherein the static display of prices does not move in response*
> *to a change in the inside market*;

(defs' non-infringement motion, exh. C, at eS65203). Similarly, TT amended the relevant

portions of Claim 41 of the '304 patent as follows:

> displaying the bid and ask display regions in relation to fixed price levels positioned
> along the common static price axis such that *when the inside market changes, the price*
> *levels along the common static price axis do not move and at least one of* the first and
> second indicators [can] moves in the bid [and] *or* ask display regions relative to the
> common static price axis [when the inside market changes];

(*id.*, exh. D, at eS65741).

In our infringement analysis we looked at those amendments and found that, during

prosecution, TT amended its claims from requiring a price axis that did not change positions

to requiring a price axis that did not move in response to a change in the inside market.

Therefore, we determined, based on amendment-based prosecution history estoppel, TT could

not reclaim claim scope it surrendered during prosecution. Festo Corp. v. Shoketsu Kinzoku

Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 733-34 (2002) ("The doctrine of equivalents allows

the patentee to claim those insubstantial alterations that were not captured in drafting the

original patent claim but which could be created through trivial changes. When, however, the

patentee originally claimed the subject matter alleged to infringe but then narrowed the claim

in response to a rejection, he may not argue that the surrendered territory comprised

unforeseen subject matter that should be deemed equivalent to the literal claims of the issued

patent").

TT suggests that our application of <u>Festo</u>'s amendment-based estoppel was in error. TT

begins with the assertion that claim terms must be construed the same way throughout analysis

of all aspects of the case. *See* <u>W.L. Gore & Associates, Inc. v. Garlock, Inc.</u>, 842 F.2d 1275,

1279 (Fed.Cir.1988) ("Having construed the claims one way for determining their validity, it

is axiomatic that the claims must be construed in the same way for infringement"). TT then

points us to our construction of "common static price axis" and "static display of prices." We

construed "common static price axis" as "a line comprising price levels that do not change

positions unless a manual re-centering command is received and where the line of prices

corresponds to at least one bid value and one ask value" and "static display of prices" as "a

display of prices comprising price levels that do not change positions unless a manual re-

centering command is received." (<u>Claim Construction</u>, at *4). Although we adopted TT's

language of "not chang[ing] positions," we explicitly held that our definition allowed for no

movement uncontrolled by the user, finding that any such movement would frustrate the

purpose of the patents' invention. In fact, in rejecting TT's motion to clarify or reconsider,

we explained: "Where, however, the claim limitation itself – here, a static condition – requires

permanency, any movement (outside of manual re-centering or re-positioning) negates one of

the specified claim limitations." <u>Trading Technologies Int'l, Inc. v. eSpeed, Inc.</u>, 2007 WL

611258, *5 (N.D.Ill.2007).

As TT's original claims included the claim terms "static display of prices" and "common

static price axis," TT contends that one of ordinary skill in the art would have understood

them to mean that the price axis never moves. Taking the inference to its logical conclusion,

TT argues, one so skilled would not have read the amendment to narrow the scope of the claim. TT raised this argument once before, in response to eSpeed's motion for summary judgment of non-infringement. While we recognized that it seemed somewhat convincing, we rejected it. We explained:

> In thinking about why we construed the claims as narrowly as we did, however, we are reminded that we looked to the claim language, the specification, and the prosecution history. TT cannot, after having been unsuccessful in arguing for a broader construction, use our narrower construction as a weapon to essentially broaden its claims.

(Non-Infringement, at *11).[3]

The goal of claim construction is to determine how one of ordinary skill in the art would have understood the claims, and thus the protected technology. In Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005), the Federal Circuit suggested that courts should begin claim interpretation by inquiring as to how a person of ordinary skill in the art understands a claim term, using the same resources as were available to one so skilled, specifically the patent specification and prosecution history. Amendment-based estoppel similarly serves a public notice function. The Supreme Court suggested that the purpose of applying prosecution history estoppel is "to hold the inventor to the representations made during the application process and to the inferences that may reasonably be drawn from the amendment." Festo, 535 U.S. at 737-38. The Court continued: "By amending the application, the inventor is deemed

---

[3]We recognize that TT may have a valid argument and note that this was a close call. We also recognize that our decision may have been influenced by the impending trial and our disinclination to reopen a significant issue for debate. We have previously noted that this case is certain to find itself in front of the Federal Circuit for ultimate resolution and acknowledge our place as a "way station" to the Court of Appeals. Therefore, we are further convinced that speedy resolution of all issues before this court is in everyone's best interest. TT's motions for reconsideration have preserved their right to argue against our decision regarding prosecution history estoppel. Thus, we leave in place our original determination for review by the Federal Circuit.

to concede that the patent does not extend as far as the original claim." *Id.*, at 738. One of ordinary skill in the art, reading the patent applications and their amendments, would conclude that TT thought of asserting a broader claim and had to narrow it to succeed in achieving patent protection. The doctrine of equivalents was designed to allow for a patentee's inability to "capture the essence of innovation," but a prior application specifically covering the accused products undercuts that premise. *Id.*, at 734. Therefore, TT cannot now rely on our narrow construction of its claim terms to recapture, through the doctrine of equivalents, the very matter it surrendered in order to achieve patent protection of its innovative technology.

## CONCLUSION

For the reasons stated above, we deny TT's motion and supplemental motion for reconsideration.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____, 2007.