

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 04 C 5312 |
| eSPEED, INC., eSPEED, INTERNATIONAL, LTD., and ECCO WARE, LTD., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 21, 2007, this court denied summary judgment of validity/invalidity to both parties in the patent infringement dispute between plaintiff Trading Technologies International Inc. ("TT") and defendants eSpeed, Inc., eSpeed International, Ltd., and Ecco Ware, Ltd. (collectively "eSpeed") (dkt 845) ("Invalidity Order"). After assessing a flood of exhibits and a number of briefs, we held that, under the test set forth by the Supreme Court in Pfaff v. Wells Electronics, Inc., 525 U.S. 55 (1998), neither party could establish, as a matter of law, that invalidating prior art was or was not sold prior to the critical date of the patents-in-suit. Now, GL Consultants, Inc, GL Trade SA, and FuturePath Trading, LLC (collectively "GL"), defendants in related patent infringement actions, have brought a motion for clarification of our order denying cross-motions for summary judgment of invalidty based on Trade Pad in the eSpeed case. eSpeed, along with related defendants CQG and RCG, have joined GL's motion for clarification. For the reasons stated herein, we deny GL's motion for clarification.

## BACKGROUND

In its motion for summary judgment that TT's patents are invalid based on prior art, eSpeed focused on an alleged sale of GL Win with Trade Pad as an invalidating prior sale

under 35 U.S.C. § 102(b).[1] eSpeed asserted that GL sold its GL Win with Trade Pad – an allegedly invalidating prior art – to Cargill Investment Services, Inc. ("CIS") as part of a global contract executed more than two weeks prior to the critical date of the patents-in-suit.[2] Although eSpeed presented testimonial and documentary evidence that Trade Pad was included in the contract, we could not find, as a matter of law, that eSpeed proved through clear and convincing evidence that Trade Pad was offered for sale to CIS. *See* Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1045-46 (Fed.Cir.2001) (defendants must demonstrate a prior sale under § 102(b) by clear and convincing evidence).[3] We also denied summary judgment for TT, finding that its evidence was insufficient to prove the opposite.

## DISCUSSION

Our denial of summary judgment of invalidity was structured around the law of Pfaff, which is GL's primary focus in the current motion. Specifically, GL suggests that we misapprehended the law of Pfaff and its progeny and seeks clarification. GL, citing Pfaff, suggests:

> [T]he sale of GL Win to CIS by the contract dated February 17, 1999 invokes the on-sale bar if: 1) that contract, which was prior to the critical date of March 2, 1999, included a license, *i.e.*, sale, of a GL WIN package that included the delivery of the Tradepad application at any time during the term of the contract and 2) Tradepad was ready for patenting prior to the critical date.

(GL's motion at 3).

---

[1] Section 102(b) of the patent law states: "A person shall be entitled to a patent unless – (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

[2] Although there remains an open dispute about the priority date for the patents-in-suit, for the purposes of eSpeed's motion and this motion to clarify, all parties have accepted a March 2, 1999, priority date.

[3] GL Win was GL's front-end system. According to eSpeed and GL, it is Trade Pad, allegedly a component of GL Win, that is the invalidating prior art. Therefore, our determination that GL Win was sold to CIS prior to the critical date of the patents-in-suit is insufficient to create an on-sale bar. Defendants failed to establish that Trade Pad was included in the GL Win package for which CIS contracted.

GL's argument can be boiled down to the following: CIS contracted for the GL Win package, including all future enhancements, for an 18-month period. Trade Pad was ready for patenting prior to March 2, 1999. That CIS may or may not have been aware of Trade Pad at the time of the license contract, GL argues, is irrelevant to the on-sale analysis of § 102(b). Therefore, according to defendants, the February 17, 1999, GL-CIS contract invokes the on-sale bar of § 102(b).

We take a moment to discuss the particulars of Pfaff. In that case the Supreme Court answered the following in the affirmative: "whether the commercial marketing of a newly invented product may mark the beginning of the 1-year period [of the on-sale bar] even though the invention has not yet been reduced to practice." Pfaff, 525 U.S. 57. In Pfaff, petitioner patentee filed an application for a patent on a computer chip socket on April 19, 1982, making April 19, 1981, the critical date for purposes of the on-sale bar of § 102(b). In February or March 1981, in response to a request from Texas Instruments, Pfaff sent detailed drawings of the chip socket, describing the design, dimensions and materials used in making the socket. After being shown his sketches, on April 8, 1981, Texas Instruments provided Pfaff with written confirmation of a previously placed oral purchase order for 30,100 of his new sockets. At that time, satisfied that his design would work, Pfaff did not have any prototypes or working embodiments of the chip and did not reduce his invention to practice until the summer of 1981. The Federal Circuit reversed the district court's finding of validity, concluding that Pfaff's invention was substantially complete at the time of the sale to Texas Instruments, and therefore, even though the invention had not been reduced to practice at the time of the sale, the one-year on-sale bar limitation began to run. The Supreme Court affirmed the Federal Circuit's determination, noting that Pfaff could have obtained a patent

on his chip socket when he accepted the purchase order from Texas Instruments.[4] Therefore, the invention was "on sale" and the one-year period of § 102(b) began to run.[5] In summation, the <u>Pfaff</u> court established a two-part test to determine when the on-sale bar applies: (1) the product must be the subject of a commercial offer for sale, and (2) the invention must be ready for patenting. *Id.*, at 67. An invention is ready for patenting as long as it has either been reduced to practice or the inventor has prepared drawings or other descriptions of the invention sufficiently specific to enable a person skilled in the art to practice the invention. *Id.*

GL argues that our earlier concern over Trade Pad's inclusion in the GL Win system sold to CIS as part of the February 17, 1999, contract, was incorrectly considered under the first prong of the <u>Pfaff</u> test, rather than the second prong. We disagree. <u>Pfaff</u>'s first prong requires that the invention be on sale in order to start the one-year limitation of § 102(b). We determined that eSpeed was unable to establish, by clear and convincing evidence, that Trade Pad was included as part of the sale to CIS. GL's argument that there was no requirement that Trade Pad be specifically listed in the CIS contract to invoke the on-sale bar is unavailing. While it correctly states the law, GL must establish that Trade Pad was, indeed, on sale prior to the critical date of the patents-in-suit. To do that, GL once again points to GL Win user guides, back-up CDs, and testimony from CIS personnel such as Michael Glista, allegedly showing that Trade Pad was in existence prior to the execution of the contract. We have already determined that such evidence is insufficient to establish that Trade Pad was offered for sale as part of the GL-CIS contract. GL over-simplifies our decision by arguing that it was

---

[4] The Court noted, at the outset, that the word "invention" in the Patent Act references the inventor's conception, rather than a physical embodiment of the idea.

[5] The Supreme Court narrowed the holding of the Court of Appeals, noting: "The word 'invention' must refer to a concept that is complete, rather than merely one that is 'substantially complete.' It is true that reduction to practice ordinarily provides the best evidence that an invention is complete. But just because reduction to practice is sufficient evidence of completion, it does not follow that proof of reduction to practice is necessary in every case." <u>Pfaff</u>, 525 U.S. at 66.

based solely on the fact that the Trade Pad module was not explicitly listed as a module in the GL-CIS contract. Although we began with the language of the contract, which does not explicitly mention Trade Pad or a method or display of a vertical price axis, we spent nearly 15 pages addressing eSpeed's evidence that Trade Pad was included as part of GL Win, along with TT's rebuttal. In summation, we concluded that "eSpeed has not carried its burden to establish the necessary undisputed facts to prove by clear and convincing evidence that GL sold or offered to sell its GL Win with Trade Pad to CIS in the February 17, 1999, contract." Invalidity Order, at 20. We decline to alter our determination.

GL's reliance on Scaltech v. Retec/Tetra LLC, 178 F.3d 1378 (Fed.Cir.1999), Abbott Labs v. Geneva Pharm., Inc., 182 F.3d 1315 (Fed.Cir.1999), and Sealmaster LLC v. Silver Line Building Products, 199 F.Supp.2d 783 (E.D.Tenn.2001) is unavailing. In each of those cases the courts determined that the invention was on sale prior to the critical date. Such a determination, each court noted, was unrelated to whether the parties to the contract specifically identified the limitations of the invention or recognized the significance of the limitations at the time of the offer. For example, in Abbott Labs, the Federal Circuit noted that even though the parties did not know it at the time, it was undisputed that the invention was the subject matter of three commercial sales before the critical date. 182 F.3d at 1318. The Abbott Labs court stated that "[t]he sale of the material in question obviates any need for inquiry into conception." Id., at 1318-19. In this case there is a dispute as to whether the invention (Trade Pad) was actually the subject matter of any commercial sale prior to the critical date. But cf. Sealmaster, 199 F.Supp.2d at 796 (finding that even though the term "J-rail" was not used in describing the product sold, the "so-called fin rail" sold possessed the same characteristics as the patented product).

Nor does GL's argument that the inclusion of all upgraded versions of GL Win in the GL-

CIS contract alter our analysis. It is still unclear that Trade Pad was ever offered for sale to CIS prior to the critical date of the patents-in-suit. First, although arguments are often presented in the alternative, GL's argument that Trade Pad may not have been included in GL Win as of February 17, 1999, but was later incorporated within the 18-month licensing period, directly contradicts its earlier argument that the documentary and testimonial evidence establishes that Trade Pad was in fact part of GL Win as of February 1999. Second, and more importantly, we are not convinced by the evidence entered that defendants establish, by clear and convincing evidence, that Trade Pad was ever offered for sale. And that is why eSpeed failed to survive the first prong of Pfaff's test for establishing an on-sale bar. We held that contradicting testimony, implications of bias, and dispute over the authenticity of documentary evidence made it impossible to determine, as a matter of law, that Trade Pad was offered for sale to CIS. <u>Invalidity Order</u>. Nothing in GL's motion for clarification convinces us that we were wrong.

For purposes of clarification, we will specifically address GL's argument that our question as to whether or not one may sell something that may not have been created does not properly fall within the first prong of <u>Pfaff</u>. GL seems to suggest that even if neither GL nor CIS knew that Trade Pad would be offered as an enhancement at the time of the sale, as long as Trade Pad was ready for patenting before the critical date, CIS actually contracted for the sale of Trade Pad. While that might be true from a contract law perspective, we cannot see how that could possibly lead to the running of the one-year period for an on-sale bar. In fact, in <u>Abbott Labs</u>, a case cited by GL, the Federal Circuit notes that "[o]ne of the primary purposes of the on-sale bar is to prohibit the withdrawal of inventions that have been placed into the public domain through commercialization." 182 F.3d at 1319. If GL never placed Trade Pad into the public domain before the critical date of plaintiff's patents (<i>i.e.</i> if it existed only as a patentable

idea in GL's offices and was never communicated to CIS), invalidating TT's patents would in no way operate to achieve the purpose of the on-sale bar. As we have previously noted, § 102(b) was established to "prohibit the inventor from removing existing knowledge from public use, prohibit an extension of the period for exploiting the invention, and favoring prompt and widespread disclosure of inventions." <u>Trading Technologies Int'l., Inc. v. eSpeed, Inc.</u>, 2007 WL 2410382, *3 (N.D.Ill.2007) (recognizing the shift away from the totality of the circumstances test, but also recognizing that the Federal Circuit has continued to look to the policies underlying § 102(b) to provide context for assessment). We are confident that the Supreme Court could not have intended to include a situation such as the one at hand as a sale or offer for sale for the purposes of beginning the one-year limitation of § 102(b). Unlike in <u>Scaltech</u>, <u>Abbott Labs</u>, and <u>Sealmaster</u>, where the buyers actually received the invention, <u>Pfaff</u> cannot operate to bar a patent when an inventor maintains his invention in secret, fails to specifically offer the invention for sale, and delivers the invention after the critical date.

## CONCLUSION

For the reasons stated above, we deny GL's motion for clarification.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 19, 2007.