UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trading Technologies International, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 5312 |
| | ) | |
| v. | ) | Judge James B. Moran |
| | ) | |
| eSpeed, Inc., eSpeed International, Ltd., | ) | Magistrate Sidney I. Schenkier |
| Ecco LLC, and EccoWare Ltd. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### eSPEED'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR WILLFUL INFRINGEMENT

Pursuant to Federal Rule of Civil Procedure 50, Defendants eSpeed, Inc., eSpeed International LTD., Ecco LLC, and EccoWare Ltd. (collectively "eSpeed") hereby move for judgment in their favor on Plaintiff Trading Technologies' ("TT's") willfulness claims, and ask the Court to set aside the jury's finding of willfulness. At trial, TT failed to prove that eSpeed and Ecco's conduct satisfied the new, higher, standard to show willfulness based on *In re Seagate*. TT failed to "show by clear and convincing evidence that [eSpeed] acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Technology*, -- F.3d --, 2007 WL 2358677, at *5 (Fed. Cir. 2007). TT also failed to show that this "objectively-defined . . . risk was either known or so obvious that it should have been known to [eSpeed]." *Id.*

At bottom, TT relied upon two assertions, which even if accepted as true, are insufficient as a matter of law to show willfulness: (1) eSpeed and Ecco knew about TT's pending patent applications and (2) eSpeed and Ecco copied features from TT's MD Trader product *before* the patents-in-suit issued. Indeed, TT's own expert, Mr. Larry Nixon, admitted

that neither of these is sufficient to prove willfulness. Knowledge of a patent application does not trigger any culpability or responsibility, as Mr. Nixon admitted at trial when confronted with one of his own prior expert reports:

> Q. Clearly, mere knowledge of the existence of a pending application does not impose upon a party any -- and you put that in italics, right -- any further obligation of any kind to actively monitor patents issuing to the applicant, as your opponent suggested; is that right?
>
> A. That is correct.

(Ex. 1, 9/20 PM Transcript, at 130-31.) Similarly, Mr. Nixon admitted that conduct before the patents-in-suit issued does not trigger any culpability either:

> Q. And whether an act is willful is by definition a question of the actor's intent after acquiring knowledge of the existence of the issued patent and its possible relationship to a potentially infringing activity?
>
> A. That's correct.
>
> Q. You believe that today, right?
>
> A. Yes. The relevant intent has to be during the period that the patent was extant. That is after the patent is granted.

(Ex. 1, 9/20 PM Transcript, at 129-130.)

Even if evidence of pre-issuance copying alone could serve as the basis for willfulness, however, TT plainly failed to introduce sufficient evidence in that regard to support a willfulness finding. As this Court noted in granting in part and denying in part eSpeed's motion *in limine* to exclude evidence of irrelevant copying, evidence of copying is admissible and relevant to willfulness only "if the evidence goes to copying of features that are actually elements of the claims at issue." (Ex. 2, 9/7 Order.) Moreover, as this Court made clear, it was TT's burden to show that any such pre-patent copying of patented features by eSpeed was "egregious." *Id.* At trial, although TT referred to eSpeed emails and other documents that

2

mentioned TT -- the existence of which is hardly surprising given the evidence that TT and others in the industry routinely monitor what competitors are doing -- TT failed to show these documents actually evidenced eSpeed copying of patented features.

Thus, in light of this testimony and the evidence presented at trial, no reasonable jury could have concluded that eSpeed or Ecco willfully infringed, and judgment as a matter of law should therefore be granted in favor of Defendants on this issue.

## **ARGUMENT**

In its August 20, 2007 Opinion for *In re Seagate*, the Federal Circuit revised the standard for proving willfulness. The new standard both raised the evidentiary standard and added to the requirements that must be met in order to show willfulness. According to *In re Seagate*, willfulness requires the following proof:

> Accordingly, to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*In re Seagate*, at *5 (citations omitted).

This standard, as the Federal Circuit described, raised the bar from the previous negligence-like standard to one requiring proof of recklessness. Under *Seagate*, TT must show by clear and convincing evidence that eSpeed acted despite an objectively high likelihood that its actions infringed a valid patent. If this objective element is satisfied, then TT must show by clear and convincing evidence that eSpeed knew or should have know about this objectively-defined risk. This standard simply does not apply to the facts of this case, where the only alleged improper activity asserted against eSpeed and Ecco are acts ***before*** any patent even issued.

**I.      TT DID NOT PROVE OBJECTIVE RECKLESSNESS, SO JUDGMENT AS A MATTER OF LAW SHOULD BE GRANTED THAT ESPEED DID NOT WILLFULLY INFRINGE.**

Because *In re Seagate* requires conduct, and in fact reckless conduct, showing that its actions constituted "infringement of a valid patent," these actions must by definition occur *after* a patent has issued. After all, one cannot infringe a patent, nor assess its validity, until the patent has actually issued. This has always been the law: "To willfully infringe a patent, the patent must exist." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). Indeed, Mr. Nixon conceded that "whether an act is willful is by definition a question of the actor's intent *after* acquiring knowledge of the existence of the *issued patent* and its possible relationship to a potentially infringing activity." (Ex. 1, 9/20/07 PM, at 129 (emphasis added).)

**A.      TT did not prove nor offer any misconduct after its patents issued.**

Knowledge of a patent application, before any patent issues, is not enough to trigger willfulness culpability. This was true even *before In re Seagate* raised the bar to show willfulness. *See, e.g., Conopco, Inc. v. May Department Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ("[a]lthough these activities may have been undertaken with knowledge that a patent application . . . was pending, . . . that is insufficient to support a finding of willfulness."); *Am. Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 465 (Fed. Cir. 1985) (affirming the district court's finding of no willful infringement even though the defendant may have been aware of a pending patent application when it designed its infringing product); *State Indus.*, 751 F.2d at 1236 ("[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.").

Again, Mr. Nixon, TT's own expert, admitted that knowledge of the patent applications itself does not trigger willfulness:

> Q. Clearly, mere knowledge of the existence of a pending application does not impose upon a party any -- and you put that in italics, right -- any further obligation of any kind to actively monitor patents issuing to the applicant, as your opponent suggested; is that right?
>
> A. That is correct.
>
> Q. And you went beyond that. You said: That, in my opinion, would be contrary to common sense, ordinarily accepted business practices, and the notice requirements of 25 [sic] U.S.C. Section 287?
>
> A. Except it's 35, yes.
>
> Q. I'm -- did I misread that?
>
> A. That's all right.
>
> Q. Okay. All right. But you agree that that was your opinion at the time and that is truthful and accurate; is that right?
>
> A. That is correct.

(Ex. 1, 9/20/07 PM, at 130-31.)

Against this legal backdrop, the jury's finding of willfulness in this case is not supported by the evidence. In this case, TT's patents did not issue until July 20 and August 3, 2004. Yet each and every e-mail that Mr. Nixon cited at trial was dated before July 20, 2004, when the first of the asserted patents-in-suit even issued. Mr. Nixon admitted this plain fact:

> Q. Okay. And you said -- well, you went through and you talked about the dates of all those e-mails; is that right?
>
> A. Yes. I wanted to make clear that that happened before the patent issued.
>
> Q. Okay. I appreciate that.
>
> A. Right.

5

> Q. I just want to make sure that we're clear on that. It was before, every one of these e-mails was before the patent issued; is that right?
>
> A. That is correct.

(Ex. 1, 9/20/07 PM Tr., at 132; *see also* Ex. 3, DTX 3000 (timeline).)

The only copying "evidence" post-dating patent issuance that TT introduced at trial related to eSpeed's alleged copying of terms from TT's AutoSpreader manual, in late August and/or early September 2004. (*See*, *e.g.*, Ex. 4, PTX86; Ex. 5, PTX11.) The terms include "inside slop" and "outside slop," which relate to spreading techniques, such as calculating trade quotes, and are not something covered by the patents-in-suit. eSpeed's use of these industry terms, even if identical to TT's use of these terms (which they are not), does not remotely show any eSpeed copying of patented features and cannot support a finding of willfulness. Indeed, as this Court noted when referring to the alleged copying of terms from the AutoSpreader manual, this is "not a copyright case." (Ex. 6, 9/17/07 AM Tr. at 86.)

Thus, as TT's own willfulness expert conceded, ***all*** of TT's evidence that eSpeed allegedly copied features of the invention pre-date the issuance of the patents. There is no evidence of copying, or any other misconduct -- much less any "reckless" conduct of the sort now required by *In re Seagate* -- that took place after the patents-in-suit issued. As a matter of law, TT's allegations are not sufficient to show willfulness. Judgment of a matter of law is therefore appropriate and warranted in favor of Defendants on the willfulness issue.

### B. TT's evidence relating to its pre-patent issuance allegations did not show copying at all, let alone egregious copying.

eSpeed's argument to this point has assumed TT's assertions about eSpeed's pre-issuance "copying" are accurate. The evidence, however, does not support finding that eSpeed or Ecco "copied" any patented feature. This is not a point that can be taken for granted. It is not

sufficient to show that eSpeed infringed, and had some of the same elements as TT, and therefore must have copied TT. *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("Rather, copying requires the replication of a specific product."). And there must be a technical analysis comparing the allegedly copied feature -- *i.e.*, what is mentioned in an eSpeed document or email -- against the asserted patents. Even in the highly publicized Amazon "1-Click®" patent case, Amazon's allegations that its competitors knew of and used one-click functionality was insufficient to show copying, because "evidence of copying Amazon's '1-Click®' feature is legally irrelevant unless the '1-Click®' feature is shown to be an embodiment of the claims." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (2001).

Christopher Thomas was TT's only witness that addressed whether eSpeed emails and documents specifically showed copying of patented features, and Thomas testified at trial about just *three* examples of purported copying of patented features, two for eSpeed and one for Ecco. For eSpeed, Mr. Thomas testified that an e-mail about populating "all price levels up and down from the best, at the default increment" for some unknown reason "is relating to the static price actions." (Ex. 7, 9/19 PM Tr. at 16; *see also* Ex. 8, PTX 1357.) But the evidence does not support this inference. Populating price levels can happen at any increment, and for any number of levels, whether or not the ladder is static or not static. Similarly, Mr. Thomas testified that an e-mail stating "Recenter the bid/offer stacks with single click of middle mouse" somehow related to "a feature for manual recentering." (Ex. 7, 9/19 PM Tr. at 17.) Recentering can be related to a static ladder, but this e-mail does not show copying of the static feature from TT; if anything it shows merely assigning the middle button to the recentering command, as opposed to the right or left button of a mouse.

For Ecco, Mr. Thomas did not even cite a single Ecco e-mail or document, instead referring to a customer's hearsay comments about ISV's in general seeking to compete with TT. Specifically, Mr. Thomas testified that multiple ISVs, including Ecco, had told David Feltes, the CEO of Marquette Partners, that "they were coming out with a screen that duplicated the features of MD Trader." (Ex. 7, 9/19 PM Tr. at 18.) But Thomas failed to explain how this hearsay testimony established that Ecco copied any patented features. Indeed, Thomas failed to explain how this testimony established that Ecco copied any TT features at all, as opposed to independently coming up with functionality that duplicated the features of MD Trader.[1]

Even if Mr. Thomas' three examples of purported copying had come after the patents-in-suit issued, which they do not, these three examples do not show that eSpeed copied any patented feature, much less that eSpeed engaged in the sort of egregious wholesale copying required after *In re Seagate* to show willfulness. (Ex. 7, 9/19 PM Tr. at 10 (Judge Moran: "So, normally what happened before the patent issued isn't particularly significant, but if what happened before demonstrates kind of the state of mind I was just talking about, wholesale copying, and that they knew that that was going to be probably covered, that sort of thing, then it -- then it could be relevant to a claim of willful infringement.").)

## II. TT DID NOT PROVE SUBJECTIVE DISREGARD, SO JUDGEMENT AS A MATTER OF LAW SHOULD BE GRANTED THAT eSPEED DID NOT WILLFULLY INFRINGE.

As discussed above, TT did not show objective evidence of recklessness by eSpeed or Ecco. That alone is sufficient to warrant judgment as a matter of law in favor of

---

[1] To be sure, Mr. Nixon testified about numerous other emails and documents allegedly showing copying, but as a purported legal expert rather than a software expert, Mr. Nixon could not competently opine that these emails and documents evidenced eSpeed copying of patented features, as opposed to simply ordinary competitive intelligence, which TT's own employee witnesses acknowledged was commonplace in the industry. For example, Tim Geannopulos testified that TT's own sales force routinely seek to identify what customers perceive as gaps between the functionality of the products offered by TT and its competitors. (Ex. 9, 9/12/07 AM Tr., at 67-68.)

eSpeed and Ecco. *See Seagate*, 2007 WL 2358677, at *5 (noting that the objective element of a willfulness claim is a threshold step that must be satisfied before addressing subjective intent).

Moreover, TT did not show that eSpeed subjectively disregarded the patents-in-suit such that any objectively-defined risk was "known or so obvious that it should have been known to the accused infringer." To the contrary, once TT's patents actually issued, and eSpeed learned about them, eSpeed changed its products to avoid infringement. The changes were implemented in an expedited manner, and eSpeed's Chief Architect Joe Noviello testified that they were made as fast as possible. (Ex. 10, 9/26 AM Tr., at 30-31.) TT's expert Mr. Nixon acknowledged that eSpeed's redesigns were done in a relatively short time frame and the fact would "negate willfulness." (Ex. 1, 9/20 PM Tr., at 133-134.)

In addition, Mr. Nixon also admitted that the subjective inquiry, like the objective one above, must also relate to state of mind *after* the patents issued. As Mr. Nixon testified, "The relevant intent has to be during the period that the patent was extant. That is after the patent is granted." (Ex. 1, 9/20/07 PM Tr., at 130.) Rather than show willfulness, all the evidence after either TT patent issued actually shows that Defendants took steps to avoid infringement, change its products, and design around the asserted patents. Again, as Mr. Nixon himself plainly admitted at trial:

> Q. And the fact that [sic] even redesigned and got a new product on the market by December of 2004, that also weighs against a finding of willfulness when you consider the totality of the circumstances?
>
> A. As I have testified, yes.

(Ex. 1, 9/20/07 PM Tr., at 134.) And with respect to the new redesigned product, the Court already granted summary judgment of non-infringement. Thus, its entire case was focused only on the residual products in between the time TT's patents issued and the time the design-around

9

products were fully implemented. The design-arounds, and eSpeed's efforts to implement them as promptly as they did, confirms in this case that the evidence simply could not support a finding of willfulness.

As a matter of law, eSpeed's subjective intent can be inferred from its good faith conduct in designing-around. *See*, *e.g.*, *Libman Co. v. Quickie Manufacturing Corp.*, 74 Fed.Appx. 900, 905 (Fed. Cir. 2003) ("The record does not show clear and convincing evidence of willful infringement. Instead, the record shows that Libman attempted to design around the '862 patent. For example, on the advice of a patent attorney, Libman modified the bracket opening to a U-shape from its original form completely surrounding the broom handle. With ample support from the record, the district court correctly found the case was not exceptional and denied attorney fees."); *Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993) (reversing willfulness finding where accused infringer tracked competitor's product but designed-around); *State Indus.*, 751 F.2d at 1235-36 (tracking competitor's products and designing new and better design-arounds are "the stuff of which competition is made and is supposed to benefit the consumer" and "should not be discouraged by punitive damage awards"). Furthermore, the success of those design-arounds to actually avoid infringement further confirms that the evidence in this case simply could not support a finding of willfulness.

TT has relied upon two cases to cobble together some explanation for why eSpeed's pre-patent conduct could somehow show eSpeed's post-patent intent, *3M* and *Kaufman*. But those cases no longer apply after *In re Seagate*, and even if they did apply, they actually confirm that eSpeed's conduct was not egregious. First, TT predominantly relies upon *Minnesota Min. and Mfg. Co. v. Johnson & Johnson Orthopaedics, In*c., 976 F.2d 1559 (Fed. Cir. 1992), a case cited by TT in its opposition to eSpeed's *motions in limine* regarding copying

and willfulness and again in connection with TT's proposed jury instructions. But the *3M* case does not apply after *In re Seagate* because it refers to the old law, which required opinions of counsel. In fact, the *3M* Court cited and applied *Underwater Devices*, a case that *In re Seagate* expressly overruled, for the proposition that an accused infringer should obtain an opinion of counsel. *Compare Minnesota Min. and Mfg. Co.*, 976 F.2d at 1580 (applying *Underwater Devices* to conclude that the defendant there should have obtained opinions of counsel), *with In re Seagate*, --- F.3d --- at *5 ("we overrule the standard set out in *Underwater Devices*.") After *In re Seagate*, opinions of counsel are no longer required and the absence of a competent opinion of counsel -- a key factor in the *3M* case -- does not show willfulness "[b]ecause we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel." *Id*. at *5. Moreover, the pre-patent copying in *3M* related to copying of **trade secrets**, because the defendant "had figured out the 3M trade secret in the samples stolen by" a defendant's representation. In this case, there is no allegation of trade secret misappropriation related to TT's publicly available product. Thus, far from showing willfulness by eSpeed and Ecco, the *3M* case shows that eSpeed and Ecco were not the egregious infringers that the defendant in *3M* was held to be.

Second, the same is true of *Kaufman Co., Inc. v. Lantech, Inc.*, the other case relied upon by TT. 807 F.2d 970 (Fed. Cir. 1986). Like *3M*, its analysis is no longer valid after *In re Seagate*, because it applied the old legal standard of negligence as opposed to recklessness, and relied in part on the opinion of counsel by the accused infringer. *Kaufman*, 807 F.2d at 979. Moreover, even in the *Kaufman* case, the pre-patent allegations of copying misconduct involved a company insisting that it would continue copying whether or not any patent ever issued: "Mr. Kaufman, president of Kaufman, indicated . . . that he would copy any machine that his

11

customers requested, regardless of whether or not a patent was issued." 807 F.2d at 979. Moreover, much like the trade secret scenario of *3M*, Mr. Kaufman improperly obtained information about the patentee's product operation by secretly observing the product while standing in an aisle at a trade show even after he had been asked to leave. *Id*. Therefore, far from showing willfulness by eSpeed and Ecco, and even if *3M* and *Kaufman* are found to apply in the wake of *Seagate*, these cases reconfirm that eSpeed's and Ecco's conduct was never egregious, not even before the patents-in-suit issued, and was certainly in good faith to avoid infringement after the patents-in-suit issued.

## **CONCLUSION**

WHEREFORE, for these reasons, this Court should grant eSpeed's motion for judgment in its favor on TT's willfulness claims.

Dated: November 6, 2007　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　**eSPEED, INC., eSPEED INTERNATIONAL LTD., ECCO LLC, and ECCOWARE LTD.**

By:　　　　/s Andrew M. Johnstone　　　
　　　One of its Attorneys

George C. Lombardi
Raymond C. Perkins
Andrew M. Johnstone
Tracy J. Allen
James M. Hilmert
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Gary A. Rosen
Patrick Madamba, Jr.
Law Offices of Gary A. Rosen, P.C.
1831 Chestnut Street, Suite 802
Philadelphia, PA 19103
(215) 972-0600

Attorneys for the Defendants, eSpeed, Inc., eSpeed International, Inc., Ecco LLC and Eccoware Ltd.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the foregoing to be served this 6th day of November 2007 by Messenger Delivery, Federal Express and/or E-Mail as follows:

| | | |
|---|---|---|
| Matthew J. Sampson<br>MCDONNELL BOEHNEN<br>  HULBERT & BERGHOFF LLP<br>300 South Wacker Drive<br>Chicago, Illinois 60606<br><br>*Counsel for Trading Technologies International, Inc.* | Geoffrey A. Baker<br>DOWELL BAKER, P.C.<br>229 Randolph Street<br>Oak Park, Illinois 60302<br><br><br>*Counsel for Rosenthal Collins Group, LLC* | Nina Wang<br>FAGRE & BENSON, LLP<br>1900 Fifteenth Street<br>Boulder, CO 80302<br><br><br>*Counsel for CQG, Inc. and CQGT, LLC* |
| Steven F. Borsand<br>TRADING TECHNOLOGIES<br>  INTERNATIONAL, INC.<br>222 South Riverside, Suite 1100<br>Chicago, Illinois 60606<br><br>*Counsel for Trading Technologies International, Inc.* | Stephen Lesavich<br>LESAVICH HIGH-TECH LAW<br>  GROUP, P.C.<br>39 South LaSalle Street,<br>Suite 325<br>Chicago, IL 60603<br><br>*Counsel for Rosenthal Collins Group, LLC* | Kara Cenar<br>BELL, BOYD & LLOYD LLC<br>70 West Madison Street<br>Suite 3100<br>Chicago, IL 60602<br><br><br>*Counsel for CQG, Inc. and CQGT, LLC* |
| Lora A. Moffatt<br>Alison G. Naidech<br>SALANS<br>Rockfeller Center<br>620 Fifth Avenue<br>New York, NY 10020<br><br>*Counsel for GL Trade SA, GL Consultants, Inc., and FuturePath Trading LLC* | Jeffrey Schulman<br>WOLIN & ROSEN, LTD.<br>55 West Monroe Street<br>Suite 3600<br>Chicago, IL 60603<br><br><br>*Counsel for Rosenthal Collins Group, LLC* | James R. Branit<br>Brian Norkett<br>BULLARO & CARTON, P.C.<br>200 North LaSalle<br>Suite 2500<br>Chicago, IL 60601<br><br>*Counsel for GL Trade SA, GL Consultants, Inc., and FuturePath Trading LLC* |

                                          /s Andrew M. Johnstone