IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 04 C 5312 |
| eSPEED, INC., eSPEED, INTERNATIONAL, LTD., and ECCO WARE, LTD., | ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OPINION AND ORDER

eSpeed moves for judgment as a matter of law that TT's patents are unenforceable as a result of patent misuse. For the following reasons we deny eSpeed's motion.

Patent misuse is an equitable defense to a claim of patent infringement. U.S. Phillips Corp. v. Int'l Trade Comm'n., 424 F.3d 1179, 1184 (Fed. Cir. 2005). It requires the alleged infringer to show, by a preponderance of the evidence, "that the patentee has impermissibly broadened the physical or temporal scope of the patent with anti-competitive effect." Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997). The courts have identified certain practices that constitute *per se* patent misuse. These include "tying" arrangements in which a patentee conditions a license under the patent on the purchase of a separate product, or arrangements in which patentee effectively extends the term of its patent by requiring post-expiration royalties. *Id.* at 869. If the conduct in question does not fall within the scope of these specific practices, it does not constitute *per se* misuse, but must be analyzed under the rule of reason. U.S. Phillips, 424 F.3d at 1185. Under that rule, the "practice is impermissible only if its effect is to restrain competition in a relevant market," (*id.*), and the court must take into account "a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature,

and effect." <u>Virginia Panel</u>, 133 F.3d at 869.[1]

eSpeed asserts that TT has engaged in patent misuse in a variety of scenarios. First, eSpeed argues that TT's open letter to the futures market constitutes patent misuse. We disagree. TT sent an open letter to the "big four" futures exchanges offering to relinquish all rights in its patents in exchange for a 2.5 cent fee on every transaction that is processed through the exchanges, regardless of whether TT's patented software is used to make that transaction, and in perpetuity. eSpeed argues that such an offer constitutes *per se* patent misuse because TT attempted to "condition the grant of a patent license" upon post-expiration royalty payments, and royalty payments on products that do not use the teaching of the patent. Regardless of whether that was its intent, TT's letter never went anywhere. All four of the exchanges rejected it out of hand, and eSpeed cites no evidence that TT ever forced the exchanges to deal or rejected or retracted any licenses based on the exchanges' rejection. While such a license, if actually consummated, could indeed constitute *per se* patent misuse, the fact that TT's offer was never more than that, an offer, negates that finding. *See e.g.* <u>Virginia Panel</u>, 133 F.3d at 871 (no patent misuse where proposal never consummated, and TT withdraws offending offer). Furthermore, TT's letter does not constitute patent misuse under a rule of reason analysis.[2] "Voluntariness of the licensee's agreement to the royalty provisions is a key consideration" in analyzing a patent misuse argument. <u>Engel Indus. v. Lockformer Co.</u>, 96 F.3d 1398, 1408 (Fed. Cir. 1996). As such, truncated negotiations, or, as here, lack of negotiations that do not result in a license, where there is no evidence of a refusal by TT to deal

---

[1] In addition to the other reasons for our decision, set forth herein, eSpeed has utterly failed to supply this court with this information, which is required under the rule of reason for a full analysis of the various restraints.

[2] We note that we do not delve into an analysis of the relevant market or whether TT actually has market power because, regardless of that fact, none of the conduct alleged here amounts to an attempt to broaden the scope of TT's patents.

otherwise, do not constitute patent misuse, because the scope of the patent rights is never extended. Virginia Panel, 133 F.3d at 871

Second, eSpeed argues that the terms of settlement agreements between TT and other alleged infringers constitute *per se* patent misuse, or at least misuse under the rule of reason. We first note that such conduct does not fall within the purview of *per se* misuse, and therefore must be analyzed under the rule of reason. County Materials Corp. v. Allan Block Corp., 502 F.3d 730, 736 (7th Cir. 2007) *quoting* Department of Justice & Federal Trade Commission, *Antitrust Guidelines for the Licensing of Intellectual Property* § 5.4 (April 6, 1995)("in the intellectual property context, exclusive dealing occurs when a license prevents the licensee from licensing, selling, distributing, or using competing technologies. Exclusive dealing arrangements are evaluated under the rule of reason").

In two of TT's earliest settlement agreements with alleged infringers, the following term was agreed to by the parties:

> [Party] agrees not to use or provide to customers software that infringes the '304 or '132 patents purchased, licensed or otherwise acquired from eSpeed, Inc. Or any of eSpeed's Affiliates. Without admitting or denying infringement [party] agrees not to use or provide to customers software obtained from eSpeed, Inc. Or any of eSpeed's Affiliates of the type illustrated in Exhibit C.

Exhibit C includes screen shots from eSpeed's AutoSpeed Basis Spreader and SuperQuads software.

At first blush this clause does appear to prevent the party from acquiring or using eSpeed software, regardless of whether or not it infringes the patents. While the first sentence of this clause is completely proper, as it is certainly proper for a patentee to require an infringer with whom it settles to not use an infringing product, it is the second sentence we are concerned with. First, there is no exception in this clause in the event any of the eSpeed products listed are found not to infringe. Second, as eSpeed points out, SuperQuads was never alleged to be

an infringing product. Thus, on its face, this clause appears to be an attempt by TT to broaden the scope of its patent to products that do not teach the patented method. *See e.g.* <u>M. Eagle Tools Warehouse, Inc. v. Fisher Tooling Co., Inc.</u>, No. 97-1568, 2007 U.S. Dist. LEXIS 23636 (D. N.J. March. 30, 2007)(settlement agreement prohibiting purchase of competitors's product found to be outside scope of patent, constitutes misuse).

Yet, we hold that this does not constitute misuse because there is a lack of anti-competitive effect. This clause appears in only two of the fifteen settlement agreements that eSpeed produced as exhibits to this motion, and those two agreements were the first, executed in 2004, shortly after TT initiated this suit against eSpeed. The subsequent agreements simply limit the infringers' activity by prohibiting use of infringing products, and do not mention eSpeed at all.[3] Additionally, despite the seeming clarity of the provision itself, TT adamantly argues that the clause merely prohibits the infringer from utilizing products procured from eSpeed that infringe the patents. TT argues that this was its intent when it wrote the provision and this was the understanding of both parties when they entered into the agreement. While, generally, contract language will trump any later-stated intent of the parties, we are inclined to credit TT on this point since it is between a rock-and-a-hard place. If, as it attests, the clause merely bars the licensee from using infringing products, then there is no anti-competitive effect because the licensee may purchase non-infringing eSpeed products. If the licensee proceeds to purchase non-infringing products from eSpeed, and TT attempts to claim a breach of the agreement, the licensee can (likely successfully) argue patent misuse since this

---

[3]eSpeed also argues that a third settlement agreement prohibiting the infringer from using infringing products, "including, for example, [ ] using or distributing eSpeed/Ecco's eSpeedometer," constitutes patent misuse. That clause makes clear, however, that the licensee is simply barred from procuring, using, or selling infringing products. Furthermore, unlike the two noted above, this settlement agreement covers not only the '304 and '132 patents, but the U.K. '527, '451, and the European '211 patents, under which eSpeed' products have yet to be analyzed.

clause is much more restrictive and arbitrary than others that courts have found not to constitute misuse. *See e.g.* Count Materials Corp. v. Allan Block Corp., 502 F.3d 730, 733 (7th Cir. 2007). Therefore, we decline to find that this clause constitutes patent misuse.

eSpeed further argues that the royalty structure found in certain of TT's licenses constitutes patent misuse, either *per se* or under the rule of reason. eSpeed argues that TT's royalty structure, which calls for royalties to be paid on trades where TT's invention could be used, regardless of whether it is actually used, constitutes patent misuse. Again, we find this conduct is not of the type considered to be *per se* misuse, and thus will be analyzed under the rule of reason. Zenith Radio Corp. v. Hazeltime Research, Inc., 395 U.S. 100, 1584 ("it is not *per se* a misuse of patents to measure the consideration by a percentage of the licensee's sales").

"Royalties may be based on unpatented components if that provides a convenient means for measuring the value of the license." Engel Indus., 96 F.3d at 1408. Here, as TT's counsel (who drafted the provision in question) testified, the contract requires that if the licensee has set up its system in such a way that the licensed product is linked with other products that fall outside the license, such that an order can be viewed at any time in either or both windows, royalties are due on any order that is filled where that order could be viewed in the licensed product's window, regardless of whether it is actually viewed there. This makes sense because, as TT notes, trading software is set up to encompass numerous different windows (including windows made by different software vendors) all on the same set of screens at the same time, offering the same or similar information. Without this provision a trader could use TT's window to ascertain the best price, but then enter the order in a different program, thus deriving the benefit of TT's invention without payment. The provision, as written, closes this loophole. As TT's counsel testified, if the trader does not have the licensed product linked together with other software, but uses them wholly independent of one another, no royalty

would be due on transactions not entered on TT's program. TT notes that the agreements provide for an audit system to effectively track what orders do and do not fall under the license, and thus measures the royalty by only counting the applicable orders.

We agree with TT that this provision does not constitute patent misuse. This is not a case where TT is insisting that the licensee pay royalties regardless of whether or not it ever uses the patented product. *See e.g.* Zenith Radio, 395 U.S. at 139. The scope of this provision is limited to situations where the licensee either trades exclusively using the licensed product, or links the licensed product up with other unlicensed products and uses them in combination to effectuate trades. Since the licensee would pay no royalty if it did not link the licensed product to its other software, making it capable of viewing or effectuating trades using the benefits of the invention, the provision does not attempt to expand the scope of TT's patents to cover unpatented products.

eSpeed argues that the settlement agreement prohibition against providing any assistance to other individuals attempting to invalidate TT's patents constitutes misuse. eSpeed argues that the right to leverage a patent to prohibit challenges to the validity of that same patent is not part of the permissible patent monopoly. It argues that such a prohibition, given TT's market power, permits TT to use patents that may not be properly challenged, thus expanding the scope of the patent beyond permissible bounds, resulting in a restraint of trade.

It should be mentioned that the parties with whom TT settled are not themselves estopped from challenging the validity of TT's patents by way of this license provision – such a provision would likely be unenforceable under the Supreme Court's ruling in Lear, Inc. v. Adkins, 395 U.S. 653 (1969). However, most of the settlement agreements were accompanied by consent judgements issued by the court, in which the alleged infringers admitted not only infringement, but validity as well. Thus, those parties are prohibited from challenging the

validity of TT's patents, since consent decrees entered in settlement of an infringement action are entitled to *res judicata* effect. *See* Brunswick Corp. v. Chrysler Corp., 408 F.2d 335, 337-38 (7th Cir. 1969). The parties that were not subject to consent judgments are not so bound, at least not to the extent that they have not already challenged validity and engaged in discovery on that claim. *See* Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1367 (Fed. Cir. 2001)(challenger of validity who later abandons claim, resulting in dismissal with prejudice, is estopped from reopening it). Furthermore, we find nothing inherently invalid about preventing a licensee from voluntarily assisting a third party to challenge validity. Unlike cases that have held non-assistance provisions to be invalid, the provision here does not bar the licensee from complying with court-ordered participation, nor does it prevent the licensee's assistance to an enforcing government body, like the PTO. *See e.g.* EEOC v. Astra USA, 94 F.3d 738, 744 (1st Cir. 1996). In light of these exceptions, we find this provision does not overreach and thus is not evidence of misuse. Yockey v. Horn, 880 F.2d 945, 950 (7th Cir. 1989); Quad/Graphics, Inc. v. Fass, 724 F.2d 1230, 1233 (7th Cir. 1983); Downard v. Mont. Rail Link, Inc., 2006 Mont. Dist. LEXIS 70 (Mont. Dist. 2006).

eSpeed argues that the clause that provides for termination in the event the licensee asserts its patent rights against TT, constitutes misuse because it thwarts innovation. eSpeed cites no case law for this proposition. As with the clause in the previous section, we believe that this clause does not constitute misuse for two reasons. First, it does not prevent the licensee from asserting its patent rights against the licensor, a move that would contravene public policy, but merely permits the licensor to terminate the license in such an event, allowing, as TT suggests, re-negotiation on equal footing. Second, even if this clause could be rendered unenforceable, as contravening public policy, it does not constitute patent misuse because it does not evidence an attempt to broaden the temporal or physical scope of the patent at issue,

regardless of whether it evinces some anti-competitive effect, because it does not pertain to the patent at all.

Finally, eSpeed argues that TT's termination of a certain party's license constituted patent misuse. TT admits that it terminated its X_Trader licenses with a certain third party, when that party refused to settle its infringement claim. And eSpeed asserts that X_Trader comprises many more components than the patents cover and the third party was only alleged to have infringed the patents, nothing more. From this, eSpeed concludes that TT's termination of the broader license, in response, comprises an attempt to expand the patents beyond their physical scope to cover all aspects of X_Trader. eSpeed's reasoning is flawed. TT's license permitted it to terminate for any reason – no cause required. The third party refused to settle the infringement claim with TT and TT terminated the license. eSpeed offers no evidence beyond the statement of the interested third party's CEO, that TT's action was an attempt to do anything more than terminate the license of a party who refused settlement where the license permitted it to do so. There is nothing improper about that.

## CONCLUSION

For the foregoing reasons, eSpeed's motion is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Jan. 18, 2008.