

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 04 C 5312<br>) |
| eSPEED, INC., eSPEED, INTERNATIONAL, LTD., and ECCO WARE, LTD., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants eSpeed and Ecco (collectively "eSpeed") move for judgment as a matter of law against plaintiff Trading Technologies ("TT"), that TT engaged in inequitable conduct before the Patent and Trademark Office ("PTO"). This motion follows a jury trial where the jury found eSpeed infringed two of TT's patents. The jury also determined that the correct priority date for the patents was March 2, 2000, the date TT's provisional application was filed. The court withheld from the jury the issue of inequitable conduct. The parties briefed the issue and the court held a two-day hearing at which the parties presented witness testimony and argument. The parties then supplemented their briefs. We now rule that eSpeed has not met its burden of proving TT engaged in inequitable conduct.

To establish TT's inequitable conduct, eSpeed must show by clear and convincing evidence that TT failed to disclose material information with an intent to deceive the PTO. Kingsdown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 872 (Fed. Cir. 1988). We must first determine whether any conduct occurred that could have given rise to a duty to disclose the conduct to the patent office, that is to say, conduct that is material to patentability. This duty arises, in one context, where a commercial use is made of the invention more than one year prior to the filing of the application (the priority date), since such use may constitute

a bar to patentability under 35 U.S.C. § 102(b). The parties focus, as does the court, on the specific time frame between March 2, 1999, and June 9, 1999, the period between the priority date for the provisional application and the priority date for the parent application, filed on June 9, 2000.[1]

We agree with eSpeed that the inventor, Harold Brumfield, did engage in commercial use of the invention during that period. Brumfield testified at his deposition and again at the hearing that he was engaged in a "combination of trading and testing" after March 3, 1999 (Brumfield dep. 9/28/04, p.182), and defined trading as "trading to make money." (*id.* at 98). His profit chart shows a steep drop-off at the beginning of March, followed by a steady increase, indicative of a learning curve associated with new software (PTX 396). Finally, a video taken of Brumfield's computer screen on March 15, 1999, was viewed at the hearing (DTX 378). While there were conflicting interpretations from the parties' experts, we agree with eSpeed that the video showed the patented invention being used in a way that mimicked trading, rather than testing. Brumfield's receipts for the day, also presented at the hearing, showed that a large amount of trading actually occurred that day, resulting in a loss. We agree with eSpeed's expert, Nicholas Godici, that it is not common practice to engage in a substantial amount of trading, ultimately resulting in a large loss when testing software in a live environment. Therefore, we find eSpeed has proved by clear and evidence that Brumfield engaged in commercial use of the invention between March 2 and June 15, 1999.

However, we find that this information was not material and therefore did not require disclosure to the PTO. Under Rule 56 of the Manual of Patent Examining Procedure (MPEP), a patent applicant has a duty "to disclose to the Office all information known to that individual

---

[1] The court has already determined that any conduct occurring before March 2, 1999, was purely experimental in nature and negated the public-use bar to patentability. <u>Trading Techs. Int'l, Inc. v. eSpeed, Inc.</u>, 507 F. Supp. 2d 883 (N.D. Ill. 2007).

to be material to patentability." MPEP § 2001.04; 37 CFR 1.56(a). "There is no duty to submit information which is not material to the patentability of any existing claim." *Id.* Information is material if "(1) it establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim;[2] or (2) it refutes, or is inconsistent with a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of unpatentability." MPEP § 2001.05; 37 CFR 1.56(b).

When TT filed its non-provisional patent application in June 2000, it specifically claimed priority to the filing date of the provisional application filed in March 2000 (PTX 1, 2). The MPEP specifically places the burden on the patent examiner to challenge a priority claim. MPEP § 201.11. It does not require the applicant to justify its entitlement to that date. *Id.* Absent such a challenge, TT was entitled to assume it could claim the benefit of the March 2, 2000, provisional filing when determining what constituted material relevant to patentability. TT asserts that it sought the benefit of the March date in good faith, and eSpeed offers no credible evidence to rebut that assertion. Furthermore, TT's reliance was reasonable, evidenced by the fact that the jury determined, and the court reaffirmed, that March 2, 2000, was the correct priority date for purposes of an on-sale or commercial-use bar to patentability (dkt. 1140). Since TT's reliance on the priority date was in good faith, and was ultimately found to be the correct date, this case is unlike <u>Kangaroos U.S.A. Inc. v. Caldor, Inc.</u>, 778 F.2d 1571 (Fed. Cir. 1985) or <u>Nilssen v. Osram Sylvania, Inc.</u>, 504 F.3d 1223 (Fed. Cir. 2007), where applicants had misclaimed priority in order to avoid a prior art reference. For these reasons we find that Brumfield's use, while commercial in nature, was not material and need not have

---

[2] "A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability." 37 CFR 1.56.

been disclosed to the PTO.

eSpeed argues that even if the use was not material under Rule 56, it became material after the examiner issued a request for information in his first office action of June 2001 (the June office action), which rejected the application (PTX 2285). The information request, issued under Rule 1.105, sought, in pertinent part:

> Notwithstanding the dates of uses, submittal or disclosure, any use of the claimed invention, any proposals submitted to corporate partners for the use or development of the claimed invention, any papers presented to industry groups and consortiums describing the claimed invention. *Id.*

TT answered this request, in pertinent part, as follows:

> In response to the sixth inquiry, the attached brochures and presentations are included as follows:
>
> Appendix B is a Power Point presentation of the Applicant's X-TRADER technology, as well as an overview of the Market Depth Trader of the present invention disclosed in the present application and claimed in Claims 22-40....This disclosure was first made to a third party not earlier than March 2, 1999.
>
> Appendix C provides the X_TRADER User Guide that has been improved upon to include the Market Depth Trader Window and identified as the "MD TRADER," the subject of the present invention....This disclosure was first made to a third party not earlier than March 2, 1999.
>
> Appendix D is a brochure depicting the X_TRADER, and Appendix E is a brochure depicting the MD Trader, the Subject of the present application and claimed in pending Claims 22-40.... This disclosure was first made to a third party not earlier than March 2, 1999 (PTX 2286).

eSpeed argues that TT's response evaded the examiner's request. eSpeed asserts that by using the phrase "notwithstanding the dates of uses...any use of the claimed invention," the examiner was seeking all physical instances of use of the claimed invention. The argument is certainly not a frivolous one. The examiner had issued the instant office action rejecting TT's claims, in light of prior art (namely X_TRADER) that the examiner located on his own through a search of TT's website (PTX 2285). TT had not disclosed X_TRADER as prior art

in its application, and the examiner rejected the claims as unpatentable over this specific prior art (PTX 380 at eS64842-50). It is entirely reasonable to argue that in seeking uses of the claimed invention the examiner was looking for anything else that TT had failed to disclose that could be considered a bar to patentability, based on what TT had already failed to disclose. eSpeed's expert, Godici, testified at the hearing that information that is not material under the general disclosure requirements of Rule 56 may become material when specifically sought in a Rule 1.05 information request. eSpeed argues that Brumfield's use was exactly that type of information and therefore TT had a duty to disclose it.

TT asserts that what the patent examiner was actually seeking was the ways in which the invention was used, so the examiner could get a better sense of the features of the invention and why it is improving on the prior art. In support, TT cites other portions of the Rule 1.105 request, all of which seek information on the features of the invention (PTX 2285). TT also cites additional language in the June office action: "Accordingly, it seems appropriate based [ ] on the co-ownership of the prior art and the claimed invention for the applicant to supply evidence showing that the prior art X Trader system does not possess the characteristics of the claimed product." (PTX 2285). A member of TT's patent counsel testified in deposition that he believed the examiner was seeking more information about the invention's features (Shah dep. at 106-107). The summary of an October, 2001, interview with the examiner is consistent with this interpretation, stating: "The applicant demonstrated the claimed and prior art trading technologies' software, highlighting those features of the claimed invention not found in the prior art. Agreement was reached that the claimed invention, subject to a second review under 112 2nd Paragraph and an updated search, is allowable over the prior art." (PTX 2296). TT argues that its interpretation is correct because the patent examiner did not find TT's response insufficient, but instead allowed the claims after holding the interview.

eSpeed argues that the examiner could not have found TT's response insufficient even if he had wanted to because he could not have known what information was being withheld, such as Brumfield's use between March and June 1999. eSpeed argues that TT's response made it appear that there were no uses of the claimed invention and therefore the examiner did not have reason to inquire about specific uses. While it is true that the examiner could not have known of Brumfield's use, absent disclosure, we do not find that this use was what the examiner was seeking. If we were to accept eSpeed's interpretation of the examiner's request, TT's submission would have been so unresponsive that it would have necessarily alerted the examiner to its deficiencies. Yet, the examiner made no mention of the issue in his interview summary.

We further disagree that TT's response led the examiner to believe the claimed invention was not being used. The appendices attached to TT's response informed the examiner of the invention's use (PTX 6 App. C, D, PTX 2286, App. B). There was a user guide, a power point presentation, and a sales brochure. *Id.* Even if the first two items could be interpreted as merely forward-looking, the sales brochure cannot. It clearly shows that the product is being offered for sale and from where it is being sold (PTX 6, App. D). TT stated in its Rule 1.105 response that this brochure was disclosed no earlier than March 2, 1999, its claimed priority date, allowing an inference to be made that it was possibly disclosed before June 7, 1999,[3] (PTX 2296). Had the examiner felt there was a priority date issue, this would have certainly raised a red flag requiring the examiner's attention. However, the examiner did not address it, but instead allowed the claims (PTX 2296).

---

[3] eSpeed argues that TT has admitted that all of the appendices were actually disclosed much later than March 2, 1999 – they were not disclosed even prior to June 7, 1999, a year before the filing of the non-pprovisional application. Based on this, eSpeed argues, the examiner was not alerted to any possibility of intervening art from these disclosures. However, none of the appendices themselves states when it was actually first disclosed – eSpeed is merely relying on TT's admission to this court. Therefore, the examiner could only rely on TT's assertion that they were not disclosed before March 2, 1999.

eSpeed argues that disclosure to the PTO is similar to civil discovery and, as such, TT should have disclosed Brumfield's use and allowed the examiner to determine its responsiveness or materiality. We understand the comparison, but note that it goes both ways. If the examiner believed that TT's submission was non-responsive, he could have reissued the request in clearer terms or discussed the issue with TT at its interview, just as parties or a court will do when a discovery response is not sufficient. The examiner did not do so. For these reasons, we find that TT appropriately answered the Rule 1.105 request and did not purposefully withhold material information from the patent examiner. Because we find Brumfield's use immaterial under both Rule 56 and in the context of the Rule 1.105 request, we need not address the issue of TT's intent.

## CONCLUSION

For the foregoing reasons, we deny eSpeed's motion for judgment as a matter of law, that TT engaged in inequitable conduct before the PTO.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

May 6, 2008.