

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRADING TECHNOLOGIES )
INTERNATIONAL, INC., )
)
      Plaintiff, )
)
vs. ) No. 04 C 5312
)
eSPEED, INC., eSPEED, INTERNATIONAL,)
LTD., and ECCO WARE, LTD., )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies, Inc. ("TT") moves for a permanent injunction against defendants eSpeed and Ecco (collectively "eSpeed") following a jury trial in which eSpeed was found to have willfully infringed two of TT's patents. This court has since vacated the jury's willfulness finding, holding that such a finding was against the manifest weight of the evidence and that no reasonable jury could so find. Trading Techs. Int'l, Inc. v. eSpeed, Inc., 2008 U.S. Dist. LEXIS 295 (N.D. Ill. Jan. 3, 2008). For the following reasons, we now grant TT's motion.

## BACKGROUND

TT brought suit against eSpeed alleging infringement of U.S. Patents Nos. 6,773,132 (the '132 patent) and 6, 776, 304 (the '304 patent).[1] On October 10, 2007, a jury found that three of eSpeed's products infringed TT's patents. The specific products found to have infringed are (1) eSpeed Futures view (versions 5.3.1 through 5.3.6.11), (2) Ecco Price Ladder (versions 2.3.6.12 through 4.0.2.19), and (3) eSpeed AutoSpeed Basis (versions 1.0, 1.2)(collectively, the "infringing products"). The jury also found that eSpeed willfully infringed TT's patents, a

---

[1] A more detailed background of this case can be obtained in our other opinions. See e.g. Trading Techs. Int'l, Inc. v. eSpeed, Inc., 507 F. Supp. 2d 854, 857 (N.D. Ill. 2007).

finding this court vacated as being against the manifest weight of the evidence. <u>Trading Techs. Int'l, Inc. v. eSpeed, Inc.</u>, 2008 U.S. Dist. LEXIS 295 (N.D. Ill. Jan. 3, 2008). TT now moves for a permanent injunction to prevent eSpeed from offering the infringing products.

## DISCUSSION

In <u>eBay Inc. v. MercExchange, LLC</u>, the Supreme Court reestablished the criteria for evaluating a motion for a permanent injunction under the Patent Act. 547 U.S. 388 (2006). <u>eBay</u> rejected the common practice of lower courts to issue permanent injunctions upon a finding of validity and infringement alone. *See* <u>Accumed L.L.C. v. Stryker Corp.</u>, 483 F.3d 800, 811 (Fed. Cir. 2007); <u>Monsanto Co. v. Scrugges</u>, 459 F.3d 1328, 1341-42 (Fed. Cir. 2006). The Court held that even under the Patent Act, motions for permanent injunctions must be decided according to well-established principles of equity. <u>eBay</u>, 547 U.S. at 394. Thus, TT must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. The Court held "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district court, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 394.

Federal Rule of Civil Procedure 65(d) governs the content and scope of every injunction. In this regard, the Seventh Circuit has directed courts to make a sufficient inquiry on the record, into the evidence and the applicable legal standards, prior to granting or denying equitable relief. <u>e360 Insight v. Spamhaus Project</u>, 500 F.3d 594, 604 (7th Cir. 2007). We must

also remain aware that the party seeking the injunction bears the burden of demonstrating the inadequacy of legal relief. *Id.* Adhering to these guiding principles, we evaluate each of the four factors in turn.

Irreparable Injury

Before eBay, the irreparable injury prong of the four-factor test was "presumed" to be met following a "clear showing" of patent validity and infringement. *See* Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1247 (Fed. Cir. 1989), *quoting* W.L. Gore & Associates, Inc. v. Garlock, Inc., 842 F.2d 1275, 1281 (Fed. Cir. 1988). After eBay, the Federal Circuit declined to explicitly address whether the presumption of irreparable injury following a "judgment of validity and infringement" has survived past the Supreme Court's decision. Amado v. Microsoft Corp., 517 F.3d 1353, 1359 (Fed. Cir. 2008) (stating, "regardless of whether there remains a rebuttable presumption of irreparable harm following eBay ..."). The eBay district court, along with numerous other courts, has since decided that no presumption can exist under relevant case law and the language of the Supreme Court's decision. MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 568 (E.D. Va. 2007); *see also* MGM Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1211 (C.D. Cal. 2007)(collecting cases). However, we acknowledge that the violation of the right of exclusion during the limited term of the patent grant is an injury not easily repaired by damages at law. eBay, 547 U.S. at 394; Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. Inc., 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007). Therefore, the jury's finding of patent validity and infringement remain factors weighing in TT's favor.

TT argues that it will be irreparably harmed if an injunction is not entered against the infringing products because they directly compete with TT's MD_Trader product in the same

marketplace (plf. mo. at 3). eSpeed argues that "broad classifications" such as "competitor" have been rejected by district courts after eBay (defs. opp'n at 7). eSpeed is correct in that the Supreme Court in eBay discouraged the use of "broad classifications" in making an equitable determination. 547 U.S. at 393. However, there are specific factors here, associated with direct competition between the parties, that support TT's assertion of irreparable harm. TT cites trial testimony that distribution to its customer base, or its market share, is one of its most important assets. Erosion of this intangible asset would cause incalculable extraneous injury to TT's business. Therefore, the continuing existence of eSpeed's infringing products in the same marketplace as TT's products poses a risk of irreparable harm to TT. See O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd., 2007 WL 869576, *8 (E.D.Tex. 2007) *vacated and remanded on other grounds*, 2008 U.S. App. LEXIS 7053 (Fed. Cir. Apr. 3, 2008)(stating there is a "high value of intellectual property when it is asserted against a direct competitor in the plaintiff's market"); Novozymes A/S v. Genencor Int'l, Inc., 474 F. Supp. 2d 592, 613 (D. Del. 2007)(concerning "head-to-head competitors," the patentee "has a right, granted by Congress, not to assist its rival with the use of proprietary technology"); TiVo Inc. v. EchoStar Communs. Corp., 446 F. Supp. 2d 664, 669-670 (E.D. Tex. 2006)(availability of infringing products leads to loss of market share for plaintiff's products).

TT argues that because MD_Trader, an embodiment of the two patents infringed by eSpeed, is at the core of TT's business (its "heart and soul"), the continued existence of the infringing products are certain to cause irreparable harm (plf. mo. at 5). TT cites trial testimony that the patented features of the MD_Trader product distinguish TT in the marketplace and are almost solely responsible for TT's success in the industry. *Id.* We agree that where a patentee has built a successful business around core patented technology, an

infringing competitor in the same marketplace causes irreparable harm to the patentee.

TT argues that an injunction is the only open avenue to prevent eSpeed from eroding TT's market share and goodwill in the industry. eSpeed argues that there is no actual evidence of market share erosion or loss of goodwill. However, TT cites trial testimony that protecting MD_Trader is critical to protect TT's market share, reputation, goodwill and name recognition (plf. mo. at 6). TT also points out that infringing products in the marketplace would damage TT's reputation as an innovator and diminish the appearance of viability to its customers and potential investors. We agree with TT that the existence of the infringing products in the marketplace causes irreparable harm to TT's market share and goodwill in the industry. The factors for irreparable injury weigh in favor of granting TT's motion for a permanent injunction against the infringing products.

Inadequate remedy at law

Consideration of this factor overlaps considerably with that of irreparable injury, in that an inadequate remedy at law can cause irreparable harm. MGM Studios, 518 F. Supp. 2d at 1219, *quoting* MercExchange, 500 F. Supp. 2d at 582 ("[T]he requisite analysis for the second factor of the four-factor test inevitably overlaps with that of the first . . ."). TT asserts that money damages will not sufficiently remedy it for any future infringement by eSpeed. It argues that the courts, both before and after eBay, have often found money damages inadequate to remedy injury to the patent holder's right to exclude. This is evidenced by Chief Justice Roberts' concurrence, reminding courts that "a page of history is worth volumes of logic" and that "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." eBay, 547 U.S. at 395 (Roberts, J., concurring). eBay simply stands for the proposition that the right to exclude does

not automatically create an inadequate remedy at law, just as it does not automatically constitute irreparable harm. Here, TT was awarded a large sum by the jury for eSpeed's past infringement. However, that money does not compensate TT for any future infringement by eSpeed. Thus, TT's right to exclude is not compensated by monetary damages. *See* Visto Corp. v. Seven Networks, Inc., 2006 U.S. Dist. LEXIS 91453, *13 (E.D. Tex. Dec. 19, 2006). Furthermore, unlike the plaintiff in eBay, TT has demonstrated that an injunction is necessary to protect its brand name, market share, reputation and goodwill. MercExchange, 500 F. Supp. 2d at 570.

eSpeed argues that because TT has licensed the invention to a number of different companies, it is clear that money damages have been, and therefore will continue to be, sufficient to remedy any infringement. eSpeed asserts the eBay court found that a patentee's willingness to license its product to a competitor is significant evidence of the adequacy of money damages. While we agree with eSpeed's conclusion, we note that on remand the eBay district court's rejection of a permanent injunction was premised not only on Merc Exchange's willingness to license its patent, but also the fact that it did not practice the patent, had not sought a preliminary injunction, and consistently made clear its desire for money damages rather than injunctive relief. Merc Exchange, 500 F.Supp.2d at 570-573. *See also* eBay, 126 S.Ct. 1837, 1842 (Roberts, C.J., concurring) ("trial courts should bear in mind that in many instances the nature of the patent being enforced and the economic nature of the patent holder present considerations quite unlike earlier cases"). While TT has licensed to others, its licenses were negotiated in exchange for the parties' agreement to settle, rather than litigate, the validity or infringement of TT's patents. Here, eSpeed chose not to settle with TT, but to litigate. TT does not wish to license its product to eSpeed. TT argues that if an injunction is

not issued it will be forced into a compulsory licensing agreement with eSpeed, one that does not contain the myriad protections that a licensing agreement would normally possess. *See* Transocean Offshore Deepwater Drilling v. GlobalSantaFe Corp., 2006 U.S. Dist. LEXIS 93408, *19 (S.D. Tex. Dec. 27, 2006); Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech, Inc., 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007). We find TT's concerns valid, and that consideration of the above factors weighs in its favor.

Balance of Hardships

eSpeed argues that since it has discontinued manufacturing and selling the infringing software, TT had demonstrate no legitimate harm that would warrant injunctive relief. TT argues that the balance of hardships favors the issuance of an injunction. It asserts that when an infringer has pulled its infringing product from the market, the balance of hardships favors the patentee. Novozymes A/S v. Genencor Int'l, Inc., 474 F. Supp. 2d 592, 613 (D. Del. 2007). eSpeed remains capable of manufacturing the infringing product, which also weighs in TT's favor. Garlock, Inc., 842 F.2d at 1282 ("the mere fact that Garlock was no longer making or selling the infringing...products is not a sufficient ground for denying an injunction against future infringement").

Furthermore, since eSpeed no longer produces or sells the infringing software, it will not be burdened by the imposition of an injunction. eSpeed manufactures a number of non-infringing products and thus will not be harmed by an injunction preventing the marketing of infringing ones. TT argues that, on the other hand, it would be irreparably injured if no injunction issued and it had to compete with eSpeed's infringing products. TT asserts that not only would it lose valuable market share, but since MD_Trader is at the core of TT's success, the continued competition against infringing products could likely run TT out of business.

Finally, eSpeed argues that the infringing screen is just a small component of a much larger software package, the bulk of which is non-infringing. eSpeed asserts that courts are reluctant to enjoin an entire product where the infringement was limited to only a small part. z4 Techs., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437, 441 (E.D. Tex. 2006). However, as stated above, TT offered testimony that the features of MD_Trader that make it patent able over prior art are not simply small components of a larger package, but are the central features that make MD_Trader the popular software program that it is. The balance of hardships weighs in favor of an injunction.

Public Interest

TT argues that the public interest would be best-served by an injunction because there is a strong public interest in the enforcement of patent rights. Further, the products at issue are not related to issues of public health or other interests that would generate a public interest in their continued dissemination. eSpeed's main argument on this point, that the '132 and '304 patents are under re-examination by the PTO, and that public interest does not favor issuing injunctions when the patents are likely to be vitiated during re-examination, falls flat now that TT's patents have been upheld on re-examination. See Merc Exchange, 500 F. Supp. 2d at 586, 591. Therefore, the public policy considerations weigh in favor of an injunction.

Injunction Language

Finally, eSpeed argues that the language in TT's proposed injunction order is too vague and broad. eSpeed takes issue with TT's use of the phrase, "not colorably different from," with the alternate phrase, "no more than colorably different from." TT agrees to modify its order so that both phrases are identical. Therefore we do not address this argument. eSpeed also argues that TT's proposed order improperly attempts to enjoin entire products beyond the infringing ladder view. TT argues that its order only enjoins (1) the products the jury

found to infringe, (2) any products not colorably different from the infringing products, and (3) any product capable of operating in an infringing manner, even if its default setting is not infringing. These categories are properly enjoined. *See* 5 CHISUM ON PATENTS § 16.02(3)(c)("making a device 'capable of infringing use' constitutes infringement even though it may be capable of noninfringing use").

## CONCLUSION

For the foregoing reasons, TT's motion for a permanent injunction is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 22, 2008.