and $120.00 in attendance fees. The total subsistence and attendance award for Dr. Holder is $146.20.

2.

eSpeed likewise objects to Dr. David Klausner's subsistence costs based on a lack of documentation. eSpeed argues that Dr. Klausner's attendance fees and subsistence costs are undocumented because TT only provides two invoices reflecting 23 days of Dr. Klausner's work on the case, rather than any specific documentation of Dr. Klausner's attendance or expenses on the four days of trial for which TT requests costs (9/21/07, 9/24/07, 9/25/07, and 10/1/07) (Def.'s Obj. at 6). eSpeed contends that, as a result, TT can only recover attendance fees for the October 1, 2007 date of Dr. Klausner's testimony and no subsistence fees whatsoever (*Id.*).

Just as with Dr. Holder, TT argues that it used the $237.00 per diem rate for Dr. Klausner's subsistence because his expenses "far exceeded" the statutory maximum (Pl.'s Resp. at 6). TT states that it has reduced its request to include only subsistence costs for the night of September 24, 2007 (*Id.* at 5). Further, TT includes a "revised Exhibit 7" to TT's initial bill of costs in order to "more specifically define" TT's subsistence calculations (*See* Pl.'s Resp., Ex. A). TT's revised exhibit, however, does not show the claimed reduction in TT's subsistence request for Dr. Klausner or provide any invoices for Dr. Klasner's expenses (*See id.*).

The fact that Dr. Klausner's expenses may have exceeded the statutory maximum does not absolve TT of its obligation to provide proper documentation in order to recover. As with Dr. Holder, Dr. Klausner's $711.00 in undocumented subsistence costs are denied. However, we grant the requested $160.00 in attendance fees associated with Dr. Klausner.

13

TT notes in its response that eSpeed has offered no objection to $3,210.50 in requested costs for Dr. Klausner's travel expenses (Pl.'s Resp. at 6). As a result, we award the $3,210.50 in travel costs. *See Weeks*, 126 F.3d at 944-45 (the court must award costs to the prevailing party unless the losing party provides a sufficient reason to deny costs).

**3.**

eSpeed raises objections to TT's costs for Larry Nixon's attendance at trial and the inequitable conduct hearing. With respect to the trial, eSpeed objects to $1,380.10 in travel costs for Mr. Nixon, arguing that the corresponding invoices provided by TT were too heavily redacted "to ascertain the nature of his expenses" (Def.'s Obj. at 6). Further, eSpeed argues that Mr. Nixon's attendance during many of the trial dates was unnecessary, as was Mr. Nixon's attendance at the inequitable conduct hearing where he did not testify (*Id.*). In its response, TT supports Mr. Nixon's travel expenses for both the trial and the hearing with actual receipts (*See* Pl.'s Resp., Ex. D). TT also provides evidence that Mr. Nixon was anticipated to testify at trial on September 17, 2007 (*see* Pl.'s Resp., Ex. E), thereby necessitating his presence in Chicago until his actual testimony on September 19, 2007 (*See* Pl.'s Resp. at 6). TT notes that Mr. Nixon also attended trial to testify on September 20 and October 2, 2007, and to observe another witness's testimony on October 3, 2007 (*Id.*). Further, TT argues that Mr. Nixon attended the inequitable conduct hearing because TT expected him to testify, but decided not to offer Mr. Nixon due to time constraints (*Id.* at 7). In its reply, eSpeed argues that, at most, TT can recover the following costs for Mr. Nixon's attendance at the trial and the hearing: $1,827.90 in travel costs for Mr. Nixon's airfare, $393.00 for cab fare, and $52.00 for parking - totaling $2,271.60 (Def.'s Obj. at 5). With respect to Mr. Nixon's

14

appearance and subsistence costs for both events, eSpeed argues that TT can only recover $320.00 and $1,185.00 respectively (*Id.*).

TT has offered a legitimate reason for Mr. Nixon's attendance at the inequitable conduct hearing on April 3-4, 2008, which eSpeed has failed to rebut. Because TT has provided the proper documentation for Mr. Nixon's expenses, we award TT's total revised request of $2,568.10 for the trial (which includes $240.00 for attendance, $1,380.10 for travel, and $948.00 for subsistence), and $1,276.90 for the inequitable conduct hearing (which includes $80.00 for attendance, $959.90 for travel, and $237.00 for subsistence).[5]

### 4.

TT originally requested $5,471.00 in costs associated with Dr. Craig Pirrong (Bill of Costs, Ex. 7). In response to eSpeed's objections, TT reduced its request to $3,918.20 by removing travel expenses for Dr. Pirrong's wife and all costs associated with October 4, 2007 (Pl.'s Resp. at 7). TT also reduced Dr. Pirrong's subsistence request from ten to seven nights (*Id.*). eSpeed argues that $1,009.20 in travel costs for Dr. Pirrong should be denied as improper because it was unnecessary for him to travel back and forth between his Houston home and Chicago three times (Def.'s Reply at 5). According to eSpeed, TT can only recover costs for the seven days of trial when Dr. Pirrong was either testifying, observing eSpeed's expert, Dr. Ferraro, or serving as a potential witness (*Id.* at 6).

TT states that Dr. Pirrong attended trial on September 11-12, 2007, to observe opening arguments in preparation for his own testimony (Pl.'s Resp. at 7). TT has also provided evidence

---

[5]The Court notes that TT has withdrawn its request for subsistence and attendance costs related to a duplicate date of 10/2/07, which was erroneously listed in TT's Bill of Costs (*See* Pl.'s Resp. at 6). The Court has not awarded costs for this date.

that Dr. Pirrong was listed as a potential witness on September 17, 18, and 19, 2007 (*Id.*, Exs. F-H). Further, TT demonstrated that Dr. Pirrong attended trial on September 24 and 25, 2007, for the purpose of observing Dr. Ferraro's testimony (*See* Def.'s Resp., Ex. I). We find that Dr. Pirrong's attendance on those dates was reasonably necessary and award TT $1,422.00 in subsistence costs and $280.00 in attendance fees, reflecting Dr. Pirrong's seven days of attendance at trial. However, we deny $120.00 in costs for Dr. Pirrong's attendance on September 26, October 1, and October 2, 2007, because TT has failed to show that his attendance was reasonably necessary.

The remaining issue is whether the challenged travel costs are reasonable. The record shows that five days elapsed between each of Dr. Pirrong's trips to Chicago. Since Dr. Pirrong lives in Houston, a place "so far removed" from his residence as to prohibit his daily return, Dr. Pirrong would ordinarily be entitled to subsistence costs while remaining in Chicago to attend trial. *See* 28 U.S.C. 1821(d)(1). Assuming the maximum subsistence rate of $237.00 per day, Pirrong could have added $2,370.00 to his total costs by remaining in Chicago from September 11-25, 2007 to attend the trial (provided that TT made the requisite showing to recover costs). This total is more than double Dr. Pirrong's challenged flight costs. Given that Dr. Pirrong's trips back to Houston were both reasonable and economical, we award Dr. Pirrong's revised travel costs (*See* Pl.'s Resp., Ex. A), which total $2,096.20.

### 5.

TT requests $40.00 in attendance fees for Raymond Sims (Pl.'s Resp., Ex. A). eSpeed concedes that "[a]t most, TT can recover $40.00 in attendance fees for the day [Mr.] Sims testified" (Def.'s Reply at 6). With no specific objection, we award TT the $40.00 in attendance fees for Raymond Sims.

**6.**

eSpeed objects to $4,986.00 in subsistence costs for witness Chris Thomas, reflecting 18 days of his attendance at trial (Def.'s Obj. at 8). eSpeed argues that Mr. Thomas is not entitled to subsistence costs because he could have returned to his Chicago home every night after trial (*Id.*). eSpeed further argues that, even if subsistence costs were recoverable for Mr. Thomas, TT cannot claim the maximum allowable subsistence rate because TT has failed to provide any invoices documenting Mr. Thomas's costs (*Id.*). In response, TT argues that it should be awarded full subsistence costs for Mr. Thomas because his role as TT's "primary expert witness" necessitated his stay at the hotel "with the TT team" (Pl.'s Resp. at 8). TT, however, provides no invoices documenting Mr. Thomas's stay. In eSpeed's reply, eSpeed points out that Mr. Thomas's home was located in the Lakeview neighborhood of Chicago (Def.'s Reply at 6), which is within six miles of the courthouse.

Under 28 U.S.C. §§ 1920(3) and 1821(d)(1), a prevailing party is entitled to subsistence expenses for expert witnesses, which include accommodation expenses. However, Section 1821(d)(1) makes clear that subsistence expenses will only be awarded where "an overnight stay is *required*" because the place of attendance is "so far removed" from the witness's residence as to prohibit daily return. *See* 28 U.S.C. § 1821(d)(1) (emphasis added). Here, Mr. Thomas's overnight stay was clearly not required, as he lived nearby. We can appreciate why TT chose to have Mr. Thomas stay with the TT trial team throughout the trial, including after hours. But, TT is not entitled to have eSpeed pay for that choice. Mr. Thomas's stay at the hotel was not born of reasonable necessity, but mere convenience to TT's counsel, and his subsistence costs thus are not authorized by Section 1821(d)(1). *See Barber,* 7 F.3d at 645 (costs incurred merely for the convenience of

17

counsel may not be recovered); *Cefalu*, 211 F.3d at 427 (the court may only award costs that fall into a statutorily authorized category for reimbursement). We therefore deny TT's request for $4,029.00 in subsistence costs for Mr. Thomas.

eSpeed also objects to $720.00 in attendance fees for Mr. Thomas, arguing that his presence during 18 days of trial was "plainly excessive" (Def.'s Obj. at 8). TT responds that Mr. Thomas was TT's main expert on the issues of infringement and validity (Pl.'s Resp. at 7). TT argues that Mr. Thomas testified on September 19, October 2, and October 3, 2007 (*id.* at 6-7), and provides evidence that Mr. Thomas attended trial on other dates to observe witness testimony, including September 17, 18, 26, and 27, and October 1 and 2, 2007 (*See id.*, Ex. C). TT argues that Mr. Thomas's presence was necessary on all requested dates because "Mr. Thomas was prepared to rebut any issues raised during eSpeed's case-in-chief and provide sur-rebuttal for TT" (*Id.* at 8). In reply, eSpeed argues that TT can only recover attendance fees for the eight days on which Mr. Thomas attended trial to observe other witnesses or to testify (Def.'s Reply at 6).

TT has demonstrated that Mr. Thomas's presence on the requested dates was reasonably necessary. The pre-trial order in this case (doc. # 867-6) confirms Mr. Thomas's function as both a testifying witness in TT's case-in-chief and a rebuttal witness. We also find TT's explanation of Mr. Thomas's role credible. We therefore award TT the requested $720.00 in attendance fees for Mr. Thomas.

### 7.

eSpeed argues that costs for Stephen Kunin's attendance at the inequitable conduct hearing on April 4, 2008, are not recoverable because Mr. Kunin was not present on that date (Def.'s Obj. at 4-5). eSpeed also contends that Mr. Kunin's travel invoice does not provide sufficient detail to

support recovery (*Id.* at 5). In response, TT withdraws all requests associated with the mistakenly included April 4, 2008 date (Pl.'s Resp. at 8). TT also attaches a $276.50 air travel receipt (*See* Pl.'s Resp., Ex. J) for Mr. Kunin's flight from the Washington D.C. area to Chicago and reduces its total requested cost for Mr. Kunin from $1,825.57 (Bill of Costs, Ex. 7) to $593.50 (Pl.'s Resp. at 8). In reply, eSpeed argues that, at most, TT can recover $40.00 in attendance fees and $237.00 in subsistence fees for Mr. Kunin's attendance at the inequitable conduct hearing on April 3, 2008 (Def.'s Reply at 6), as well as $138.25 (reflecting half of his airfare) (Def.'s Reply at 6). eSpeed contends that costs for the other half of Mr. Kunin's airfare should be denied because Mr. Kunin enjoyed a one-day stopover in Connecticut before returning home to Washington D.C. (*Id.*).

We grant TT's revised request for $40.00 in attendance fees and $237.00 in subsistence costs for Mr. Kunin. However, Mr. Kunin's side trip in Connecticut resulted in a flight home that was not the shortest route to his residence, and TT fails to show that the cost of the flight would have been the same without that side trip. We therefore reduce Mr. Kunin's travel costs by half, and award TT a total of $435.25 ($40.00 for attendance fees, $138.25 for travel, and $237.00 for subsistence).

## B.

In the original bill of costs, TT seeks $346,995.62 for fees of the court reporter, which encompass: (1) stenographic transcripts of depositions, (2) video-recording of depositions, (3) court reporter appearance fees, and (4) court hearing and trial transcripts (Bill of Costs at 3). In response to eSpeed's objection, TT reduces this request to $153,319.73. In its reply, eSpeed raises several objections to TT's revised calculations for these items.

19

## 1.

With respect to deposition transcripts, eSpeed argues that TT has exceeded the per page rates set by the Judicial Conference of the United States by requesting costs for services typically not covered, such as rough ASCII, e-transcript, and others (Def.'s Obj. at 9-10). After considering eSpeed's objections, TT agreed to seek only costs associated with the transcripts themselves and "only the lesser of the actual cost or standard per page Judicial Conference rate" (Pl.'s Resp., Ex. K).[6] This results in a revised request of $76,181.11 in costs for more than 140 depositions (*See Id.*).

Under 28 U.S.C. § 1920(2), federal courts have authority to tax fees and disbursements for transcripts "necessarily obtained for use in the case." Recovery, however, is limited by Local Rule 54.1(b) to the copy rate established by the Judicial Conference of the United States at the time the deposition was taken. *See* N.D. Ill. L.R. 54.1(b). During the relevant depositions, the per page rates for original copies were as follows: $3.30 for ordinary transcripts, $4.40 for expedited transcripts, $5.50 for daily transcripts, $6.60 for hourly transcripts, and $2.75 for real time transcripts. N.D. Ill. General Order, September 24, 2002.[7] Transcripts need not be "absolutely indispensable" in order to justify an award of costs; a prevailing party need only demonstrate that the transcripts are "reasonably necessary." *Barber*, 7 F.3d at 645. Necessity is determined "in light of the facts known at the time of the deposition . . . ." *Id.*; *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir. 1985).

---

[6]In its original objection, eSpeed specifically challenged the depositions of Walter Buist, Richard Ferraro, and Amanda Lewis as exceeding the statutory maximum recovery rate (Def.'s Obj. at 10). We note that, by revising its request, TT has reduced the cost of these depositions to conform with the Judicial Conference rate.

[7]We note that on September 18, 2007, the Judicial Conference of the United States approved a ten percent increase in transcript and transcript copy rates, which became effective in fiscal year 2008. N.D. Ill. General Order 07-0024, September 18, 2007.

TT's deposition transcript costs were reasonably necessary. Depositions were used extensively during this case. eSpeed does not object to the number of depositions taken, or argue that any particular depositions were unnecessary or unreasonable. eSpeed also does not object to TT's requests for expedited transcripts in some instances. Since TT's dramatically reduced request now conforms to the Judicial Conference rate, the Court awards TT's revised request of $76,181.11 in deposition transcript costs.

### 2.

In the original bill of costs, TT requested $100,817.13 for costs associated with video-recording depositions (Bill of Costs at 3). eSpeed argues that TT cannot recover for both stenographic transcription and video-recording of the same depositions because TT has failed to show that video-recording was "necessary and reasonable" (Def.'s Obj. at 12). In response, TT reduces its request to $16,148.00 and only seeks video-recording expenses for witnesses whom TT claims were "unavailable" under *Engate, Inc. v. Esquire Deposition Svcs. LLC*, 2006 WL 695650, at *2 (N.D. Ill. March 13, 2006) (Pl.'s Resp. at 9; *see* Ex. K). TT argues that, because these witnesses resided outside the court's subpoena power, preserving their deposition by video-recording was necessary (*Id.*). In reply, eSpeed contends that *Engate* actually supports eSpeed's position that TT should not be able to recover costs for video-recording the depositions of U.S. witnesses who reside in the United States.[8]

---

[8]eSpeed argues that costs for video-recording of depositions should be denied for the following "U.S. witnesses:" William Bautz, Christopher Buist, Walter Buist, Raymond Deux, William Ellis, Richard Friesen, Andrew Griffen, Robert Klinger, Fred Mastro, Robert McCausland, William McHorris, Ankur Shah, and Richard Weisberger (*See* Def.'s Obj. at 7). We note that TT has listed Williams McHorris as being located in Spain (*See* Pl.'s Resp., Ex. K).

A prevailing party can recover costs for both a video-recording and a transcript of the same deposition, provided that the party can show both are necessary and reasonable in the context of the case. *Rogers v. City of Chicago*, 2002 WL 423723, at *3 (N.D. Ill. March 15, 2002); *see Little v. Mitsubishi Motors North America*, 514 F.3d 699, 702 (7th Cir. 2008) (holding that the district court was authorized to award prevailing party costs for a video-recording and transcript of the same deposition). TT does not argue that the video-recordings of depositions were necessary because they were used during trial. *See Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 2003 WL 1720066, at *7 (N.D. Ill. March 31, 2003) (holding that costs for both transcription and video-recording of the same depositions were necessary because "both parties made use of portions of the [video-recorded] depositions during trial"). Rather, TT contends that costs for video-recorded depositions were necessary and thus recoverable under *Engate* simply because the video-recorded witnesses lived outside of the court's subpoena power (*See* Pl.'s Resp., Ex. K).

*Engate* does not support such a blanket award of costs to TT. While the court in *Engate* awarded video-recording costs for two witnesses because they "reside[d] in England," *Engate*, 2006 WL 695650, at *2, the court also denied the same costs for three other witnesses because they "appear[ed] to reside in the United States, and there is no contention they were believed to be unavailable for trial." *See id.* n.1. Without providing any other evidence, TT labels certain witnesses as "unavailable" based on the location of their residence. For example, TT describes witness Walter Buist as a "[n]on-party residing in New York and not under the subpoena power of the court; therefore unavailable" (Pl.'s Resp., Ex. K). However, in his deposition, Mr. Buist testified that he was willing to appear at trial (Def.'s Reply Ex. D, W. Buist Dep. at 183-184). The court has previously rejected amorphous notions of "unavailability" like the one espoused by TT. *See BCS*

22

*Ins. Co., Inc. v. Guy Carpenter & Co.*, 2006 WL 1343218, at *2 (N.D. Ill. May 12, 2006) (rejecting defendant's argument that video-recording costs were necessary because "'witnesses die,'" and observing that "if this were reason enough on its own to make [video-recording] a necessary cost, all [video-recording] would be recoverable"). Accordingly, we reject TT's claim that the video-recorded deposition of every witness residing outside the court's subpoena power was automatically necessary.

After evaluating the necessity of each video deposition on a case-by-case basis, we find that both stenographic transcription and video-recording was only reasonably necessary for the depositions of witnesses living abroad whom TT disclosed as potential witnesses for trial. There are cases where it would be reasonably necessary to video-record the testimony of witnesses living abroad, given the difficulty associated with procuring their in-person testimony at trial. However, the need to preserve the testimony of a foreign witness is substantially decreased where TT has disclosed no intention of submitting the witness or his or her video-recorded deposition at trial. Similarly, the need for preserving a domestic witness's testimony by video-recording is small when TT has failed to provide a legitimate basis for that witness's proffered "unavailability." In those instances where TT might have obtained the live testimony of a domestic witness, or did not intend to submit the testimony of a foreign witness at trial, having both a transcript and a video-recording of the witness's deposition was purely for TT's convenience. Thus, the corresponding video-recording costs are not recoverable. *See Barber*, 7 F.3d at 645 (courts may not tax costs related to deposition transcripts "provided merely for the convenience of the requesting attorney").

Accordingly, we deny video-recording costs for the following foreign witnesses who were not disclosed in the final pretrial order as potential witnesses for trial: Michael Cartier, Malcom

23

Donaldson, and Paul MacGregor (England); William McHorris (Spain); Barbara Wattiez (Belgium); and Hiroyuki Kida (Japan). We also deny costs for the following witnesses who reside in the United States: William Bautz, Christopher Buist, and Walter Buist (New York); Raymond Deux (Colorado), William Ellis and Ankur Shah (Virginia); Richard Friesen (California); Andrew Griffin (Mississippi); Robert Klinger (Texas), and Robert McCausland (New Jersey). TT does not list witness Richard Weisberger's residence, but states that he is "not under the subpoena power of the court" (Pl.'s Resp., Ex. K). As explained above, we reject the notion that witnesses outside of the court's subpoena power are automatically "unavailable" for the purposes of awarding costs of video-recording. We therefore deny costs for Mr. Weisberger. In total, we deny $8,704.25 of the video-recording costs sought by TT.

We award video-recording costs for the depositions of the following foreign witnesses who were disclosed in the pre-trial order by TT: Nicholas Garrow, David Feltes, and Neil Treloar (England); Phillip Carré, Laurent Havard, Jean-Cedric Jollant, Marcel Tchitichiama, and Gerard Varjacues (France). We also award costs for the video-recording of Michael Glista of Chicago, based on TT's explanation that TT was "forced to take Mr. Glista's deposition in England, and it was unclear whether he would be available for trial" (*See* Pl.'s Resp., Ex. K). In addition, we award video-recording costs for the "Salans Demo," which TT explains was a "video of a computer demonstration required to preserve [the] demonstration" (Pl.'s Resp. Ex. K). In total, we award $7,443.75 in video-recording costs to TT.

### 3.

In the original bill of costs, TT requests $12,254.78 in court reporter appearance fees (Bill of Costs at 3). eSpeed argues that court reporter appearance fees cannot be taxed as costs because

24

TT's request for transcript fees already exceeds the per page rate established by the Judicial

Conference. Indeed, a court reporter's appearance fee "may be taxed as costs only to the extent that

the fee, when added to the per-page rate charged for the deposition transcript, does not make the total

charge per page exceed [the Judicial Conference rate]." *Fletcher v. Chicago Rail Link, LLC,* 2007

WL 4557816, at *1 (N.D. Ill. Dec. 20, 2007). However, court reporter appearance fees are no longer

at issue here. TT has apparently removed its request for court reporter fees and now only seeks the

cost of the transcripts themselves (*See* Pl.'s Resp., Ex. K). We therefore do not award this category

of costs.

### 4.

In its original bill of costs, TT requests $116,436.12 in costs for hearing transcripts, which

include the preliminary injunction and *Markman* hearings, as well as the jury trial and bench trial

on inequitable conduct (Bill of Costs at 4). eSpeed objects, arguing that TT's cost request lacks

sufficient information and is "substantially inflated" due to additional costs for non-recoverable

items such as "ASCII" and "PDFs" (Def.'s Obj. at 10). In response to eSpeed's objections, TT has

eliminated the challenged items, provided more detailed information, and reduced its request to

$42,105.19 (Pl.'s Resp. at 9). TT contends that transcripts of the various "extensive and

contentious" hearings in this case were necessary because the transcripts were "frequently used in

other hearings and briefs" (*Id.*). In reply, eSpeed concedes that, "at most," TT can recover the

requested $42,105.19 (Def.'s Reply at 8).

In its response, TT provides sufficient documentation supporting the number of pages and

per page rate. Because of the significant role that hearing transcripts played in this litigation, we