find that they were reasonably necessary and award TT the requested $42,105.19 in costs for hearings transcripts.

## C.

In the original bill of costs, TT requests $947,102.69 in fees and disbursements for outside printing costs (Bill of Costs at 5). eSpeed objects, arguing that TT has failed to show that the copied documents were "necessary for use in the case." eSpeed also contends that TT wrongfully requests costs for more than the three sets of copies permitted in the district, as well as various other "non-copying products"(*Id.* at 16-19). In response, TT reduces its request to $710,327.08 by applying a 75 percent multiplier (Pl.'s Resp. at 10). TT contends that applying a fractional multiplier is best because "it is so difficult to fully describe each copying expense associate[d] with a document-intensive multi-year litigation" (*Id.*). TT argues that additional copies were required because TT was ordered to provide copies of filings and documents to eSpeed's joint-defense partners (*Id.*). In reply, eSpeed argues that TT "cannot excuse its failure to demonstrate that its copying costs were necessary or its improper request for non-copying expenses simply by discounting its request by 25%" (Def.'s Reply at 9).

A prevailing party may recover costs for copies that were "necessary for use in the case." 28 U.S.C. § 1920(4). The phrase "for use in the case" refers to "'materials actually prepared for use in presenting evidence to the court . . . .'" *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990) (citation omitted). These materials include "copies attributable to discovery and copies of pleadings, motions, and memoranda submitted to the court;" they do not include "copies made solely for the convenience of counsel." *Roney v. Illinois Dept. of Transp.*, 2007 WL 1100751, at *1 (N.D. Ill. Apr. 12, 2007) (citations omitted). While the prevailing party must "provide the best

26

breakdown [of copying costs] obtainable from retained records," it is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," *Northbrook Express & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 644 (7th Cir. 1991).

TT's submission provides the date, invoice number, vendor, and total price for items such as "copying and supplies," "copying and DVD duplication," and "imaging" (*See* Bill of Costs, Ex. 4). From the corresponding invoices, it is clear that TT has expended the claimed amount of copying costs; however, the invoices make no reference to what documents were copied and how many copies were made. Both of these items of information are "needed to permit the Court to ascertain for itself whether the [copying] costs were necessary or were, for example, extra copies made for the sake of convenience." *Engate, Inc. v. Esquire Deposition SVCS. LLC*, 2006 WL 695650, *5 (N.D. Ill. March 13, 2006). Where the prevailing party has failed to provide sufficient information, courts in this district have either reduced copying costs by a substantial percentage, *see Engate*, 2006 WL 695650, *6 (50 percent reduction); *Allscrips Pharmaceuticals, Inc. v. Hazuka*, 1998 WL 1110062, at *1 (N.D. Ill. 1998) (25 percent reduction), or denied copying costs entirely. *See Telular*, 2006 WL 1722375, at *4; *Bilal v. BP America Inc.*, 2006 WL 850849, at *2 (N.D. Ill. March 24, 2006); *Fait v. Hummel*, 2002 WL 31433424, at *5 (N.D. Ill. October 30, 2002). TT proposes a 25 percent reduction in costs to account for any expenses that are not recoverable, because TT "would not be able to describe each and every entry without adding hundreds of pages to [its] brief and exhibits" (Pl.'s Resp. at 10).

We recognize that, in a protracted, document-intensive litigation, the Seventh Circuit does not require parties to provide a detailed explanation for the necessity of each page copied. *See*

27

*Northbrook Express*, 924 F.2d at 643 (citation omitted) ("'in the context of a six-year paper war,'" the district court did not abuse its discretion by awarding copying costs even though the prevailing party had failed to identify copied documents). We are also aware of the Federal Circuit's view that "in complex patent litigation involving hundreds of thousands of documents and copies, the parties cannot be expected to track the identity of each photocopied page along with a record of its relevance to the litigation." *See Summit Tech. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1378-79 (Fed. Cir. 2006) (holding that the district court did not abuse its discretion by awarding 50 percent of the prevailing party's copying costs, though the party had failed to identify copied documents). Here, the extensive and contentious proceedings in TT's multi-year litigation undoubtedly generated hundreds of thousands of documents and copies. eSpeed's objection fails to observe that TT did in fact incur substantial copying expenses, many of which were likely necessary and reasonable. Because TT has provided invoices for those expenses, we are not inclined to deny TT's copying costs entirely.

However, we are unable to award TT's total revised request due to concerns that it may still contain expenses for items that are not compensable. For example, TT admits that its original request sought costs for more than three sets of copies for some documents (*see* Bill of Costs at 5). In this district, recovery is generally limited to three sets of copies per document. *See Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 2003 U.S. Dist. LEXIS 13405, at 11 (N.D. Ill. July 31, 2003).

In addition, TT seeks reimbursement for services and products other than the mere reproduction of documents, including: "supplies," "OCR," "blowbacks," "bates and labels," "coding," "converting images from VHS to DVD," "messenger service," "uploading repository," "foamcore mounting," "CD creation," and "CD duplication" (Bill of Costs, Ex. 4). Costs for

28

services associated with copying are only recoverable "if these services are necessary to reproduce a document in a way that is organized and useful to the opposing party and the court." *First City Sec. v. Shaltiel*, 1993 U.S. Dist. LEXIS 14312, *6 (N.D. Ill. October, 6 (1993). However, TT has failed to show that these services were reasonable and necessary, and not merely for the convenience of TT's attorneys.

After balancing the fact that TT incurred considerable – and verifiable – copying expenses in this litigation against the various concerns raised by TT's submission, the Court in its discretion awards 25 percent of TT's original request. This award recognizes that TT inevitably incurred compensable copying costs as a result of this document-intensive litigation. At the same time, we find that a 75 percent reduction in costs prevents a situation where TT benefits from the shortcomings in its proof, by recovering more compensation for costs than it should. Consequently, we award $236,775.74 in copying costs to TT.

**D.**

TT seeks $1,882,570.55 in fees for exemplification and copies provided by two vendors: Trial Graphix and Focal Point (Bill of Costs at 6). eSpeed argues that TT's request for exemplification costs should be denied because: (1) TT has failed to identify any particular demonstratives or show how they were "necessarily obtained for use in the case," (2) TT's request includes costs for items such as "Strategy Development and Case Management" which are not recoverable under Section 1920(4), and (3) TT cannot recover exemplification costs associated with the pre-trial hearings in this case because only expenses from trial are compensable (Def.'s Obj. at 20-23). TT responds that the "vast number of demonstratives and graphics used" were necessary for both the jury and the court because "one of the primary issues in this case was movement on a

29

computer screen" (Pl.'s Resp. at 11). TT also contends that the "the invoices for Trial Graphix and Focal Point are quite detailed;" the Focal Point invoices, for example, "break down their costs into the following categories: (1) Strategy Development and Case Management, (2) Production (in some instances Production and Design), (3) Graphic & Animation Design and (4) Production Expenses" (*Id.* at 12). TT argues that the term "Strategy Development and Case Management" in Focal Point's invoices is "misleading" because it includes all of the time of Scott Hilton, "who was primarily responsible for preparing and duplicating the exhibits" (*Id.*). TT contends that it is not necessary to identify which costs are associated with which exhibits (*Id.*). In eSpeed's reply, eSpeed argues that TT has ignored the significant authority in this district requiring such information and rejecting many of the same costs now requested by TT (Def.'s Reply at 10).

As with photocopies, costs for exemplification cannot be awarded unless the Court determines that the particular exemplifications were "necessarily obtained for use in the case." *Cefalu*, 211 F.3d at 428 (quoting 28 U.S.C. § 1920(4)). In making this determination, the Court must consider whether an item qualifies as an exemplification. *Id.* While Seventh Circuit decisions have expanded the definition of what qualifies as an exemplification to include a "wide variety of exhibits and demonstrative aids," the cases draw a line "between the cost of conducting the research and analysis eventually reflected in the exhibit, and the cost of actually preparing the exhibit itself." *Id.* at 427-428. The latter expense is compensable under Section 1920(4), while the former is not. *Id.* at 427 n. 5; *Telular*, 2006 WL 1722375, at *5. In determining whether an exemplification expense was reasonably necessary, the court may consider whether the exemplification was "vital to the presentation" or "merely a convenience or, worse, an extravagance." *Cefalu*, 211 F.3d at 428-429. When a prevailing party does not identify the exhibits for which it claims costs, the "court should

30

deny awarding costs for the exhibits because it is impossible to determine whether the costs were necessary for use in the case." *Vigortone*, 2004 WL 1899882, at \*8 (citing *Fait*, 2002 WL 31433424, at \* 5).

TT fails to provide sufficient information for the Court to show that TT's exemplifications were reasonably necessary for the case. TT does not identify the exhibits created or indicate whether they were admitted at trial. Nor does TT identify the number of work hours attributed to each exhibit. Instead, TT merely provides a bill for general items such as "Production Expenses" and "Graphic & Animation Design" and asserts that whatever exhibits were created using these methods were necessary for use in the case (Pl.'s Resp. at 11-12). But, "[c]onclusory assertions that trial exhibit costs were necessary do not aid a court in assessing the necessity of the costs and determining whether to award exemplification costs." *Vigortone*, 2004 WL 1899882, at \*9. TT's omission of any information identifying the exhibits themselves, or the specific work performed in creating each exhibit, is fatal to TT's recovery. *See Telular*, 2006 WL 1722375, at \*5 (the court is only able to determine whether an exemplification is necessary "when the prevailing party identifies the exhibits and enumerates the costs associated with the exhibits"); *Cooper v. White*, 2007 WL 647342, at \*2 (N.D. Ill. February 28, 2007) (denying plaintiff's costs for exemplification because plaintiff did not identify any exhibits or demonstratives, making it impossible to conclude that the exemplifications were necessary for use in the case); *Vigortone*, 2004 WL 1899882, at \*9 (denying exemplification costs where the prevailing party failed to "identify the exhibits or types of exhibits used or the work performed in creating them and [made] no attempt to enumerate the costs [of the exhibits themselves]").

31

Based on the information provided, this Court cannot determine that any of TT's exemplification costs were reasonably necessary. This is especially true with respect to requested items that go beyond the mere printing of graphics and exhibits. As eSpeed points out, TT's invoices reveal charges from Trial Graphix for services like "Art Director," "InfoDesign Consultant," and "Computer Design Consultant" (*See* Def.'s Obj., Exh. 17, Trial Graphix Invoice No. 134375). In *Telular*, costs for precisely these services from Trial Graphix were denied because the prevailing party "provide[d] no explanation as to why such services were necessary for creating the demonstrative exhibits." 2006 WL 1722375, at *7. Like the prevailing party in *Telular*, TT has failed to show how such consulting services were necessary to creating a demonstrative exhibit, let alone a demonstrative exhibit that was necessary for use in the case. Similarly, TT's explanation for the "Strategy Development and Case Management" cost item from Focal Point fails to show that this type of service is compensable under Section 1920(4).

Based on this record, TT has failed to show that it is entitled to recover the costs it claims. *See Cefalu*, 211 F.3d at 428-429 (exemplification that is not shown to be reasonably necessary to the presentation of one's case to the court "does not qualify for reimbursement under Section 1920(4)"). We therefore deny TT's request for $1,882,570.55 in costs associated with exemplification and copying.

### E.

TT seeks $118,154.00[9] in costs for compensation of interpreters, which includes "interpretation services for depositions and trial testimony of non-English speaking witnesses, translating foreign documents, and certification of translations" (Bill of Costs at 6). eSpeed argues

---

[9]We note that the amounts listed for interpreter fees actually add up to $121,064.00 (*See* Bill of Costs, Ex. 6).

that TT cannot recover for interpretation services at trial, because TT has failed to show they were necessary in light of the fact that "other parties retained the official interpreter in most instances" (Def.'s Obj. at 23-24). eSpeed takes issue with two invoices for Japanese to English document translations: one $24,910.00 invoice is for translation of a 350-page document, and the $24,975.00 invoice is for translation of a 400-page document (Def.'s Obj., Ex. 19). eSpeed argues that, based on these invoices, "it is impossible to determine whether the translation services were necessary for trial or merely part of TT's factual investigation" (Def.'s Obj. at 24). In response, TT contends that 28 U.S.C. § 1920(6) does not require TT to demonstrate that interpretation services were necessary (Pl.'s Resp. at 12-13). TT argues that it needed to use check interpreters because of disagreements between the interpreters with respect to particular interpretations (*Id.* at 13). TT argues that the two challenged documents were translated for trial purposes because "eSpeed and other defendants had provided these documents as prior art on which they might rely at trial" (*Id.*). TT also argues that many of the translated documents "were subsequently actually used at trial by eSpeed and TT," as well as in TT's depositions of "numerous foreign witnesses" (*Id.*). In reply, eSpeed argues that TT "disingenuously" cites to a portion of the trial transcript showing a disagreement over competing translations of documents, rather than any dispute over translations of deposition testimony, "which is the context for TT's actual claim for reimbursement for 'check interpreters'" (Def.'s Reply at 12).

Section 1920(6) authorizes "compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828." 28 U.S.C. § 1920(6) (Section 1828 creates a program providing interpretation services in federal criminal and habeas corpus proceedings). The Seventh Circuit has explained that "the translator of a document is not referred to as an interpreter;" thus, the plain language of Section

33

1920(6) only authorizes an award of costs for interpreters who orally translate conversation from one language to another. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 727-28 (7th Cir. 2008). Costs associated with the translation of written documents are not recoverable. *Id.; see Horizon Hobby, Inc., v. Ripmax Ltd.*, 2009 WL 3381163, at *7 (C.D. Ill. October 17, 2010) (holding that "[b]ased upon the Seventh Circuit's decision in *Extra Equipamentos*, this court . . . cannot award costs for translation of documents").

Because Section 1920(6) does not authorize recovery for the translation of documents, we deny TT's costs for translation of the two challenged documents, as well as all other translated documents. *See Cefalu*, 211 F.3d at 427 (a court may only award costs that "fall into one of the categories of costs statutorily authorized for reimbursement"). We therefore deny costs for the following invoices labeled as "Translating documents," "Translation of documents," "Translation of alleged prior art," or "Certification of translation:" #7761 ($2,545.00), #7822 ($3,795.00), #7919 ($1,212.00), #50511 ($400.00), #7912 ($12,875.00), #32423 ($24,910.00), #105768 ($9,616.00), #32582 ($600.00), #32603 ($1,235.00), #32942 ($24,975.00), #33418 ($400.00), #6154 ($7,050.00), #36767 ($895.00), #36850 ($120.00), #36879 ($275.00), #6165 ($30.00), #37498 ($90.00), #37312 ($545.00), #37449 ($90.00), #6197 ($2,896.00), #6199 ($6,483.33), #6201 ($916.67). We also deny costs for two mixed-purpose items labeled "Interpreting for depositions and document translation" and "Translation of documents and certification of translation:" the first item has no invoice but is described as "Joanna Dezio, 4/26/2007" ($7,390.00), and the second item is invoice #6166 ($270.00). Since the information provided by TT provides no method for separating out the

34

translation portion of costs associated with these items, we deny those costs in their entirety. The total translation cost denied to TT is $109,614.00.[10]

eSpeed argues that TT's oral interpretation costs should be denied because TT has failed to show that its interpretation services "were actually necessary for trial." In support, eSpeed cites *Whirlpool Corp. v. LG Electronics, Inc.*, 2007 WL 2462659 (W.D. Mich. August 26, 2007), a case explaining that, in the Sixth Circuit, prevailing parties must demonstrate that interpretation fees are "reasonable and necessary" in order to recover. 2007 WL 2462659, at *4. However, TT's explanation for procuring its own oral interpreters is satisfactory.

TT provides evidence that a disagreement with respect to competing interpretations occurred during trial (Pl.'s Resp., Ex. 13). While this disagreement may have centered on a translated document, any disagreement with respect to an interpretation is sufficient to alert a party to the need for hiring its own interpreter. TT has explained that this litigation involved depositions of numerous foreign witnesses regarding several foreign language documents. We find that TT's explanation for its use of so-called "check interpreters" meets the standard for recovery set by Section 1920(6). Accordingly, we award TT's verifiable costs associated with oral interpretation, as reflected by the following invoices marked "Interpreting for depositions" or "Interpreting for trial:"#10839 ($2,000), #11170 ($1,950), #11684 ($1,225.00), #759 ($455.00). However, because invoices are missing for three items of interpretation costs, we decline to award the associated costs. These three items are identified as "Deborah Joyce, 5/1/2007" ($455.00), "Joanna Dezio, 9/6/2007" ($2,000), and "Deborah Joyce, 9/27/2007 ($455.00).

---

[10]Because translation costs for TT's documents are not recoverable under Section 1920, we need not address eSpeed's argument that certain translated documents may have been procured by TT for investigative purposes.

In total, we award $5,630.00 in costs for interpretation to TT.  We deny $2,910 in undocumented interpretation costs.

**F.**

TT seeks $2,2025.45 in costs for process service and witness appearance fees (Bill of Costs at 2).  eSpeed argues that TT cannot recover the requested $1,534.45 in service of process fees because TT's invoices "do not detail the time required to effectuate service, where service took place, or why rush service was necessary" (Def.'s Obj. at 25).  eSpeed contends that, without more detail, TT may only recover a maximum of $40.00 per witness (the minimum U.S. Marshals service charge) – yielding a total of $509.90 (*Id.*).  TT responds by arguing that the "majority of invoices do specify where the subpoena was served" and the remaining addresses can be found within subpoenas submitted to eSpeed (Pl.'s Resp. at 14).  TT contends that, as of 2002, the rate for Marshal's service was actually $45.00 per hour, plus $0.365 per mile (*Id.*).  In reply, eSpeed concedes that the service rate provided by TT is correct and now claims that TT is entitled to "no more than $818.84" in summons and subpoena fees (Def.'s Reply at 13).

Fees for service of process are recoverable under 28 U.S.C. § 1920(1), but may not exceed the U.S. Marshals rate at the time process was served.  *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996).  As of 2002, the U.S. Marshals Service charges were $45.00 per hour, plus $0.365 per mile.  *Chamberlain Group, Inc. v. Interlogic, Inc.*, 2002 WL 31176068, at 3 (N.D. Ill. 2002).

TT's request for process service fees does not provide enough information to support a full recovery.  TT admits that not all invoices contain the location of service (*See* Pl.'s Resp.).[11]  Further,

---

[11]TT has not attached any invoices to its request for costs of service.  While TT later supplemented its bill of costs by providing a box of invoices, the Court has been unable to locate any invoices that correspond with the invoice numbers provided in TT's request for service costs (*See* Bill of Costs, Ex. 1).

36

TT does not indicate the amount of time required to effectuate service or why rush service was used. For example, TT requests $351.00 for the September 12, 2007 service of Warren Smith, but provides no explanation justifying this comparatively high cost. Without this information, the Court cannot assess the necessity and reasonableness of TT's service fees. Consequently, we award the minimum per witness rate charged for Marshals service ($45.00 for a single hour) for any of TT's service costs exceeding the minimum. *See Johnson v. City of Elgin*, 2002 WL 171971, at *5 (N.D. Ill. Feb. 1, 2002) (awarding the minimum charge of one hour of Marshal's service where the prevailing party "[did] not state where service was accomplished, how long it took, or why 'rush' service was necessary"). In light of TT's attempt to serve witness Dale Martin four times, we will apply the minimum Marshal's service rate for each attempt.

We apply the following service costs for each deponent: Steve Brucato ($45.00), Cactus Technologies ($45.00), Patsystems ($45.00), Chicago Mercantile Exchange, Inc. ($34.50), Matthew Kelly ($34.50), Harrison Trading Group ($45.00), RHO Trading Securities, LLC ($45.00), Amanda Lewis ($45.00), Dale Martin ($180.00), Daniel Durkin ($45.00), Warren Smith ($90.00 - reflecting two dates), GeoText Translations, Inc. ($45.00), and LIFFE ($45.00). In total, we award $744.00 in service of process fees to TT.

In its original submission, eSpeed does not object to $491.00 in requested costs for witness

appearance fees.[12] Therefore, we award $491.00 in witness appearance fees to TT. *See Allscrips*,

1998 WL 1110062, at *2 (to avoid costs, the losing party must show they are not justified).

### G.

Finally, we turn to eSpeed's request that this Court deny all printing, copying, and

exemplification fees "that relate directly to subjects where eSpeed was plainly the 'prevailing party;

'" including: (1) the February 21, 2007 deposition of James Davies and the July 27, 28, and 29, 2005

depositions of Joe Noviello that "relate primarily" to eSpeed's non-infringing products, (2) the May

16 and August 16, 2006 transcripts of the *Markman* hearing, which eSpeed argues resulted in a claim

construction favorable to eSpeed, (3) the February 24, March 7, and March 10, 2006 and December

20, 2007 transcripts of court hearings which eSpeed argues are "relat[ed] to the other lawsuits filed

by TT"(Def.'s Obj. at 14-15), (4) the portion of the jury trial transcript pertaining to testimony on

the willfulness issue (*Id.* at 15), and (5) any exemplification or copying costs associated with the

preliminary injunction hearing, *Markman* hearing, and the willfulness portion of the jury trial (*Id.*

at 23). In response, TT argues that it should recover for all depositions because "only portions" of

the challenged depositions "were related to issues on which [eSpeed] eventually prevailed" and "the

---

[12]In eSpeed's reply, eSpeed objects to TT's witness fees for the first time, arguing that "TT cannot recover witness fees for depositions that TT admits never occurred," including "Catus Technologies, Matthew Kelly, Dale Martin, and Gelber Securities" (Def.'s Reply at 13). As TT observed in its response, eSpeed originally raised no objection to TT's $491.00 request for witness fees (*See* Pl.'s Resp. at 14). It is improper to raise arguments for the first time in a reply because this deprives the other party of an opportunity to respond. *Marie O. v. Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997) (matters raised for the first time in a reply are waived). Because eSpeed's objection to TT's witness fees was raised at the reply stage, we will not consider it. However, we note that the Seventh Circuit has held that it is not improper to award costs for fees paid to witnesses "who were subpoenaed and given notices of depositions, but whose depositions were never actually taken." *See Haroco v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1249, 1442 (7th Cir. 1994) (citing *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129 (7th Cir. 1987)).

Court is not obligated to apportion costs based on 'relative success'" (Pl.'s Resp. at 9). In reply, eSpeed contends that this Court "plainly has the discretion to apportion costs" (Def.'s Reply at 7).

Federal courts have broad discretion to determine "whether and to what extent to award costs." *Barber*, 7 F.3d at 644 (quotation marks and citation omitted); *see Cefalu*, 211 F.3d at 429 (observing that "[i]n all cases" the court "retains the equitable authority to deny compensation to a prevailing party for costs that are [otherwise] compensable"). Accordingly, case law recognizes the discretion of courts to reduce the prevailing party's award of costs in order to reflect the losing party's partial success. *See Kemin*, 464 F.3d at 138; *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1235 (10th Cir. 2001); *Simmons v. American Export Lines, Inc.*, 26 F.R.D. 111, 112 (S.D. N.Y. 1960); *Leeds & Northrup Co. v. Doble Engineering Co.*, 41 F.Supp. 951, 952 (D.C. Mass. 1941); *see also* Wright & Miller, *Federal Practice & Procedure*, 10 Fed. Prac. & Proc. Civ. § 2667 (3d ed. 2010). However, apportionment of costs based on the relative success of the parties is only appropriate when "the costs incurred are greatly disproportionate to the relief obtained." *Kemin,* 464 F.3d at 1348. Even then, "there is no rule requiring courts to apportion costs." *Id.*

Since we have already denied TT's exemplification and copying costs on other grounds, the only remaining issue is whether to apportion TT's award of printing costs. In our discretion, we decline to embark on an effort to apportion these costs for three reasons.

*First*, this is not a case where the plaintiff prevailed on only a small portion of the issues in the litigation. *See Steel Const. Co. v. Louisiana Highway Com'n*, 60 F.Supp. 183, 193 (D.C. L.A. 1945) (apportioning costs because over nine-tenths of the record related to matters where the plaintiff was unsuccessful). TT demonstrated eSpeed's infringement of two patents, defeated assertions of invalidity and unenforceability, obtained a money damage award of more than $2.5 million, and

39

obtained a permanent injunction against eSpeed's future production and sale of the infringing products. To be sure, this is not everything that TT sought. However, in the context of this litigation, TT's success is significant enough to militate against the apportionment of costs. *See Kemin*, 464 F.3d at 1348 (district court did not abuse its discretion by refusing to apportion costs where plaintiff had prevailed on one of its two infringement claims, as well as defendant's invalidity and unenforceability claims).

*Second*, eSpeed has not provided a principled way to perform the apportionment that it seeks. For instance, eSpeed asks this Court to cull all witness testimony on the issue of willfulness from the trial transcript and assign it a value by which to reduce TT's award (Def.'s Obj. at 15). But, the testimony of each witness might have gone to multiple issues. The same is true of the challenged depositions, which TT contends were only partially related to issues upon which eSpeed prevailed (*See* Pl.'s Resp. at 9). In the context of attorney's fee awards, the Seventh Circuit has held that "[i]t is proper . . . for the court to adjust a fee downward to account for unsuccessful claims, but such an adjustment is frequently inappropriate where the claims are so closely tied together" as to make them inseparable for purposes of recovery. *Smith v. Great American Restaurants, Inc.*, 969 F.2d 430, 440 (7th Cir. 1992). In such cases, the Court emphasizes that fees should not be reduced by an arbitrary percentage. *Id.* at 339. We find this analysis instructive here, and decline eSpeed's invitation to reduce TT's costs arbitrarily, based on testimony that might have gone to multiple issues, including those upon which TT prevailed.

*Third*, for reasons explained above, we have already substantially reduced TT's costs from $2,887,117.56 to $381,831.04. Although this award is more than the $147,190.45 amount suggested

by eSpeed, it is only a fraction of TT's original (and revised) costs. Under these circumstances, equitable considerations do not justify a further reduction of TT's award.

For these reasons, we deny eSpeed's request to apportion TT's printing costs.

## CONCLUSION

For the foregoing reasons, this Court rules as follows: (1) we deny eSpeed's motion to strike TT's bill of costs (doc. # 1288); (2) we deny eSpeed's motion to stay costs pending appeal (doc. #1288); and (3) we grant in part and deny in part TT's bill of costs (doc. # 1272, 1283) as revised in TT's response brief (#1297), and award TT costs in the amount of $381,831.04 (as reflected in the chart below).

| Requested Item | TT's Revised Costs | Costs Awarded |
|---|---|---|
| Witness Fees | $20,720.40 | $12,460.25 |
| Fees of the Court Reporter | $153,319.73 | $125,730.05 |
| Printing Fees | $710,327.08 | $236,775.74 |
| Copies and Exemplification | $1,882,570.55 | $0 |
| Interpretation Fees | $118,154.00 | $5,630.00 |
| Service and Witness Fees | $2,025.45 | $1,235.00 |
|  |  |  |
| Total | $2,887,117.56 | $381,831.04 |

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: October 29, 2010

41