**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04 cv 5312 |
| eSPEED, INC., eSPEED INTERNATIONAL, LTD., ECCO LLC, and ECCOWARE, LTD., | ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This patent action comes before the Court following the entry of a Report and Recommendation [1341] entered on September 8, 2010 by Magistrate Judge Schenkier following this Court's referral [see 1334] of Plaintiff's motion to enforce money judgment and for sanctions [1324] to Judge Schenkier's docket pursuant to 28 U.S.C. § 636. Defendants eSpeed, Inc., eSpeed International, Ltd., Ecco LLC, and Eccoware, Ltd. ("eSpeed") and Plaintiff Trading Technologies International, Inc. ("TT") both have filed objections [1342 (eSpeed), 1343 (TT)] to Judge Schenkier's Report and Recommendation. For the reasons stated below, the Court overrules both parties' objections [1342, 1343] and adopts Judge Schenkier's report and recommendation (with one very minor exception on a factual point). Accordingly, the motion to enforce money judgment and for sanctions [1324] is respectfully denied, and the judgment entered on June 13, 2008 (*nunc pro tunc* to May 22, 2008) [1263] will be amended (also *nunc pro tunc* to May 22, 2008) to reflect – in addition to the injunctive relief already set forth – the jury verdict and post-remittitur damages award in the amount of $2,539,468.00, plus prejudgment interest at the prime rate, compounded monthly.

I.     **Background**

In his September 8, 2010 Report and Recommendation [1341], Judge Schenkier (1) determined that Plaintiff is not entitled to an order enforcing the money judgment or sanctions and (2) recommended that the Court enter a corrected final judgment order pursuant to Federal Rule of Civil Procedure Rule 60(a).   Both parties filed timely objections.   eSpeed objects to Judge Schenkier's second recommendation – namely, that the 2008 judgment order be corrected under Rule 60(a) – on the ground that any such relief cannot be granted at this late date and would unfairly benefit TT and prejudice eSpeed.   TT accepts Judge Schenkier's second recommendation, but contends that sanctions in the form of attorneys' fees and costs also should have been granted.

In considering the parties' objections, this Court reviews *de novo* the portions of the Report and Recommendation to which objections have been made.   See 28 U.S.C. § 636(b)(1); see also *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).   After undertaking a *de novo* analysis of the record, this Court may accept, reject, or modify the Magistrate Judge's recommendations.   28 U.S.C. § 636(b)(1).

II.     **Analysis**

As a prelude to addressing the parties' objections, the Court notes (as did Magistrate Judge Schenkier) that the "historical facts" leading up to the entry of judgment by Judge Moran in 2008 are undisputed.   In October 2007, at the conclusion of a month-long trial, the jury returned a verdict in TT's favor and awarded $3.5 million in damages.   On February 5, 2008, Judge Moran entered an order granting eSpeed's motion for a remittitur, thereby leaving TT with the option of accepting a reduced verdict ($2.539 million) or proceeding to a new trial.   On February 12, 2008, TT timely notified Judge Moran that it accepted the remittitur.   On May 22,

2008, Judge Moran granted TT's motion for a permanent injunction – a ruling that, in Judge Moran's view, ended the case in the district court. On June 12, 2008, TT submitted a proposed final judgment order that included the damages awarded by the jury, as reduced by the remittitur. The following day, the parties appeared before Judge Moran. Counsel for eSpeed inquired whether Judge Moran was inclined to enter the proposed order (as to which eSpeed had an objection). Although eSpeed never identified the nature of its objection, Judge Moran indicated that he would use his own form for the judgment document. Later that day, Judge Moran entered a judgment order, but that order omitted any reference to the damage award to TT.

The initial question raised by TT's motion is: what accounts for the failure of the judgment order to accurately reflect the disposition of all of the issues litigated in the district court? This Court agrees with Judge Schenkier that "the best explanation is likely the fallibility of human beings (judges included)." [1341, at 6.] Indeed, there really is no other plausible explanation. Every indication in the record – before, on, and after June 13 – shows that the parties and the judge believed the case to be over in the trial court.

In a brief filed on June 3, 2008, eSpeed expressed the view that "all issues are now resolved and ready for appeal, giving the Federal Circuit the benefit of a full record." [1252, at 5.] TT obviously concurred in that view; on June 12, 2008, it submitted a proposed final judgment order that incorporated the jury verdict (as reduced by the remittitur) as well as the permanent injunction order entered by the court.

The transcript of the proceedings before Judge Moran on June 13, 2008 (the date on which the judgment order was entered, *nunc pro tunc* to May 22) similarly reflects Judge Moran's view that the case was over in the district court. On that date, Judge Moran discussed various aspects of the appeal and noted that the parties were engaged in "jockeying for position

before the Federal Circuit." 6/13/08 Tr. [1280] at 3. He presciently observed that "you people are perfectly capable of trying to influence the Federal Circuit, and the Federal Circuit is perfectly capable of making up its own mind as to how it wants to proceed." *Id*. at 3-4. And in indicating his inclination to use his own form of judgment rather than entering the proposed order submitted by TT, Judge Moran in no way suggested that the judgment would not include the damages award. See *id*. at 4.

Notably, the post-judgment proceedings before Judge Moran also are fully consistent with Judge Schenkier's surmise, shared by this Court, that the omission of the damages award from the judgment was the result of human error. A week after the entry of judgment, eSpeed filed a motion for a stay of judgment pending appeal without the posting of a supersedeas bond. [See 1268.] In his July 24, 2008 opinion granting eSpeed's request, Judge Moran referenced the extent to which eSpeed's revenue and assets exceeded the "amount of the judgment" and concluded that "eSpeed has more than enough cash on hand to satisfy TT's judgment." [1292, at 2-3.] That discussion plainly supports the view that the omission of the amount of damages was an inadvertent oversight. Had Judge Moran not believed that there was a money judgment, there would have been no reason for him to address – and, indeed, no reason for eSpeed to have asked for – a waiver of the bond requirement.

The record thus overwhelmingly confirms that there was an oversight or omission in the judgment order. As Judge Schnekier observed [see 1341, at 4, 6, 12], the parties must share some of the blame for the failure to correct the oversight. TT obviously knew that the judgment as entered differed in a material way from the one that TT itself had proposed. And the omission was not lost on eSpeed, as its filings in the Federal Circuit make clear.

Having delved into the archaeology to comprehend the omission from the judgment, Judge Schenkier went on to address the appropriate consequences. He concluded that "the most straightforward and sensible course of action here is to correct the final judgment order so that it reflects the damages award that plaintiff obtained." [1341, at 1-2.]

### A.    eSpeed's objections

eSpeed raises three basic objections, which can be summed up as follows: (1) it is too late to alter the judgment to incorporate the damages amount; (2) the amendment would prejudice eSpeed because it never had an opportunity to raise issues regarding damages in the prior appeal to the Federal Circuit; and (3) the amendment would unjustly reward TT's tactical choice to ignore the omission in pursuit of tactical advantages on appeal. The Court addresses below each of the objections, all of which are respectfully rejected.

### 1.    The recommendation to enter an amended judgment under Rule 60(a)

eSpeed first objects on the ground that because Rule 59(e), and not Rule 60(a), controls in the present circumstances, it is too late to enter an amended judgment. Judge Schenkier rejected that argument and recommended that the Court invoke its authority under Rule 60(a) to correct the oversight in the existing judgment. As Judge Schenkier noted, the judgment should have recited the monetary relief awarded, but did not do so. [1341, at 8.] Everyone in the case plainly understood the terms of the award of money damages. Indeed, as noted above, even after entry of the judgment that omitted any reference to damages, the parties (and the court) proceeded as if a money judgment had been entered. For example, eSpeed filed a motion in which it, among other things, asked Judge Moran to waive the usual requirement for a supersedeas bond – a request that makes sense only if the parties (and the court) believed that a money judgment had been entered. In all of the circumstances, Judge Schenkier correctly

determined that this case fits cleanly within the plain language of Rule 60(a), which permits corrections to a judgment at any time in the event of "mistake from oversight or omission." FED. R. CIV. P. 60(a).

The Seventh Circuit case law cited by the parties is easily reconciled with that outcome, and eSpeed's contention that *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062 (7th Cir. 1992), compels a different result is not persuasive. To begin with, *Herzog* involved an invocation of Rule 59(e) and only made passing reference to Rule 60(a). *Id.* at 1064-66. In addition, in its brief mention of Rule 60(a), the court focused only on the "clerical" mistake prong of the rule, not the "oversight or omission" prong that applies here. *Id.* at 1065. *Herzog* also makes clear that the line between a "substantive" motion (under Rule 59) and a "procedural" one (under Rule 60) is a fuzzy one that depends on context. *Id.* This case presents a stronger case for application of Rule 60(a) than *Herzog*, for the indicia of "oversight or omission" in this case go well beyond the grant of a motion without specifying in the judgment order the consequences of the court's ruling – even if the consequences were easily ascertainable from documents in the record, as was the case in *Herzog*. Here, the amount not only was ascertainable, but actually was ascertained – after a jury verdict, a remittitur, and the formal acceptance of the remittitur. For all of these reasons, the Court respectfully disagrees with eSpeed's reading of *Herzog* and its contention that *Herzog* somehow is controlling.

This Court agrees with Judge Schenkier that the more instructive Seventh Circuit analysis comes from *Talley v. U.S. Dep't of Agriculture*, 595 F.3d 754 (7th Cir. 2010), vacated on grant of reh'g *en banc* (7th Cir. June 10, 2010).[1] In *Talley*, as here, there was no doubt that the amount

---

[1] Although the panel opinion in *Talley* was vacated when the court of appeals voted to rehear the case *en banc*, the issues that were briefed by the parties in the *en banc* proceeding did not involve the panel's treatment of the preliminary jurisdictional issue. See No. 09-2123 (7th Cir.) docket entries 35, 36, 37. Accordingly, notwithstanding the fact that the panel opinion was vacated and the judgment of the district

of damages (and attorneys' fees) that clearly and unequivocally had been awarded in the district court after trial was not incorporated into the Rule 58 judgment order. *Id*. at 757. The Seventh Circuit noted the district judge's "failure to perform his ministerial duties," yet concluded that "[b]ecause the parties agree that proceedings are over in the district court, the failure to enter a proper judgment does not prevent an appeal."[2] *Id*. The court of appeals further expressed its "trust that the district court will correct its judgment if greater specificity is necessary to enforcement." *Id*. At least implicit in that observation is the availability of Rule 60(a) to accomplish such a correction, for the Seventh Circuit's opinion in *Talley* was issued on February 12, 2010, more than a year after the entry of the flawed judgment in the district court on February 4, 2009. Here, too, the amount had been finally and formally ascertained after extensive proceedings: a lengthy jury trial, post-trial motion practice, an order granting a remittitur, and the written acceptance of the remittitur. TT even submitted a proposed order incorporating the money damages award. And, as in *Talley*, it was abundantly clear that the proceedings in the district court had come to an end and there is no plausible explanation other than oversight for why the judgment order did not track what everyone understood to be the disposition of the case.

The foregoing analysis leads the Court to agree with Judge Schenkier that the circumstances of this case fit well within the meaning of Rule 60(a)'s authorization to correct "a mistake arising from oversight or omission whenever one is found in a judgment" and thus to

---

court affirmed by an equally divided *en banc* court (see Order, No. 09-2123 (7th Cir. Oct. 1, 2010)), this Court accepts the panel's analysis of the Rule 58 issue as at least persuasive, if not technically controlling, authority.

[2] In treating the judgment in *Talley* as final for appeal purposes despite the obvious failure to incorporate the amount of damages into the Rule 58 judgment order, the Seventh Circuit essentially took the same tack as the Federal Circuit did in this case when it denied eSpeed's motion to dismiss TT's appeal and proceeded to disposition under 28 U.S.C. § 1295.

accept his recommendation that an amended final judgment order be entered, *nunc pro tunc* to May 22, 2008, that reflects – in addition to the injunctive relief – the jury verdict and a damages award of $2,539,468.00, plus prejudgment interest at the prime rate, compounded monthly.

2.        **The scope of the prior appeal**

In regard to eSpeed's second objection – namely, that it would be unfairly prejudiced by

the entry of an amended judgment – the Court notes that the Federal Circuit indisputably treated

the appeal of Judge Moran's rulings as an appeal from a final judgment under 28 U.S.C. § 1295,

rather than as an appeal from an injunction order under 28 U.S.C. § 1292.  See *Trading Tech.*

*Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1357-61 (Fed. Cir. 2010).  That necessarily means that

the Federal Circuit believed that all claims as to all parties had been adjudicated in the district

court.  See, *e.g.*, *Catlin v. United States*, 324 U.S. 229, 233 (1945) (explaining that a final

judgment appealable under § 1295 "ends the litigation on the merits and leaves nothing for the

court to do but execute the judgment"); *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d

1354, 1362 (Fed. Cir. 2003) (explaining that a case must be "fully adjudicated as to all claims for

all parties" before appellate jurisdiction is proper under § 1295).  Judge Moran certainly thought

that as well; indeed, eSpeed itself told him so shortly before the entry of the final judgment.  Had

the Federal Circuit granted eSpeed's motion to dismiss or somehow otherwise indicated that it

was considering the case under § 1292, eSpeed would have a stronger point.  But the denial of

the motion to dismiss, the clear indication that the appeal would proceed under § 1295, and the

fact that issues arising out of the jury verdict were both raised and decided confirms Judge

Schenkier's spot-on assessment that the jury issues were "fair game for appeal."  [1341, at 8.]

Indeed, given how eSpeed (and TT, for that matter) pulled out all of the stops in litigating the

appeal – including, for example, the filing of a protective notice of appeal and the request to

realign the parties under Federal Rule of Appellate Procedure 28.1 – it is difficult to believe that

eSpeed held back an argument that it wished to make because it was concerned that the issue was

not within the scope of the appeals. If that was eSpeed's concern, the prudent course would have been to advance the argument on appeal, at least provisionally, rather than risk forfeiting it.

### 3. The designation of TT as appellant in the Federal Circuit

eSpeed's final objection – that TT's stands to benefit unfairly from an amended judgment that it earlier eschewed in pursuit of strategic advantage in the Federal Circuit – fares no better. As Judge Moran noted, even before the entry of the June 13 judgment order, it was quite evident that the parties were engaged in "jockeying for position" in the court of appeals. 6/13/08 Tr. [1280] at 3. But eSpeed places far too much weight on TT's alleged ulterior motive in remaining silent in the district court lest TT place "in jeopardy" its designation as appellant in the court of appeals. [See 1330, at 11.] In the first place, there was no guarantee that any machinations on TT's part to secure its place as appellant would succeed. In fact, the rules provide only a default position – first to file – which is subject to revision in the discretion of the court of appeals under Federal Rule of Appellate Procedure 28.1. TT's position thus was "in jeopardy" from the moment that eSpeed availed itself of the opportunity to spell out the circumstances and ask the Federal Circuit to realign the parties in the event that the court declined to dismiss TT's appeal altogether. As Judge Moran observed, the Federal Circuit was "perfectly capable of making up its own mind as to how it wants to proceed" (6/13/08 Tr. [1280] at 3-4), as it did in issuing a written order denying both eSpeed's motion to dismiss and its request, in the alternative, for a realignment of the parties such that eSpeed would be designated the appellant. See *Trading Techs. Int'l, Inc. v. eSpeed, Inc., et al.*, Order, Nos. 2008-1392, -1393, -1422 (Fed. Cir. Aug. 19, 2008) (Schall, J.) (attached to eSpeed's objections as Ex. 12 [1342-4, pp. 14-15]).

### B.     TT's objection

TT's lone objection pertains to Judge Schenkier's denial of TT's request for sanctions – essentially, an award of its attorneys' fees and costs for bringing the motion to enforce the judgment.  TT's basic contention is that it should be awarded its fees and costs because it had a good faith belief that the wording of the final judgment entered by Judge Moran was sufficient, even though it made no reference to the amount of damages awarded to TT.  This Court overrules the objection.  To begin with, in the totality of the circumstances of this case, both sides could (and should) have taken steps to avoid the circumstances that gave rise to the motion.  See, *e.g.*, *Health Cost Controls v. Washington*, 187 F.3d 703, 708 (7th Cir. 1999) ("When a defective judgment is entered, the parties' lawyers have a duty, not here fulfilled, as officers of the court to advise the judge of the need to enter a proper, amended judgment").  It should have been evident immediately to all parties and counsel that a critical aspect of the judgment – a damages award of more than $2.5 million – was omitted from the formal judgment order without explanation.

In any event, that TT may have had a good faith belief that further proceedings in the district court to correct the judgment were unnecessary is not enough to shift the costs of bringing and briefing the motion to eSpeed.  In briefing the motion, both sides took positions that Judge Schenkier correctly rejected as lacking merit.   Most significantly for purposes of addressing TT's objections, this Court fully concurs in Magistrate Judge Schenkier's assessment [see 1341, at 8-9] that TT overreached in requesting an order requiring eSpeed to pay the judgment (plus prejudgment interest) within five business days.  TT sensibly has not objected to Judge Schenkier's analysis or conclusion in that regard, but the fact that the parties were compelled to brief – and Judge Schenkier had to decide – the issue undermines TT's request for

its fees and costs. In sum, as with the rest of the report and recommendation, this Court concludes that in ruling that each side should bear its own fees and costs incurred in briefing the motion, Judge Schenkier got it right.

## III.  Conclusion

Having thoroughly reviewed the record, the briefs submitted by the parties (both on the motion to enforce and on the objections), the Court overrules the parties' objections and adopts Magistrate Judge Schenkier's Report and Recommendation (incorporated as Exhibit A to this memorandum opinion and order) in its entirety (save for one minor factual correction[3]). Accordingly, the motion to enforce money judgment and for sanctions [1324] is respectfully denied. In addition, pursuant to Fed. R. Civ. P. 60(a), the judgment entered on June 13, 2008 (*nunc pro tunc* to May 22, 2008) [1263] will be amended (also *nunc pro tunc* to May 22, 2008) to reflect – in addition to the injunctive relief already set forth – the jury verdict and post-remittitur damages award in the amount of $2,539,468.00, plus prejudgment interest at the prime rate, compounded monthly.

Dated: March 29, 2011

_____
Robert M. Dow, Jr.
United States District Judge

Attachment:  Exhibit A (Magistrate Judge Schenkier's Report and Recommendation [1341], dated September 8, 2010

---

[3] eSpeed contends [see 1342, at 6 n.3] that Judge Moran's June 13 judgment order was prompted not by an inquiry from the Federal Circuit, but rather by a motion filed by TT. Because the Court cannot find any reference in the record to any inquiry from the Federal Circuit, the Court will accept eSpeed's contention as to the origins of the June 13 clarification. That correction, however, has no bearing on the disposition of the objections by either party.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 5312 |
| vs. | ) | |
| | ) | District Judge Dow |
| ESPEED, INC., ESPEED INTERNATIONAL, LTD., | ) | |
| ECCO LLC, and ECCOWARE, LTD., | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This case involves hard-fought patent claims that have now been litigated in federal court for more than six years. The parties' latest disagreement is with respect to the right of plaintiff Trading Technologies International, Inc. to collect on a damage award in the amount of $2,539,468.00 that plaintiff received as a result of a jury verdict and subsequent remittitur. This disagreement over something that normally is (and should be) uncontroversial stems from the fact that the final judgment order entered in the case does not recite that damages award. Defendants say that this omission means that there is no money judgment for plaintiff to collect. Indeed, defendants go farther and argue that since the final judgment in the district court in this case has been reviewed on appeal, it is too late for plaintiff to do anything about this omission and that, as a result, plaintiff has effectively waived any right to recover the damages award.

Not surprisingly, plaintiff disagrees, and has filed a motion to enforce the money judgment and for sanctions (doc. # 1324). After reviewing the extensive arguments of the parties, we are persuaded that the most straightforward and sensible course of action here is to correct the final

judgment order so that it reflects the damages award that plaintiff obtained. We respectfully recommend that the presiding district judge make that correction, deny the motion to enforce the money judgment and for sanctions, and leave plaintiff to the traditional procedures available for execution on money judgments.[1]

## I.

In the interest of brevity, we begin our discussion of the long and tortured history of this case at the point relevant to this motion: that is, the jury trial in the case. On September 10, 2007, a jury trial commenced on plaintiff's claims that the defendants infringed on certain claims of U.S. Patent Nos. 6,772,132 (the '132 patent) and 6,766,304 (the '304 patent). One month later, on October 10, 2007, the jury returned a verdict for plaintiff and against each of the defendants on all claims of direct infringement, contributory infringement, and inducement to infringe; for plaintiff on its claim to a filing date of March 2, 2000; for plaintiff on defendants' assertions of invalidity by prior art, anticipation, and obviousness; and for plaintiff on the issue of willful infringement (doc. # 1061). The jury also awarded damages to plaintiff in the amount of $3.5 million: $1.5 million against eSpeed and $2 million against Ecco (*Id.*).

Thereafter, the trial judge set a schedule for certain post-trial proceedings, including motions by defendants for judgment as a matter of law on the jury findings of willfulness and for a remittitur on the damages award (doc. # 1068). After full briefing, the trial judge overturned the jury finding of willful infringement (doc. # 1144). In that opinion, the court also denied plaintiff's motion to enhance the jury's damages award based on the finding of willfulness.

---

1 At the time of the events relevant to this report, the Honorable James B. Moran was the presiding district judge. Throughout this report, we will refer to Judge Moran as "the trial judge." On September 22, 2009, the case was reassigned to the Honorable Robert M. Dow, Jr. (Doc. # 1313), who now is the presiding district judge.

2

The trial judge also granted defendants' motion for a remittitur of the damages award. In a Memorandum Opinion and Order entered on February 5, 2008 (doc. # 1153), the trial judge ordered a remittitur of the damages award to $2,539,468.00, and gave plaintiff seven days to either accept the reduced damages award, or instead, to submit to a new trial on damages. In a letter dated February 12, 2008, plaintiff timely accepted the remittitur of the damages award to $2,539,468.00 (doc. # 1325: Pl.'s Mem., Ex. D).

As part of the post-trial proceedings, the trial judge also considered plaintiff's motion for a permanent injunction against defendants barring them from offering infringing products. In a memorandum opinion and order filed May 22, 2008 (doc. # 1232), the trial judge granted the permanent injunction.

The injunction order triggered a flurry of activity by the parties. On May 27, 2008, defendants appealed the trial judge's permanent injunction ruling under 28 U.S.C. § 1292, the provision for seeking review of an interlocutory ruling – not under 28 U.S.C. § 1295(a), the provision that provides for Federal Circuit review of final judgments (doc. # 1236). That same day, plaintiff filed a notice of appeal invoking Section 1295(a), seeking review – *inter alia* – of the decision granting judgment as a matter of law on the issue of willfulness and denying enhanced damages based on willfulness (doc. # 1237). Defendants filed a motion in the Federal Circuit to dismiss plaintiff's notice of appeal on the grounds that there had not been a formal final judgment entered and that plaintiff was attempting to seek review of unappealable interlocutory orders. Thereafter, the Federal Circuit sought clarification from the district court that the permanent injunction was in fact a final judgment.

3

The trial judge made it clear that he considered the permanent injunction to be a final judgment, and agreed to enter a separate document reflecting the final judgment in accordance with Federal Rule of Civil Procedure 58. Plaintiff submitted a proposed form of final judgment that included the jury verdict in the amount of $2,539,468.00, plus prejudgment interest at the prime rate compounded monthly – which was in accordance with the acceptance of the remittitur and with the district court's ruling on prejudgment interest (doc. # 1259-1). The proposed order also recited the entry of a permanent injunction (*Id.*). The trial judge entered a final judgment order on June 13, 2008, *nunc pro tunc* to May 22, 2008. However, that order reflected only the permanent injunction order, and was silent on the jury verdict and the damages award (doc. # 1263). Thereafter, on June 23, 2008, plaintiff filed an amended notice of appeal (doc. # 1273). That amended notice sought review, *inter alia*, of the judgment as a matter of law on willfulness and the denial of enhanced damages, the remittitur order, and the order denying plaintiff's motion for attorneys' fees. No party brought to the trial judge's attention the omission of the jury damage award in the final judgment order.

That did not prevent defendants from raising this omission as a basis for arguing to the Federal Circuit that the trial judge still had not entered a final judgment, and that plaintiff's appeal should be dismissed. In their reply brief on the motion to dismiss the appeal, defendants commented that the form of judgment "does not even reference the fact that there was a jury verdict in this case, or that [plaintiff] had been awarded monetary relief" (Pl.'s Mem., Ex. C, at 8). However, the form of final judgment order was good enough for the Federal Circuit. On August 19, 2008, the Federal Circuit denied defendants' motion to dismiss Trading Technologies' appeal (Pl.'s Mem., Ex. E).

4

The Federal Circuit ruled that a final judgment had been entered which gave it jurisdiction over plaintiff's appeal.

On February 25, 2010, the Federal Circuit affirmed the district court's decisions. *Trading Tech. Int'l, Inc. v. eSpeed, Inc. et al.*, 595 F.3d 1340 (Fed. Cir. 2010). Significantly for the purposes of the present motion, the Federal Circuit decision plainly addressed a number of issues decided by the jury. For example, the Federal Circuit reviewed, and rejected, plaintiff's challenge to the trial judge's entry of judgment as a matter of law overturning the jury's finding of willfulness. 595 F.3d at 1357-58. In addition, the Federal Circuit rejected defendants' challenge to the jury finding that the patents in suit were entitled to a filing date of March 2, 2000. *Id.* at 1359-61. While the Federal Circuit did not review the jury's damages award or the remittitur ordered by the trial judge, that was because plaintiff ultimately decided not to press that issue on appeal; there was no Federal Circuit order dismissing that claim from the amended notice of appeal. To the contrary, by denying defendants' motion to dismiss plaintiff's appeal, the Federal Circuit deemed the issues raised in plaintiff's notice of appeal to be included within the final judgment.

## II.

That brings us to the present juncture. The case has been returned from the Federal Circuit on remand, and is pending before a different district judge. Except for a ruling on the pending bill of costs submitted by plaintiff, the only unresolved quarrel that remains is whether there exists a money damages award for plaintiff to enforce. Defendants state that (a) any monetary award should have been, but was not, included in the final judgment order; and (b) now that a final judgment has been entered and an appeal has been taken and concluded, it is too late to correct that omission. We agree with the first proposition, but not with the second one.

## A.

We are surprised by the omission of the jury award of damages (as remitted) from the final judgment order, and even more surprised by the parties' failure to raise that omission with the trial judge. Plaintiffs certainly understood that the monetary award should be included in the final judgment order, since plaintiff included that item in the proposed order that it submitted to the trial judge. And, there is no evidence that defendants disagreed that the monetary award should be included in a final judgment order. To the contrary, defendants remarked to the Federal Circuit that it was odd for the judgment to omit mention of that award (Pl.'s Mem., Ex. C, at 8).

We do not know why the trial judge failed to include the money judgment in the final judgment order. The best explanation is likely the fallibility of human beings (judges included). That said, we find inexplicable plaintiff's failure to bring to the trial judge's attention what surely was an oversight, and ask him to correct the error before the appeal proceeded. One would not expect a party which has just secured a $2.5 million award (and which hopes to have that award increased by asking the Federal Circuit to restore the original, larger jury verdict and to enhance the damages award based on a jury finding of willfulness) to sit by silently as the trial judge enters a final judgment order that omits the damages award. Plaintiff should have, and could have, done more – and done it more promptly – to protect its interests.

## B.

But we disagree with defendants' position that plaintiff's laxity in protecting its interests is in substance a waiver of its right to recover the damages that the jury awarded and that the trial judge in large measure sustained. There is no dispute that as an historical fact, the jury in this case awarded plaintiff $3.5 million; that the trial judge offered plaintiff the option of a new trial or acceptance of

6

a remittitur of the damages award to $2,539,468.00; and that plaintiff timely accepted that remitted amount.[2]

Nor is there any legitimate dispute that the damages award should have been included in the final judgment order. By the time the final judgment order was entered on June 13, 2008 (*nunc pro tunc* to May 22, 2008), the jury long since had spoken on the question of damages, returning its verdict awarding $3.5 million to plaintiff on October 10, 2007. The trial judge long since had spoken on that damages award, ordering on February 5, 2008, a remittitur that plaintiff accepted on February 12, 2008. There was nothing further to be done on the question of damages in the district court. Again, we point to defendants' statement in their reply brief in the Federal Circuit in support of their motion to dismiss Trading Technologies' appeal: "oddly it [the final judgment order] does not even reference the fact that there was a jury verdict in this case, or that [Trading Technologies] had been awarded monetary relief" (Pl.'s Mem., Ex. C, at 8). This is further evidence that all parties recognize that the jury verdict and damages award (as remitted) should have been included in any final judgment order.

Despite the omission from the final judgment order of any reference to a jury verdict, each side presented – and the Federal Circuit ruled on – issues decided in the jury verdict. Plaintiff challenged (without success) the trial judge's overturning of the jury verdict on willfulness, and defendants (equally without success) challenged the jury verdict concerning the priority date for the patents. We find this significant because it shows that both the parties and the Federal Circuit

---

[2] Defendants point out that the letter accepting the remittitur was never docketed (Defs.' Mem. at 2-3). To the extent that this observation is intended as a criticism of plaintiff's actions, we agree that it would have been preferable for plaintiff to file its acceptance of the remittitur of record. That said, plaintiff's omission does not change the fact that the remittitur was timely accepted – and defendants do not argue otherwise.

considered the final judgment to present as fair game for appeal issues raised by the jury verdict, despite the fact that the final judgment order did not reference the jury verdict.

## C.

Thus, we are presented with a situation in which we have no doubt that there was a final judgment in this case (as the Federal Circuit affirmed by considering the appeal under Section 1295(a), which is reserved for review of final judgments). We are equally convinced that the final judgment in this case should have referenced the jury verdict, including the award of damages as remitted by the trial judge. But, the final judgment order omits that information. Each side has its own view on how to deal with this unfortunate situation.

Plaintiff asks that this Court enter an order requiring defendants to pay the remitted judgment amount (plus prejudgment interest) within five business days (*see* Pl.'s Mem. Ex. K). In substance, plaintiff seeks an injunction commanding payment of a money judgment against a private party in a civil case. Plaintiff cites no authority for the proposition that we have the power to do so, and has no answer for the cases cited by defendants for the proposition that absent circumstances not present here, Rule 69 "does not authorize enforcement of a civil money judgment by methods other than a writ of execution." *Aetna Cas. & Surety Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997). As the *Aetna* court explained, "the size of the award and the difficulties in enforcing the judgment due to the location of the assets and the uncooperativeness of the judgment debtor are not the types of extraordinary circumstances that warrant departure from the general rule that money judgments are enforced by means of writs of execution . . . ." *Id.* at 349 n.4. And, while there are authorities that recognize the court's power to directly enforce money judgments in certain instances against governmental entities, "none of those cases mentions the possibility of [doing so] against a non-

8

governmental judgment debtor." *Bobak Sausage Co. v. Bobak Orland Park, Inc.,* No. 06 C 4747, 2008 WL 4814693, at * 3 (N.D. Ill. Nov. 3, 2008).

That said, even if this Court had the power to directly order payment of the money judgment, we do not believe this would be the appropriate case in which to exercise it. Had the trial judge entered a judgment order that set forth the damages award, the typical procedure for collecting on the money judgment – absent voluntary payment by defendants – would have been use of the proceedings for post-judgment collection as authorized by Federal Rule of Civil Procedure 69(a). Plaintiff's proposal would allow it to short-circuit the established procedures for executing on a money judgment by making the payment a matter of court order, and by exposing defendants to contempt for failing to comply. That is not normally the path a plaintiff follows when enforcing a money judgment, and we see no good reason why plaintiff's failure to take prompt measures to correct the omission in the final judgment order should be rewarded by empowering plaintiff with such a potent and unusual enforcement mechanism.

Defendants' proposed solution is equally untenable. Defendants say the only way to correct the omission of the damages award from the final judgment order is through a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), and that the time has long passed for plaintiff to be able to do so. However, we reject the proposition that amending the judgment to include the monetary award would be a substantive alteration of the judgment that must be brought under Rule 59(e). This is not a case where there is any dispute about the plain, historical fact that plaintiff received a jury verdict of $3.5 million, which was then remitted to $2,539,468.00. Revising the final judgment order to reflect that historical fact would not be a substantive alteration of that judgment, but merely would "correct a clerical mistake or a mistake arising from oversight or

9

omission whenever one is found in a judgment, order, or other part of the record" within the meaning of Federal Rule of Civil Procedure 60(a). We note that Rule 60(a), unlike Rule 59(e), has no time deadline for making such a correction. Thus, the passage of time since the entry of the final judgment does not eliminate the Court's authority to make a correction if appropriate.

In reaching this conclusion, we find support in the Seventh Circuit's analysis in *Talley v. United States Department of Agriculture*, 595 F.3d 754 (7th Cir. 2010). In that case, the appeals court reviewed a determination by the district court, after a bench trial, that plaintiff was entitled to $10,000.00 in compensatory damages and $20,055.00 in attorney's fees for violations of the Fair Credit Reporting Act. Before turning to the merits of the appeal, the Seventh Circuit considered the question of whether the final judgment order entered in that case was sufficient to vest jurisdiction on appeal. That judgment order read as follows: "plaintiff's motion to adopt findings of fact and conclusions of law is granted. Plaintiff's petition for attorney's fees and costs is granted." *Talley*, 595 F.3d at 757. The appeals court pointed out the various deficiencies in that final judgment order, including the fact that it "fails to mention relief (the figures [for damages and attorney's fees] we set out above come from the judge's opinions) . . ." *Id.* The appeals court explained that, despite those deficiencies, "[b]ecause the parties agree that proceedings are over in the district court, the failure to enter a proper judgment does not prevent an appeal." *Id.* The appeals court observed that the lack of specificity in the judgment order could "cause Talley . . . problems when he tries to collect." *Id.* The court then commented that "[w]e trust that the district court will correct its judgment if greater specificity is necessary to enforcement. . . ." *Id.*

That is precisely the situation here. As in *Talley*, there is no dispute that a damages award was returned against defendants here, and that the damages award should have been included in the

10

final judgment order. As did the appeals court in *Talley*, we likewise can envision difficulties that plaintiff may encounter in trying to collect on the damages award on the present state of the judgment order.[3] In order to obviate any problems that might arise from ambiguities about whether there was a damages award and in what amount, we conclude – as was suggested in *Talley* – that the best course is to provide greater specificity in the final judgment order by correcting it pursuant to Rule 60(a).

We therefore recommend that the district judge enter an amended final judgment order, *nunc pro tunc* to May 22, 2008, that reflects – in addition to the injunctive relief – a jury verdict and a damages award in the amount of $2,539,468.00, plus prejudgment interest at the prime rate, compounded monthly.

### D.

Finally, we turn to plaintiff's motion for sanctions against defendants, in the form of an award of plaintiff's attorneys' fees and costs for bringing this motion. We recommend that the district judge deny that request. In so doing, we recognize plaintiff's frustration at finding itself in a situation where, more than 34 months after receiving the jury verdict, more than 31 months after accepting the remitted judgment amount, and more than 6 months after the conclusion of proceedings in the Federal Circuit, plaintiff has not seen one penny of the damages award it received. But, we also are cognizant of the fact that the only reason we have any issue about the damages award, or its enforceability, is that plaintiff did not act promptly to correct that omission from the

---

[3]In its reply, plaintiff indicates that it has commenced proceedings to execute on the damages award pursuant to Rule 69 by serving defendants with certified copies of the final judgment order and the remittitur order (Pl.'s Reply Mem. at 7 and Ex. N). We note that even those documents appear to the Court deficient, because they omit the letter in which plaintiff accepted the remitted damages award.

11

final judgment entered by the trial judge in June 2008. We are aware, as plaintiff suggests, that either side could have raised that omission. However, we conclude that plaintiff, the beneficiary of that monetary award, bore the greater responsibility for doing so.

Of course, that omission does not give license to defendants to take untenable positions, as they have done in asserting that the omission of the damages award from the final judgment operates as a waiver of plaintiff's right to collect a damages award that all agree was returned and sustained by the trial judge. But equally, plaintiff's frustration at the state of affairs does not give it license to seek a method of enforcement – an injunction requiring payment of the money judgment – that plaintiff clearly has no right to use. Given these circumstances, we deem it appropriate to deny any sanctions.

## CONCLUSION

For the foregoing reasons, we respectfully recommend that the district judge (1) deny plaintiff's motion to enforce the money judgment and for sanctions (doc. # 1324), and (2) pursuant to Federal Rule of Civil Procedure Rule 60(a), enter a corrected final judgment order reflecting the jury verdict and damages award (as remitted), *nunc pro tunc* to May 22, 2008.

Specific written objections to this report and recommendation may be served and filed within 14 days from the date that this order is served. Fed. R. Civ. P. 72(b). Failure to file objections with

12

the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *See Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: September 8, 2010**

13